UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 10-32(1) (JNE/SRN)

UNITED STATES OF AMERICA,　　)
　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　)
　　　　　　　　　　　　　　　)　　**GOVERNMENT'S RESPONSE TO**
　　　v.　　　　　　　　　　　)　　**DEFENDANT HECKER'S PRETRIAL**
　　　　　　　　　　　　　　　)　　**MOTIONS**
(1) DENNIS EARL HECKER,　　　)
　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　)

　　　The United States of America, by and through its undersigned counsel, hereby respectfully submits this response to the Defendant Dennis Hecker's pretrial motions (Docket Nos. 117 through 148) in this matter.

**1.　Motion for Additional Peremptory Challenges (Docket No. 117)**

　　　Defendant Hecker's motion for additional peremptory challenges should be addressed to the District Court.　Nonetheless, the government opposes the motion, as there is no need for additional strikes.　To the extent a prospective juror needs to be stricken from the panel due to pretrial publicity (at least some of which the defendant himself promoted), the District Court may do so for cause.

**2.　Motion for Disclosure and Suppression of Wire Taps, Oral Communications (Docket Nos. 118 and 148)**

　　　Defendant Hecker has moved for disclosure and suppression of wire taps.　There were no wiretaps in this investigation.　As such, defendant's motion should be denied as moot.

3.   **Motion for Disclosure of Government Witnesses (Docket Nos. 119 and 120)**

Defendant Hecker requests disclosure of the government's witness list 60 days prior to trial.  The government objects to this request as without legal authority.  Criminal defendants have no right in noncapital cases to require disclosure of the list of government witnesses under Fed. R. Crim. P. 16(a).  United States v. White, 750 F.2d 726, 728 (8th Cir. 1984).

Defendant Hecker primarily relies on United States v. Turkish, 458 F. Supp. 874 (S.D.N.Y. 1978), a decades-old case from outside this Circuit which, notably, has in the intervening years come in for criticism.  See United States v. Nachamie, 91 F. Supp. 2d 565, 568-70 (S.D.N.Y. 2000) (criticizing, among others, United States v. Turkish, 458 F. Supp. 874 (S.D.N.Y. 1978)).  The single Eighth Circuit case he cites, United States v. Vitale, 728 F.2d 1090 (8th Cir. 1984), does not support his request for a witness list 60 days before trial.  Rather, in Vitale, the court held that there was no abuse of discretion with a magistrate judge's order requiring the government to disclose, four days before trial, a list of all prospective prosecution witnesses who had agreements with the government.  Id. at 1093.[1]

_____

[1]Contrary to Defendant Hecker's assertions, the government has had concerns about witness intimidation in this case and communicated this in writing to a prior attorney for the defendant. If necessary, the government can provide more specifics at the motions hearing.

Notwithstanding the foregoing, the government does not object to an order requiring production of the parties' witness lists one week prior to trial, the more reasonable request sought by Defendant Leach.

## 4. Motion for Disclosure of Rule 404(b) Evidence (Docket Nos. 121 and 122)

Defendant Hecker seeks an order compelling the government to provide a Rule 404(b) disclosure 60 days before trial. The government is fully aware of its disclosure obligation under Rule 404(b) and will fully comply with that obligation. However, the government objects to disclosure 60 days prior to trial, which is not required by Rule 404(b). FED. R. EVID. 404(b) advisory committee's notes, 1991 Amendments ("Other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes a reasonable request will depend largely on the circumstances on each case.").

The government proposes to notify the defense of Rule 404(b) evidence it intends to use at trial no later than 10 days prior to trial, or upon learning of the existence of the evidence, whichever occurs later in time.

## 5. Motion for Discovery and Inspection (Docket Nos. 123-126)

Defendant Hecker has moved for an order seeking discovery of certain categories of documents and other items, including many that are beyond that authorized under Rule 16 of the Federal Rules of Criminal Procedure. The government has more than complied with

its Rule 16 obligations, producing at a very early stage (several months ago) far more discovery than is required under the Rules, and it will continue to supplement its production well in advance of trial.  In particular, the government has made available to the defendants the very large volume of documents (hard copy and electronic) that it has received as part of multiple search warrants, subpoenas, and otherwise.  At most, the government respectfully requests the Court issue its standard order requiring compliance with Rule 16.  Defendant Hecker's motion should otherwise be denied.

In addition to the foregoing, the government provides the following response to Hecker's specific discovery-related motions:

### I.    Items Material to Preparing the Defense

The government has complied with its obligations under Rule 16.  It will continue to supplement its production well in advance of trial.  This part of Defendant Hecker's motion is therefore moot.

### II.   Evidence that the Government Intends to Present in its Case-in-Chief

The government has complied with it obligations under Rule 16. It will continue to supplement its production well in advance of trial.  This part of Defendant Hecker's motion is therefore moot.

### III.  Witness and Exhibit Lists

As addressed in the government's response to Defendant Hecker's specific motions for disclosure of witness and exhibit

lists 60 days before trial, the government objects to these requests as without legal authority. Although there is no authority for this request, the government does not object to an order requiring production of the parties' witness and exhibit lists one week prior to trial, the more reasonable requests sought by Defendant Leach.

### IV. Defendant's Statements

The government has complied with it obligations under Rule 16. It will continue to supplement its production well in advance of trial. This part of Defendant Hecker's motion is therefore moot.

### V. Expert Witness and Reports

Defendant Hecker has moved the Court for an order directing the government to make all expert witness disclosures available 60 days before trial. The government respectfully requests that the Court order that all Rule 16(a)(1)(G) disclosures, those of the government and those of the defendants, be made no later than three weeks trial, and any rebuttal expert disclosures one week prior to trial. See United States v. Finn, 919 F. Supp. 1305, 1316 n.7 (D. Minn. 1995) (ordering government to make Rule 16(a)(1)(G) disclosures as opinions become available and no later than seven days before trial and rejecting defendant's request that such disclosures be made at least 45 days prior to trial). Such a timing requirement allows both parties sufficient notice of the expected testimony and time to prepare a focused cross-examination

of the expert.  *See* FED. R. CRIM. P. 16 advisory committee's note, 1993 Amendments.  Because the defendant is also obligated, pursuant to Rule 16(b)(1)(C), to provide expert disclosures, the government respectfully requests that any order apply to all parties.

## VI.  Reports of Examination and Tests

The government has no reports of any physical or mental examinations or scientific tests or other material covered by Rule 16(a)(1)(F).  This part of Defendant Hecker's motion is therefore moot.

## VII. Personnel Files of Government Witnesses

Defendant Hecker requests access to the personnel files of each government agent witness.  This request is without legal authority.  The government objects to this request, but will comply with its Brady and Giglio obligations.  Courts in other cases have rejected similar broad requests for agent personnel files, while ordering the government to comply generally with Brady and Giglio. See United States v. Petters, No. 08-CR-364 RHK/AJB, 2009 WL 1076199, at *3 (D. Minn. Mar. 26, 2009).

## VIII.  Information Received from Trustee

Defendant Hecker has moved to order the government to "identify, copy, and provide" materials subject to the Bankruptcy Trustee's waiver of corporate privileges.  This motion should be denied as moot.  In complying with its discovery obligations, the government has provided both defendants materials or access to

materials without withholding from either defendant any potentially privileged documents.  The government will continue to follow this practice as to any future disclosures made consistent with its pretrial discovery obligations.[2]

Defendant Hecker, for purposes of some future, unspecified motions, also "objects" to the government's access to materials that may be subject to the Trustee's waiver.  Mem. in Support of Def. Motion for Discovery and Inspection, Docket No. 124 at 7.  As an initial matter, this proposed course of action is entirely inappropriate and in violation of the Court's pretrial order.  The motions deadlines are in place for a reason, and they should be enforced.  See Fed. R. Crim. P. 12(e) (if a party fails to file a pretrial motion before the filing deadline, the party waives that issue).  While the Court has the discretion to excuse a defendant's failure to meet the motions filing deadline, the defendant must make a showing of good cause for the delay. Id.  Here, Defendant Hecker will not be able to demonstrate good cause because those issues are ripe for resolution now, and there is no reason for the Court to permit Hecker to reserve those issues for some future point in time.  Leaving these issues open will unnecessarily

---

[2] To the extent defendant's motion seeks to impose procedural or substantive requirements on the government that go beyond its Rule 16, Jencks Act material, and other discovery obligations, it should be denied.  For example, the government is not required to parse through discovery and provide a "privilege log," particularly given that it has provided the defendants with access to all materials, including any such privileged documents.

prejudice the government, as it needs to proceed with preparation for trial based, in part, on access to materials encompassed by the Trustee's privilege waiver. Thus, the government respectfully requests that the Court issue an order making it clear Hecker is precluded from bringing any unspecified future motions that may challenge the Trustee's privilege waiver.

In any event, the Court will now have before it all the information it needs, and it should reject the defendant's challenge to the Trustee's privilege waiver. For the reasons that follow, this Court should hold that Hecker, having intentionally declined to challenge the Trustee's waiver in bankruptcy court, or in any other forum, cannot raise a challenge at this late date. In addition, even if Hecker could challenge the Trustee's waiver, his challenge should be rejected because, as a matter of law, the Trustee's waiver is valid. Any corporate privileges have properly been waived by the Trustee.

First, Hecker's delay in raising a challenge to the Trustee's waiver precludes him from raising it now. In February 2010, in the Dennis Hecker bankruptcy matter, the Trustee filed a Notice of Waiver of Privileges. The waiver was based on the Trustee's ownership, as a result of Hecker's bankruptcy filing, of 99% or 100% of the vast majority of corporate entities that Hecker previously owned. These entities included the main corporate entity and the fleet leasing entities that are the subject of the

8

indictment in this case.  In the notice, the Trustee provided Hecker (and the rest of the world) with notice that he was waiving any attorney-client and work product privileges existing between the Hecker-related entities and a number of identified lawyers and law firms.  In March 2010, although it was likely unnecessary, out of an abundance of caution, the government wrote to the Trustee seeking confirmation that the government could access corporate communications and documents pursuant to the Trustee's waiver.  The Trustee replied in writing that the government was permitted to have the requested access pursuant to the Trustee's waiver.  See Decl. of Peter S. Johnson, Doc. No. 125, Exh. A at 2-3 (letter outlining waiver chronology); see also id., Exh. A at 6-9 (Trustee's February 2010 Notice of Waiver).  Thereafter, on March 26, 2010, the government provided the defendants with copies of its correspondence with the Trustee regarding the Trustee's Waiver.[3]

Since the Trustee filed its Notice of Waiver in February 2010, Defendant Hecker has raised no objection or challenge to it whatsoever.  Namely, Defendant Hecker made no challenge (in any court or through communication with the government) to the waiver in February, and no subsequent challenge (in any court or through communication with the government) in March, April, or May.  Nor

---

[3]Additionally, in late March 2010, shortly after it obtained them, the government provided the defendants with copies of search warrants directed to Heatseeker Technologies and Orbit Systems. The affidavit in support of those warrants described the Trustee waiver chronology in detail.

has Defendant Hecker, until its current motion, raised even a potential objection or challenge to the government's access to communications and documents pursuant to the Trustee's waiver. Hecker cannot now assert an objection after having stood silent for over three months following the Notice of Waiver. The Trustee's very purpose in filing the Notice of Waiver was to put the defendant on notice and to provide him with an opportunity to assert an objection, if any, to the waiver in the bankruptcy court, where the Trustee and the bankruptcy judge are well versed in the issues at hand and could have readily resolved any challenge to the privilege waiver. Hecker, with skilled bankruptcy counsel and criminal counsel, chose not to challenge the Trustee's waiver in the bankruptcy court. As a result, as the government understands, the Trustee relied on the lack of any challenge by Hecker and has proceeded to obtain access to formerly privileged corporate communications.

Similarly, the government proceeded with an abundance of caution in this case, both before and after the February 2010 waiver, and it is also entitled to rely on the lack of any challenge by Hecker. Having been put on notice of the waiver over three months ago, Defendant Hecker's failure to make any timely

objection, in any forum, is an absolute bar to any "objection" he seeks to interpose now.[4]

Even aside from Defendant Hecker's waiver of any objection to the Trustee's waiver, any challenge to such waiver on the merits should be denied.  The Trustee's waiver was based upon established principles of bankruptcy law and is valid.  When Hecker filed his Chapter 7 bankruptcy petition, his assets became the property of the bankruptcy estate.  See 11 U.S.C. § 541.  The Trustee then became accountable for all property received, and undertook a duty to maximize the value of the estate through investigation of defendant's financial affairs and defendant's prior management of assets.  See 11 U.S.C. § 704(2).  Such investigation includes, among other things, ferreting out fraud that impacts or impacted the value of the assets held by the bankruptcy estate.  See 11 U.S.C. § 548.

In Defendant Hecker's bankruptcy, as indicated above, the estate's assets included stock previously held by defendant, including 99% or 100% ownership of the corporate entities identified in the Trustee's February 2010 Notice of Waiver.  The Trustee's authority over those corporations vested in the Trustee

---

[4]As soon as the Trustee filed the Notice of Waiver in February, Hecker had all of the information he needed to raise an objection. That Hecker is even now declining to raise a direct challenge to the Trustee's waiver, postponing the issue until some unspecified time, provides further indication that Hecker's motion is not based on any legitimate concern about the Trustee's waiver.

control over the corporations' attorney-client privilege.  See
Commodity Futures Trading Com'n v. Weintraub, 471 U.S. 343, 351-53
(1985)(affirming bankruptcy trustee's waiver of corporate debtor's
attorney-client privilege where trustee waived corporate privilege
for purposes of advancing separate government investigation of
fraud by debtor's officers and employees).  The transfer of the
ownership interest in the corporations from defendant to the
bankruptcy estate gave the Trustee all authority defendant may have
previously held over exercise of the corporate privileges.  Id.[5]

There is accordingly no basis for Defendant Hecker's
"objection" with respect to the Trustee's waiver of corporate
privileges, and this Court should enter an order finding that the
defendant cannot challenge that waiver.[6]  Specifically, to the
extent defendant's instant motion is predicated on this baseless

---

[5] As reflected in the Trustee's waiver and defendant's motion,
only corporate privileges are at issue.  Any individual attorney-
client privileges defendant held or holds were not the subject of
the Trustee's waiver.  The government continues to observe those
privileges, to the extent they have not been waived, including by
inclusion of formerly privileged communications in third-party
correspondence or otherwise.

[6] In addition to the above, there are other grounds upon which
the corporate privileges are no longer in force.  Corporate
privileges, for example, are subject to the crime-fraud exception
and generally do not survive once a corporation is defunct.  For
these and other reasons, even apart from the Trustee's waiver,
Hecker would fail in any attempt to shield his own criminal conduct
behind his former companies' privilege.  It is, however, not
necessary to rely on these and other grounds, given the Trustee's
valid waiver and Hecker's failure to challenge it in a timely
fashion.

"objection," the motion should be denied.  To the extent defendant
asserts the right to bring out-of-time motions at some future date
based on that "objection," he should be precluded from doing so.
The government will continue to proceed with respect to the
Trustee's waiver as it has (and as the Trustee has) in the months
since defendant was first provided notice of the Trustee's waiver
of such corporate privileges.

6.   **Motion for Early Compliance with the Jencks Act (Docket Nos.
     127 and 128)**

     The government opposes Defendant Hecker's motion for an order
requiring production of Jencks Act material 30 days prior to trial.
Rule 16(a)(2) of the Federal Rules of Criminal Procedure
specifically excludes statements made by government witnesses from
pretrial discovery, except as provided in the Jencks Act.  The
Jencks Act states in relevant part:

>          In any criminal prosecution brought by the
>          United States, no statement or report in the
>          possession of the United States which was made
>          by a Government witness or prospective
>          Government witness (other than the defendant)
>          shall be the subject of subpoena, discovery,
>          or inspection until said witness has testified
>          on direct examination in the trial of the
>          case.

18 U.S.C. § 3500(a).  This language has been interpreted according
to its terms.  Although the government may voluntarily disclose
Jencks Act material to a defendant in advance of trial, the
government is not required to do so.  Thus, Rule 16(a)(2) & (3)

13

make plain that Rule 16 does not require early disclosure of witness statements.

Moreover, it has been repeatedly and consistently held in this Circuit and District that the United States may not be required to make pretrial disclosure of Jencks material. See United States v. White, 750 F.2d 726 (8th Cir. 1994) ("Although in many cases the government freely discloses Jencks Act material to the defense in advance of trial, the government may not be required to do so"); United States v. Alexander, 736 F.Supp. 968, 981 (D. Minn. 1990)(Rosenbaum, J.) ("Rule 16(a)(2) . . . specifically excludes statements made by government witnesses from pre-trial discovery, except as provided in the Jencks Act'); see also United States v. Ben M. Hogan Co., 769 F.2d 1293, 1300 (8th Cir. 1985); United States v. White, 750 F.2d 726 (8th Cir. 1984); Finn v. United States, 919 F. Supp. 1305, 1315 (D. Minn. 1995).

Notwithstanding the foregoing authority, the United States has voluntarily offered to produce its Jencks Act material two weeks prior to trial.  The United States respectfully requests that any order requiring it to provide such early Jencks Act material be made reciprocal and require the defendants to provide Jencks Act material two weeks prior to trial.

**7.  Motion for Early Disclosure of Post-Conspiracy Statements of Co-Defendant (Docket No. 129)**

Defendant Hecker seeks an Order requiring the United States to give notice of its intent to use the statements of his

co-conspirators at trial.  Further, defendant seeks leave
thereafter to file motions for severance, suppression, and/or in
limine in response to the government's disclosure of the
co-conspirator statements.  The government objects to this motion,
as such evidence is not discoverable under Rule 16, and the
government is not required to disclose such statements at this
time.  See, e.g., United States v. Hoelscher, 914 F.2d 1527, 1535
(8th Cir. 1990).[7]  The government agrees to provide such statements
as it would any other Jencks Act material.

The government does not object to Defendant Hecker's request
for leave to file in limine motions on the basis of such
co-conspirator statements as appropriate.  With regard to
defendant's request for leave to file additional severance or
suppression motions, however, such request should be denied.

First, defendant would not have standing to move to suppress
the statements of his co-conspirators.[8]  Second, severance should
not be granted on the basis of a statement of a co-conspirator in
any event.  It is well-settled that an indictment that names all of
the defendants in a single conspiracy count is a sufficient
allegation to authorize the joinder of defendants under Rule 8(b).

---

[7]The government also objects to Defendant Hecker's attempt to
reserve filing various motions that are ripe for resolution now,
including any motion for severance or suppression, given the
Court's motions filing deadline in this case.  See Fed. R. Crim. P.
12(e).

[8]Notably, Defendant Leach has not moved to suppress his
statements.

See United States v. O'Connell, 841 F.2d 1408, 1432 (8th Cir. 1988). "In general, persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together." United States v. Jones, 880 F.2d 55, 63 (8th Cir. 1989) (quoting, United States v. Adkins, 842 F.2d 210, 212 (8th Cir. 1988)). "If the indictment invites joint proof, as here, the prima facie validity of joinder is shown." O'Connell, 841 F.2d at 1432. Moreover, defendants correctly joined under 8(b) can only be severed if the defendant can meet his burden of demonstrating "severe or compelling" evidence that he will be unduly prejudiced by a joint trial. United States v. Pherigo, 327 F.3d 690, 693 (8th Cir. 2003) (citations omitted). Given that Defendant Hecker and his co-defendant Leach are charged with conspiracy, most, if not all, evidence offered at trial will be admissible against each of them, and a joint trial is appropriate.

Further, Bruton v. United States, 391 U.S. 123, 137 (1968), does not require severance – particularly on the basis of a co-conspirator statement. In Bruton, the Supreme Court held that the admission of a nontestifying defendant's statement inculpating a co-defendant violates the co-defendant's Confrontation Clause rights, notwithstanding a curative instruction. Id. at 135-36. Instead, if the government seeks to introduce the confession of co-defendants that implicate each other, the statements must be redacted to eliminate "not only the defendant's name, but any

16

reference to his or her existence." <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987).   The Eighth Circuit "has interpreted this requirement to allow the admission of confessions so long as the confession is redacted to avoid either facially implicating or leading the jury directly to non-testifying co-defendants." <u>United States v. Ortiz</u>, 315 F.3d 873, 899 (8th Cir. 2002); <u>see</u> <u>United States v. Edwards</u>, 159 F.3d 1117, 1125 (8th Cir. 1998); <u>United States v. Comeaux</u>, 955 F.2d 586, 591 (8th Cir. 1992).   The Eighth Circuit has expressly approved of a generic word replacement procedure where references to defendant, if any, would be replaced by words such as "another individual." <u>See</u> <u>United States v. Logan</u>, 210 F.3d 820, 821-823 (8th Cir. 2000).   Among other things, the <u>Logan</u> Court rejected the argument that replacing the defendant's name with "another individual" would nonetheless lead the jury to conclude that the other individual was the defendant.   <u>Id.</u> at 822, 823 ("For all the jury knew, [they were hearing the defendant's] actual words [regarding another individual's involvement in the offense], not a modified version of them.").[9]

For all of these reasons, the Court should deny Defendant Hecker's motion for early disclosure of post-conspiracy statements of his co-defendant.

---

[9]For additional arguments as to why severance is not appropriate, <u>see</u> Government's Response to Defendant Leach's Pretrial Motions, responding to Defendant Leach's motion for severance.

**8.   Motion for Exhibit List (Docket Nos. 130 and 131)**

Defendant Hecker requests disclosure of the government's exhibit list 60 days prior to trial.  Although there is no authority for this request, the government does not object to an order requiring production of the parties' exhibit lists one week prior to trial, the more reasonable request sought by Defendant Leach.

**9.   Motion for Participation by Counsel in Voir Dire (Docket No. 132)**

Defendant Hecker's motion for participation by counsel in voir dire should be addressed to the District Court.  The government defers to the Court as to how it should conduct voir dire.

**10.  Motion for Written Juror Questionnaire (Docket Nos. 133, 134, and 147)**

Defendant Hecker's motion for a written juror questionnaire should be addressed to the District Court.  The government does not oppose a written juror questionnaire in this case.

**11.  Motion to Adopt Non-Duplicitous Motions of Co-Defendant (Docket No. 135)**

The government objects to Hecker's motion to adopt non-duplicitous motions of his co-defendant, Leach.  Hecker has had ample time to prepare and file motions, and he has in fact submitted more than 29 motions, many with multiple sub-parts.  In this case, because of an extension of time to file his motions, Hecker had the benefit of having Leach's motions in hand at the time he filed his own motions.  Thus, Hecker could have submitted,

as his own, any of the motions otherwise filed by Leach.   In many
respects, it appears Hecker did file motions comparable to Leach's
motions.  It is not appropriate for the Court and the government to
have to guess as to which of Leach's remaining motions Hecker
intends to adopt, and it is similarly inappropriate to force the
Court and the government to have to guess the particular arguments,
made by Leach, that Hecker intends to rely on.   For all these
reasons, this Court should deny Hecker's motion to adopt non-
duplicitous motions of Leach.

## 12.  Motion to Compel Disclosure of Evidence Favorable to the Defendant and for Exculpatory Material (Docket Nos. 136 and 137)

The government is aware of its obligations under Brady v.
Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150
(1972), and their progeny, and it has complied and will continue to
comply with its obligations.  In Brady, the Supreme Court held that
the government's failure to produce evidence that is both favorable
to the defense and material to guilt or punishment violates a
defendant's due process right to a fair trial.  Brady, 373 U.S. at
87.  Brady, however, is not a rule of discovery.  "'The rule of
Brady is limited to the discovery, after trial, of information
which had been known to the prosecution but unknown to the
defense.'" United States v. Kime, 99 F.3d 870, 882 (8th Cir. 1996)
(quoting Nassar v. Sissel, 792 F.2d 119, 121 (8th Cir. 1986)).

The government respectfully requests the Court issue its standard order for <u>Brady</u> evidence.

**13. Motion to Disclose and Make Informants Available for Interview (Docket Nos. 138 and 139)**

Defendant Hecker has moved for the disclosure of information regarding informants and to compel interviews with such informants or cooperating witnesses.  The government objects to the portion of the motion seeking compelled interviews as not supported by law.  <u>United States v. Kelley</u>, 36 F.3d 1118 (D.C. Cir. 1994)(pretrial examination of government witnesses for discovery purposes is not available).

In addition, the government objects to the portion of the motion seeking disclosure of informant information.  The law is well settled that the government has a privilege to withhold the disclosure of the identity of its informants.  <u>McCray v. Illinois</u>, 386 U.S. 300, 312-13 (1967).  "In order to override the Government's privilege of nondisclosure, defendants must establish beyond mere speculation that the informant's testimony will be material to the determination of the case." <u>United States v. Harrington</u>, 951 F.2d 876, 877 (8th Cir. 1991).  Here, the defendant has made no showing of materiality with respect to the disclosure of any other persons providing information to the United States.

Nonetheless, notwithstanding the foregoing, the government shall make any informant identity disclosures in accordance with its obligations under <u>Roviaro v. United States</u>, 353 U.S. 59 (1957).

See <u>United States v. Petters</u>, No. 08-CR-364 RHK/AJB, 2009 WL 1076199, at *1 (D. Minn. Mar. 26, 2009).

In addition, to the extent the government calls cooperating witnesses or any other witnesses at trial, it will produce all Rule 26.2 materials, all Jencks Act materials and all <u>Giglio</u> materials relating to the individual, including all promises and incentives for testimony.  <u>Id.</u>

**14.  Motion to Dismiss Counts 1 and 16 (Docket Nos. 140 and 141)**

**a.  Motion to Dismiss Count 1**

Defendant Hecker has moved to dismiss Count One, the conspiracy count, arguing (as Leach does) that it is impermissibly duplicitous because it charges multiple conspiracies in a single count.[10]  The motion should be denied because Count One in fact charges a single conspiracy to commit wire fraud, albeit, like most complex fraud conspiracies, through multiple transactions and acts. Moreover, at this stage, because the indictment on its face alleges a single conspiracy, it is not duplicitous, and the question of whether there is a single conspiracy or multiple conspiracies is for the jury to decide.  Because the defendant's motion is unsupported by the facts or the law, it should be denied.

---

[10]The substance of the government's response to part "a" herein is largely the same as its response to Leach's comparable motion (Docket Nos. 97 and 98).  Additional arguments are set forth below in part "b," which addresses Count 16, the bankruptcy fraud count charged solely against Hecker.

On its face, Count One of the indictment properly charges that defendants Hecker and Leach conspired with each other and with others to commit wire fraud against lenders and others. Superseding Indictment, ¶ 10.  As alleged, the unlawful purpose of the conspiracy was "to obtain millions of dollars from various sources, including financing from lenders, incentive money from automobile manufacturers, and sale proceeds from vehicles, all by making material false statements, false representations and omissions."  Id., ¶ 11.  The indictment goes on to allege, in paragraphs 12-19, the manner and means by which the conspiracy was committed.  While Count One charges that conspirators obtained money from three sets of funding sources, lenders, retail customers, and automobile manufacturers,[11] the common thread throughout Count One is that in all respects the money was obtained, that is, the conspiracy was accomplished, through material false statements, false representations, and omissions.  Id., ¶¶ 12-17.  In another common thread, the indictment alleges that after each of these funding sources provided money to the Hecker organization, and after conspirators engaged in fraud, conspirators diverted the money to fund Defendant Hecker's extravagant lifestyle.  Id., ¶ 12.  Additionally, with respect to

---

[11]Of these funding sources, the lenders and retail customers are direct victims.  Conspirators also caused a third funding source, automobile manufacturers, to provide millions of dollars in incentive payments through the misrepresentations and omissions directed at lenders.

all aspects of the conspiracy, the defendants and others engaged in cover-up and lulling communications. Id., ¶ 18. Finally, Count One alleges that, in an attempt to avoid repaying lenders the money that they were defrauded into providing to Hecker and the Hecker organization, Hecker filed bankruptcy, and with the help of conspirators, concealed assets. Id., ¶ 19.[12]

In evaluating evidence introduced at trial, courts hold that the question of "[w]hether a given case involves single or multiple conspiracies depends on "whether there was 'one overall agreement' to perform various functions to achieve the objectives of the conspiracy." United States v. Radtke, 415 F.3d 826, 838 (8th Cir. 2005) (citations omitted). "Relevant factors 'includ[e] the nature of the activities involved, the location where the alleged events of the conspiracy took place, the identity of the conspirators involved, and the time frame in which the acts occurred.'" Id. at 839. "[A] conspiracy with multiple objectives is not the same thing as multiple conspiracies." Id. A "single overall conspiracy can be made up of a number of separate transactions and of a number of groups involved in separate crimes or acts." United States v. Roach, 164 F.3d 403, 412 (8th Cir. 1996). The defendants in a

---

[12]To the extent Defendant Hecker is (like Defendant Leach) contending that the allegations in paragraph 19 amount to a separate conspiracy that the bankruptcy estate was defrauded, that is not correct. The paragraph alleges that another means by which lenders in the overall, single conspiracy were defrauded was by Hecker's and his co-conspirators' asset concealment following a fraudulent bankruptcy filing.

single conspiracy need not be aware of, or involved in, each illegal transaction. Id.; United States v. Jenkins, 78 F.3d 1283, 1289 (8th Cir. 1996). Stated another way, "[a] single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." United States v. Smith, 450 F.3d 856, 860 (8th Cir. 2006) (citations omitted).

Applying these legal principles to an examination of the indictment itself, it is clear that Count One properly alleges a single conspiracy. See United States v. Begay, 42 F.3d 486, 501 (9th Cir. 1994)(citations omitted)(in determining if indictment is duplicitous for stating multiple conspiracies, courts "look to the indictment itself"). While Count One alleges various transactions, various activities, various victims, and various participants, it properly charges a single conspiracy because it charges a single, overall agreement over the course of a single time frame. See Radtke, 415 F.3d at 838 (court rejected defendant's argument that "the government failed to prove that the fraud targeted at different victims constituted a single conspiracy rather than two separate conspiracies" because, while there were multiple objects and some of the conduct changed, there was a single overall agreement to achieve conspiracy's objectives). Namely, Count One alleges a single, Minnesota-based conspiracy during a single time frame (from about November 2006 through about June 2009), to commit

24

wire fraud by defrauding persons who would provide money to Hecker and the Hecker organization.  Moreover, because there is one common conspirator, Defendant Hecker, it is of no consequence that other conspirators, including Defendant Leach, were not involved in, or necessarily knowledgeable about, all aspects of the conspiracy. See Smith, 450 F.3d at 860.  Thus it is also irrelevant that Leach left the Hecker organization in December 2007.

Nonetheless, at this stage, so long as the indictment alleges a single conspiracy on its face, courts uniformly hold that the indictment is not duplicitous and that the jury should be allowed to decide whether the government has proven a single conspiracy. See United States v. Rigas, 281 F. Supp. 2d 660, 664 (S. D. N. Y. 2003)(although the conspiracy count alleged a number of fraudulent acts, accomplished through various ways and having an effect on various persons and entities, because the count adequately connected these activities to one conspiracy, it was not duplicitous, and multiple vs. single conspiracy question was one for the jury); United States v. Johnson, 239 F. Supp. 2d 897, 911 (N.D. Iowa 2002)(because "the government had at least adequately alleged a single, timely conspiracy," the court left "with the jury the question of whether the government can ultimately prove such a single conspiracy."); see also United States v. England, 966 F.2d 404, 406 (8th Cir. 1992)(question of whether there is a single conspiracy or multiple conspiracies is for the jury to decide).

At most, Defendant Hecker's multiple conspiracy arguments amount to a factual dispute that is properly resolved by the jury at trial.  See United States v. Alexander, 736 F. Supp. 968, 995 (D. Minn. 1990)(court held duplicity question not appropriately resolved at the pretrial stage where defendant's multiple conspiracy argument was "entirely dependent upon proof at trial of their underlying assertions"; the jury should decide whether there were multiple conspiracies).  Moreover, at trial, any issue regarding whether the evidence demonstrates multiple conspiracies rather than a single conspiracy can be addressed through appropriate jury instructions.  As the Eighth Circuit model instruction for Single/Multiple Conspiracies makes clear:

> The Government must convince [the jury] beyond a reasonable doubt that each defendant was a member of the conspiracy charged in the indictment. If the Government fails to prove this as to a defendant, then [the jury] must find the defendant not guilty of the conspiracy charge, even if [the jury] find[s] that [the defendant] was a member of some other conspiracy.

Manual of Model Criminal Jury Instructions for the Eighth Circuit, § 5.06G.  Indeed, even if Count One were duplicitous, which it is not, this type of instruction would in any event cure any "risk of a nonunanimous jury verdict inherent in a duplicitous count . . . ." United States v. Rabinowitz, 56 F.3d 932, 933 (8th Cir. 1995). Moreover, this model instruction demonstrates that, if the defendant is correct that the government will not be able to prove

one conspiracy in Count One, it is the government that takes the risk of an acquittal on that count.

**b.  Motion to Dismiss Count 16**

Hecker asserts that Count 16 (one of the bankruptcy fraud counts) must be dismissed because it is duplicitous.  Hecker's theory is that Count 16, charging him with bankruptcy fraud in violation of 18 U.S.C. § 152(3), enumerates eight "separate allegedly false statements or omissions." (Doc. No. 141, at 4). Thus, he asserts that Count 16 joins two or more offenses in a single count.  (Doc. No. 141, at 2 (quoting <u>United States v. Street</u>, 66 F.3d 969, 974 (8th Cir. 1995)).  For the reasons explained below, Hecker's arguments are contrary to law, and his motion should be denied.

Count 16 of the indictment charges Hecker with a single count of bankruptcy fraud through false declarations.  Specifically, it alleges Hecker made, "among others," eight particular false statements and omissions on Schedule B to the Schedules of Assets and Liabilities ("Schedules") and the Statement of Financial Affairs ("SOFA") on the bankruptcy petition he filed on or about July 1, 2009.  Count 16 charges a violation of 18 U.S.C. § 152(3), which penalizes false declarations made in a bankruptcy case.

The government charged multiple false statements in Counts 16 (and in Count 17) in compliance with the case law on duplicity. Courts examining duplicity claims in the context of bankruptcy

27

fraud charges under 18 U.S.C. § 152, while few, have determined that "the fraudulent nondisclosure of several items of property in the petition for bankruptcy [is] a 'single continuous concealment' constituting a single offense." United States v. White, 879 F.2d 1509, 1512 (7th Cir. 1989) (citing cases).[13]  This is so because "the duty to disclose . . . is a single duty to reveal all." Id. (quoting United States v. Moss, 562 F.2d 155, 160 (2d Cir. 1977)). Put more generally, "[w]here more than one act is charged in a count, the count is not duplicitous if the acts were part of a transaction constituting a single offense." United States v. Warner, 428 F.2d 730, 735 (8th Cir. 1970)(multiple misrepresentations in one tax return charged in false tax return case); see also United States v. Damrah, 412 F.3d 618, 624 (6th Cir. 2005) ("[i]t is not duplicitous to allege in one count that

_____

[13]Defendant Hecker does not challenge Count 17, charging Hecker made, "among others," one particular false statement and omission made on Schedule B of Hecker's amended filing, made in September 2009.  For the reasons set forth herein, any challenge to Count 17 would similarly fail.  Hecker also does not challenge, nor could he successfully challenge, Counts 18-25, charging Hecker with a number of instances of fraudulent transfers and acts of concealment, in violation of 18 U.S.C. 152(1).  Courts addressing the more commonly-raised multiplicity challenge to a bankruptcy fraud indictment where the government charges, in separate counts, both false declarations and fraudulent concealment, have determined such counts are not multiplicitous.  See, e.g., United States v. Christner, 66 F.3d 922, 928-29 (8th Cir. 1995) (holding that under 18 U.S.C. § 152, Congress intended that an act of intentionally concealing property of the bankruptcy estate and the act of knowingly making a false statement to the bankruptcy court constitute two separate offenses under the statute where the concealment and statement are separate acts, and prosecutions under both prongs of the statute do not violate the rule against multiplicity).

multiple means have been used to commit a single offense")(false statements on naturalization forms).

In a case that, like this one, alleged multiple failures to disclose information in a bankruptcy filing in a single count charged pursuant to 18 U.S.C. § 152(3), the court held that "it is permissible to charge multiple fraudulent omissions or statements in a bankruptcy filing in a single count." United States v. Bortnick, 2004 WL 2738829 (E.D. Pa. Nov. 29, 2004) (citing White). Courts examining the same issue under similar statutes, such as 18 U.S.C. § 1001 (false statements) or 18 U.S.C. § 1014 (fraudulent loan transactions) have come to the same conclusion. See, e.g., United States v. Crisci, 273 F.3d 235, 239 (2d Cir. 2001) (rejecting a charge of duplicity where a Section 1001 count included seven charged statements); United States v. Mangieri, 694 F.2d 1270, 1281 (D.C. Cir. 1982) ("[T]he making of a number of false statements to a lending institutions in a single documents constitutes only one criminal violation under 18 U.S.C. § 1014."); United States v. Sue, 586 F.2d 70, 71 (8th Cir. 1978) (per curiam) (same); United States v. Czichray, 2002 WL 1763998 (D. Minn. Jul. 26, 2002) (JRT/FLN) (following Sue and stating, "If the relevant statute creates a single offense which can be committed in a variety of ways, the charge can be laid in a single count.").

In July 2009, Defendant Hecker made a single filing with the bankruptcy court, under a single oath, but made multiple

representations within that document.  Thus, he committed one criminal violation, alleged in Count 16.  The charge is not duplicitous merely because multiple pieces of evidence support it. See Warner, 428 F.2d at 735 (noting that the counts at issue "charged defendant with committing several acts but only one crime").

Moreover, contrary to the defendant's argument, courts universally hold that potential duplicity can be cured with a unanimity instruction. United States v. Nattier, 127 F.3d 655, 657 (8th Cir. 1997); Damrah, 412 F.3d at 624; Crisci, 273 F.3d at 239. Because Defendant Hecker cites no authority to the contrary, and for all the reasons asserted above, his motion to dismiss Count 16 as duplicitous should be denied.

## 15. Motion to Modify Conditions of Release (Docket No. 142)

Defendant Hecker's Motion for Modification of Conditions of Release is his fourth such motion addressing essentially the same issues.  The Court should deny his motion because, to the extent the circumstances have changed since Hecker's first motion to modify his conditions of release, they have changed for the worse: the defendant is now barred from using any of the personal property located at the Crosslake property he references, and the Crosslake real estate is in the hands of a receiver, who has informed the government he is opposed to any attempt by the defendant to stay at the residences in Crosslake.

30

The Crosslake Properties

Throughout the defendant's bankruptcy proceeding (filed June 2009), the luxury vacation properties at Crosslake have been the subject of litigation in the bankruptcy court and in Crow Wing County, where they are located.  In the bankruptcy case, Hecker claimed personal ownership in three properties in Crosslake, Minnesota, the title of which was held by Jacob Holdings of Cross Lake LLC, wholly owned by Jacob Properties of Minnesota LLC, which is owned 91% by Hecker. (Bankruptcy Case No. 09-50779 RJK, Doc. No. 207 ("Homestead Opinion"), at ¶¶4-5, Ex. A).  Hecker claimed a homestead exemption for one of the properties, 11700 Cross Avenue, through a reverse piercing theory. Id., ¶4.  The bankruptcy court disallowed the exemption claim.  Id.  After hearing Hecker's appeal, on January 6, 2010, the U.S. District Court thereafter upheld the disallowance.  Hecker v. Chrysler Financial Services Americas, LLC,  File No. 09-CV-3054 (PAM), Doc. No. 11.

All three properties were then the subject of a foreclosure action by TCF National Bank, the holder of the substantial mortgages on the properties, filed in Crow Wing County, due to Hecker's failure to pay the mortgages on the property. (TCF National Bank v. Jacob Holdings of Cross Lake LLC, File No. 18-CV-10-2102).  On May 19, 2010, the Crow Wing County Court appointed Cross Lake Property Solutions, Inc. as the Receiver for the properties. ("Receiver Order", Ex. B).  Under the Receiver Order,

the court in Crow Wing County ordered that the defendant in that action, Jacob Holdings of Cross Lake, and its agents, including presumably Hecker, "transfer and surrender possession of the Mortgaged Property to the Receiver" within 24 hours.  The Receiver Order requires the Receiver to take possession of, and manage, the Crosslake properties.

The personal property within the Crosslake properties is the property of the bankruptcy estate. On April 26, 2010, the Trustee filed a complaint for preliminary injunctive relief against Hecker and others, seeking to bar them from exercising dominion and control over the personal property located in Crosslake.  On May 5, 2010, the Bankruptcy Court entered an injunction, requiring Hecker to "immediately deliver to the [Trustee] all personal property located at [the Crosslake properties]."  (Adversary Case No. 10-05016 RJK, Doc. 6, at ¶2, Ex. C).  The court further ordered that Hecker is "enjoined from engaging in any use, sale, encumbrance, transfer, agreement or engaging in any activity which would result in the diminishment of value or depletion of the personal property, or in the diminishment of value of the equity value of the bankruptcy estate property."  (Id. ¶3).

These two orders combined mean that Hecker cannot use the real property unless the Receiver, and presumably the Crow Wing County Court, agrees, and in any event Hecker is enjoined from using the personal property located there.

Previous Requests for Travel to Crosslake

On February 11, 2010, at the defendant's First Appearance before this Court, the United States Pretrial Services/Probation Office submitted a bond report which indicated that the defendant presented a risk of flight under 18 U.S.C. § 3142.  The United States agreed, and requested that the Court impose the conditions set forth in the Pretrial Services recommendation, which included that the defendant be restricted to his residence every day as directed by Pretrial Services.  The defendant stipulated to these conditions.  Presumably, Hecker stipulated to avoid a protracted hearing based on the numerous issues regarding his risk of flight that the government informed his counsel it planned to introduce at a detention hearing.  Thereafter, Pretrial Services determined that electronic monitoring was not feasible due to particular conditions at the defendant's residence but that equivalent GPS monitoring was feasible.

On February 12, 2010, the defendant requested a modification of conditions to allow him to travel to Crosslake, citing his desire to get away from the media for weekend respite with his family.

On February 12, 2010, after hearing oral argument on the matter, the Court denied the defendant's request to modify conditions to allow travel to Crosslake, and entered an Amended Order Setting Conditions of Release.  As the government understood

the Court, based on comments made during the oral argument, its Amended Order clarified that the term "residence" in the original Order meant his Medina home and no other.  Additionally, the curfew set by Pretrial Services required the defendant to be at home at that residence each evening and did not permit travel on weekends to Crosslake or elsewhere.

On February 25, 2010, the defendant again brought a motion seeking a modification of his conditions to allow him to travel to Crosslake for the upcoming weekend. (Doc. No. 29).  The government argued in a written response that the issue had been foreclosed by the Court's February 12 decision, that Hecker's risk of flight was not diminished because of pressures on the defendant had increased, rather than decreased, since that time, and that the defendant's request was based on his desire to be with his children, but that he "has given no reason why he cannot be with his children in the home where he has been ordered to maintain a curfew." (Doc. No. 30).  Based on the parties' written submissions, the Court denied Hecker's motion (Doc. No. 31).

On May 19, 2010,, the defendant brought a third motion to modify conditions of release, this time apparently seeking to <u>move</u> to Crosslake. (Doc. No. 92).  In that motion, the defendant represented that he "has permission to reside at one of the cabins at Cross Lake," and that the "Receiver welcomes his participation" in maintaining the property.  (Doc. 92, at 2-3).  The government

learned, in preparing to respond to the motion, that the Receiver did not welcome Hecker's "participation" in management of the property, and that TCF, as the mortgage holder, would have a chance to object to his presence on the property in the foreclosure action in Crow Wing County.  The defendant withdrew his motion.

Current motion for modification

In the motion now brought before this Court, it is less than clear what the defendant requests.[14]  The defendant does not purport to seek to travel to Crosslake.  Indeed, the defendant does not actually seek a modification of his conditions of release.  The Amended Order on Conditions of Release allows the defendant to travel within the State of Minnesota, including up to, and beyond, 150 miles of the metro area, so long as he abides by the curfew set by Pretrial Services.  Thus, there is nothing in the current order restricting him from traveling in Minnesota within 150 miles of the metro area, so long as he abides by the curfew.  The government presumes, however, that the current motion is a request for overnight travel within Minnesota, which is barred by the current order and which has been previously rejected by the Court.

The government opposes the current motion.  As an initial matter, the government should not have to guess as to precisely what the defendant's motion seeks.  Nonetheless, to the extent he is requesting, as he has previously, to make regular overnight

---

[14]Defendant's counsel has to date not responded to the government's inquiries seeking further clarification.

trips to Crosslake, his motion should be denied.  The only thing that has changed since Hecker's prior, similar requests is that his access to the Crosslake properties is now restricted by the Receiver and the bankruptcy court's order enjoining him from using any of the personal property located there.

Aside from these new facts, which weigh heavily against any request to travel overnight to Crosslake, nothing else has changed since his first, second, and third requests.  As was the case in his February 25 request, pressures on the defendant have increased, rather than decreased, since the time of the February 12 Amended Order.  See Doc. 30, Government's Opposition to Motion to Modify (noting that the Bankruptcy Court determined that over $83 million in the defendant's debt is not dischargeable, and that the Trustee charged Hecker with fraudulent concealment of assets).  In addition to the factors present then, since February 25, a Superseding Indictment has been returned, charging the defendant with additional fraud schemes and several counts of bankruptcy fraud.  Trial in the matter looms ever closer and has now been definitively set for October 18.

In support of his motion, the defendant offers no more than a bald and unsupported assertion that he will be acquitted.  However, the evidence in this case, as outlined in the Superseding Indictment, is strong.  The defendant's motion should be denied.

16.  **Motion to Retain Tangible Evidence, Rough Notes, and Like Materials (Docket Nos. 143 and 144)**

Defendant Hecker has moved for an order directing government agents to retain and preserve rough notes.  The government has no objection to an order directing government law enforcement agents to retain their rough notes made as part of this investigation, if any.  The government does, however, object to <u>production</u> of the notes because they are not subject to discovery under Rule 16(b) or the Jencks Act.  <u>United States v. Roell</u>, 487 F.2d 395, 401 (8th Cir. 1973); <u>United States v. Long</u>, 468 F.2d 755, 756 n.1 (8th Cir. 1972).

17.  **Motion to Suppress Statements (Docket No. 145).**

Defendant Hecker moves to suppress unspecified government-secured statements because he contends they were obtained in violation of his Constitutional rights.  Any statements of the defendant that the government has in its possession were not obtained by or at the direction of law enforcement.[15]  His motion should be denied as moot.

---

[15]Defendant Hecker does not specify any particular statements he seeks to suppress.  The only recorded statement of the defendant known to the government was one obtained by Chip Lohmiller, a copy of which was provided to the defendants.  There was no government involvement in the securing of that statement, and thus it is not subject to suppression under Defendant Hecker's motion.

## **CONCLUSION**

For the reasons stated herein, the United States respectfully asks that the Court rule on Defendant Hecker's motions as set forth above.

Date: June 21, 2010                    Respectfully Submitted,

                                       B. TODD JONES
                                       United States Attorney

                                       /s/ Nicole A. Engisch


                                       BY:
                                       NICOLE A. ENGISCH
                                       NANCY E. BRASEL
                                       DAVID M. GENRICH
                                       Assistant U.S. Attorneys

38