UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIMINAL NO. 10-32 (JNE/SRN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **SECOND SUPERSEDING INDICTMENT** |
| | ) | |
| Plaintiff, | ) | (18 U.S.C. § 2) |
| | ) | (18 U.S.C. § 152(3)) |
| v. | ) | (18 U.S.C. § 152(7)) |
| | ) | (18 U.S.C. § 1343) |
| 1.   DENNIS EARL HECKER and | ) | (18 U.S.C. § 1349) |
| 2.   STEVEN JOSEPH LEACH, | ) | |
| | ) | |
| Defendants. | ) | |

THE UNITED STATES GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to this Second Superseding Indictment:

1.   Defendant DENNIS EARL HECKER, a resident of Minnesota, owned and operated in Minnesota and elsewhere automobile dealerships as well as businesses that provided fleet vehicles to rental car companies, including rental car companies that HECKER owned in whole or in part.

2.   HECKER operated his businesses under numerous corporate names (collectively, the "Hecker organization").  The corporate headquarters for the Hecker organization was at 500 Ford Road, St. Louis Park, Minnesota.

3.   Defendant STEVEN JOSEPH LEACH, a resident of Minnesota, was a senior officer of HECKER's fleet leasing businesses.  In or about December 2007, LEACH resigned from the Hecker organization.


SCANNED
JUL 1 3 2010
U.S. DISTRICT COURT MPLS


FILED   JUL 1 3 2010
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED_____
DEPUTY CLERK'S INITIALS_____

4.    To fund the businesses and to purchase vehicles, HECKER and the Hecker organization borrowed money from commercial lending companies ("lenders"), including Chrysler Financial Services Americas LLC and its predecessors, such as DaimlerChrysler Services North America LLC and DaimlerChrysler Financial Services Americas LLC (collectively, "Chrysler Financial"), U.S. Bank National Association ("U.S. Bank"), Carlton Financial Corporation ("Carlton Financial"), and others. HECKER personally guaranteed repayment of amounts loaned to the Hecker organization by Chrysler Financial and other lenders.

5.    The vehicles that HECKER and the Hecker organization purchased were the primary collateral for the vehicle financing. In addition, HECKER and the Hecker organization were obligated by agreement and otherwise to hold proceeds from the sale of vehicles in trust and to pay the proceeds promptly to the lender that financed the vehicles, in payment of any balance owed to the lender on such financing.

6.    The fleet vehicles that HECKER and the Hecker organization purchased were generally categorized by automobile manufacturers as either "repurchase" or "risk." "Repurchase" vehicles were subject to a guarantee that the automobile manufacturers would in effect buy back the vehicles for a set price after a certain period of time and subject to certain conditions.

2

U.S. v. Dennis Earl Hecker, et al.        Criminal No. 10-32(JNE/SRN)

"Risk" vehicles had no such repurchase guarantee. Thus, "risk" vehicles exposed HECKER, the Hecker organization, and lenders to greater financial risk. Whether the vehicles at issue were categorized as "repurchase" or "risk" vehicles was material to lenders.

7.    To induce HECKER, the Hecker organization, and other businesses to purchase fleet vehicles, automobile manufacturers typically offered incentive payments. Incentive payments, which could be upwards of thousands of dollars per vehicle, were a form of "cash back" that the purchaser, such as HECKER and the Hecker organization, received after buying the vehicles. Whether HECKER and the Hecker organization received incentive payments and the amount of any incentive payments were material to lenders.

8.    By approximately June 2009, HECKER had largely closed down operations of the Hecker organization and had filed personal bankruptcy.

**COUNT 1**
(Conspiracy to Commit Wire Fraud)

9.    The Grand Jury hereby realleges and incorporates paragraphs 1 through 8 of this Second Superseding Indictment as if stated in full herein.

10.   Beginning at least in or about November 2006, and continuing through at least in or about June 2009, the exact dates

3

being unknown to the Grand Jury, in the State and District of Minnesota and elsewhere, the defendants,

**DENNIS EARL HECKER** and
**STEVEN JOSEPH LEACH,**

knowingly and intentionally combined, conspired, confederated, and agreed with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, that is, to devise and intend to devise a scheme and artifice to defraud and to obtain money and property from lenders and others by means of material false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice, to knowingly cause to be transmitted in interstate commerce, by means of wire communications, certain writings, signs, signals, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

11.  The unlawful purpose of this conspiracy was to enable HECKER, the Hecker organization and others to obtain millions of dollars from various sources, including financing from lenders and incentive money from automobile manufacturers, all by making material false statements, false representations and omissions.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means, among others, of this conspiracy were as follows:

4

U.S. v. Dennis Earl Hecker, et al.          Criminal No. 10-32(JNE/SRN)

12.   To obtain millions of dollars from various sources, money which was diverted in part to fund HECKER's extravagant lifestyle, the defendants and others made material false statements, false representations, and omissions.

13.   The material false statements, false representations, and omissions included presenting lenders with fraudulently altered documents that purported to but did not in fact represent the actual terms automobile manufacturers had offered HECKER and the Hecker organization with regard to fleet vehicle purchases.

14.   The material false statements, false representations, and omissions included misrepresentations and omissions to lenders with respect to the nature and value of the collateral, that is, the vehicles that secured the lenders' financing.

15.   The material false statements, false representations, and omissions included misrepresentations and omissions to lenders with respect to millions of dollars in incentive payments received by HECKER and the Hecker organization from automobile manufacturers.

16.   The material false statements, false representations, and omissions included misrepresentations and omissions to lenders with respect to vehicle sales proceeds.   Namely, after HECKER and the Hecker organization sold vehicles that lenders had financed, in a significant number of instances, HECKER and others at his direction intentionally and fraudulently kept the vehicle sales proceeds for

U.S. v. Dennis Earl Hecker, et al.        Criminal No. 10-32(JNE/SRN)

the benefit of HECKER and the Hecker organization, rather than holding those proceeds in trust and paying the proceeds promptly to the lender that financed the vehicle.

17.   At least in part to prevent the conspiracy and fraud from coming to light and/or being reported to the authorities, the defendants   and   others   engaged   in   cover-up   and   lulling communications with various individuals and entities.

18.   In or about June 2009, HECKER filed personal bankruptcy in an attempt to avoid his repayment obligations to the lenders. Despite filing personal bankruptcy, and despite the hundreds of millions of dollars owed to his lenders and others, HECKER, with the assistance of others, has concealed assets and has continued to live an extravagant lifestyle.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-6
(Wire Fraud)

19.   The   Grand   Jury   hereby   realleges   and   incorporates paragraphs 1 through 8 and 12 through 18 of this Second Superseding Indictment as if stated in full herein.

20.   Beginning   at   least   in   or   about   September   2007,   and continuing through at least in or about June 2009,  the exact dates

6

U.S. v. Dennis Earl Hecker, et al.        Criminal No. 10-32(JNE/SRN)

being unknown to the Grand Jury, in the State and District of
Minnesota and elsewhere, the defendants,

**DENNIS EARL HECKER** and
**STEVEN JOSEPH LEACH,**

aiding and abetting each other, and aided and abetted by others
known and unknown to the Grand Jury, knowingly and intentionally
devised a scheme and artifice to defraud and to obtain millions of
dollars in money and property from Chrysler Financial and others by
means of material false and fraudulent pretenses, representations,
and promises.

### THE "HYUNDAI" FRAUD SCHEME

It was a part of the scheme and artifice that:

21.  In or about the fall of 2007, the defendants negotiated
to purchase over 5,000 Hyundai vehicles from Hyundai Motor America
("HMA") for the Hecker organization's fleet leasing business.

22.  Specifically, in approximately November 2007, HMA
provided the Hecker organization with letters reflecting the deal
the defendants had negotiated with HMA.    In the letters, HMA
offered to sell the Hecker organization approximately 1) 605
"repurchase" vehicles ("605 repurchase letter"), 2) 4,250 "risk"
vehicles ("4,250 risk letter"), and 3) 610 "risk" vehicles ("610
risk letter").   Thus, in the fall of 2007, HMA offered to sell the
Hecker organization approximately 4,860 "risk" vehicles and

U.S. v. Dennis Earl Hecker, et al.        Criminal No. 10-32(JNE/SRN)

approximately 605 "repurchase" vehicles, for a total of approximately 5,465 Hyundai vehicles.

23.   As part of the deal with HMA, the defendants negotiated to receive millions of dollars, upwards of over approximately $4,000 per "risk" vehicle, in incentive payments from HMA.

24.   In or about the fall of 2007, the defendants arranged to obtain approximately $80 million in fleet lease financing for the Hyundai vehicles from Chrysler Financial.   To obtain the fleet lease financing, the defendants made material false statements, false representations and omissions.

25.   Specifically, on or about November 15, 2007, at HECKER's direction, and without HMA's permission or awareness, LEACH arranged to create a fraudulently altered HMA letter.   Namely, LEACH provided a Hecker organization employee with the actual 605 repurchase letter.   LEACH directed this person to cover existing language on the letter with a taped-on insert so that it would appear as if HMA was offering to sell the Hecker organization 4,855 "repurchase" Hyundai vehicles.   In fact, as the defendants well knew, HMA had made no such offer.   The purported "repurchase" number of 4,855 was calculated to reflect the approximate total number of "risk" vehicles that the defendants were already in the process of purchasing from HMA, but for which the defendants needed permanent financing.

8

U.S. v. Dennis Earl Hecker, et al.          Criminal No. 10-32(JNE/SRN)

26.  On  or  about  November  15,  2007,  LEACH  caused  the
fraudulently  altered  HMA  letter  to  be  faxed  from  the  Hecker
organization in St. Louis Park, Minnesota to HECKER at the Detroit
Metropolitan Wayne County Airport in Michigan.

27.  On  November  15,  2007,  after  HECKER  received  the
fraudulently altered HMA letter in Michigan, HECKER presented it to
Chrysler Financial, along with the actual 610 risk letter.  HECKER
falsely represented the two documents as the deal he had negotiated
with HMA.  HECKER intentionally and affirmatively concealed from
Chrysler Financial two of the actual HMA offer letters, the 4,250
risk letter and the 605 repurchase letter.  Thus, HECKER, aided and
abetted by LEACH, misled Chrysler Financial into believing HMA had
offered  to  sell  the  Hecker  organization  a  large  number  of
"repurchase"  vehicles,  approximately  4,855,  and  a  much  smaller
number  of  "risk"  vehicles,  approximately  610,  for  a  total  of
approximately 5,465 Hyundai vehicles.  In fact, as the defendants
well knew, HMA's deal to sell a total of approximately 5,465
Hyundai vehicles consisted mostly of "risk" vehicles (approximately
4,860), with a much smaller number (approximately 605) of
"repurchase" vehicles.

28.  Thus, in or about November 2007, through the fraudulently
altered HMA letter and through other material false statements,
false  representations,  and  omissions,  the  defendants  misled

Chrysler Financial into financing thousands of Hyundai "risk" vehicles believing that the vehicles were "repurchase" vehicles. As a result, the collateral for Chrysler Financial's financing was substantially and materially less than what the defendants represented it to be. Namely, the majority of the Hyundai vehicles were not subject to any guarantee from HMA that it would repurchase the vehicles, and therefore Chrysler Financial was at significant financial risk that the vehicle sale proceeds ultimately would be insufficient to pay off the Hyundai vehicle financing.

29.    In particular, starting in or about mid-November 2007, the defendants caused others within the Hecker organization to prepare and to send to Chrysler Financial a number of funding packages, including security agreements and vehicle schedules, the content of which falsely represented that the vehicles that Chrysler Financial was financing for HECKER and the Hecker organization were "repurchase" vehicles when in fact they were "risk" vehicles.    Thus, through the funding packages, the defendants further misled Chrysler Financial as to the nature and value of Chrysler Financial's collateral.

30.    In or about November 2007, the Hecker organization received HMA incentive payments, including a wire of approximately $7.8 million and a wire of approximately $9.4 million, after the Hecker organization began purchasing the Hyundai "risk" vehicles

10

from HMA. Although information regarding the incentive payments to HECKER and the Hecker organization was material to Chrysler Financial, the defendants, through the fraudulently altered HMA letter and otherwise, intentionally and affirmatively concealed the incentive payments from Chrysler Financial.

31.     In addition, as a result of the defendants' material false statements, false representations and omissions, HECKER and the Hecker organization were able to obtain Hyundai vehicles, which they were then able to lease to rental car companies, including those in which HECKER held an ownership interest. Thus, HECKER and the Hecker organization were able to generate revenue from such vehicles through the fraud.

32.     At least in part to prevent the fraud from coming to light and/or being reported to the authorities, the defendants and others engaged in cover-up and lulling communications with various individuals and entities.

33.     In or about December 2007, after making admissions regarding the fraud, LEACH tendered his resignation to HECKER, in an attempt to distance himself from the fraud in which he had participated.

34.     At least in part to prevent the fraud from coming to light and/or being reported to the authorities, HECKER, with the help of others, arranged to have Hyundai Motor Finance Company, now

11

U.S. v. Dennis Earl Hecker, et al.          Criminal No. 10-32(JNE/SRN)

known as Hyundai Capital America ("Hyundai Capital"), refinance a
portion of the Hyundai vehicles financed by Chrysler Financial.

35.  Despite the Hyundai Capital refinancing and some other
payments, HECKER and the Hecker organization did not fully repay
the money that Chrysler Financial provided in reliance on the
defendants' material false statements, false representations, and
omissions.  After HECKER and the Hecker organization failed to
repay Chrysler Financial, and after Chrysler Financial sold its
collateral, including the Hyundai vehicles that did not have the
HMA repurchase guarantee represented by the defendants, Chrysler
Financial suffered a financial loss that exceeds approximately $10
million.

36.  As part of a personal bankruptcy proceeding, HECKER
sought a discharge of the more than approximately $10 million he
owed to Chrysler Financial as a result of the Hyundai fraud scheme
(as well as hundreds of millions of dollars in other debt HECKER
owed to Chrysler Financial, Hyundai Capital and others), in an
attempt to avoid his repayment obligations.  Despite filing
personal bankruptcy, HECKER, with the assistance of others, has
concealed assets and has continued to live an extravagant
lifestyle.

12

U.S. v. Dennis Earl Hecker, et al.        Criminal No. 10-32(JNE/SRN)

## THE WIRES

37.   On or about the dates set forth below, in the State and District of Minnesota and elsewhere, and for the purpose of executing and attempting to execute the scheme and artifice, the defendants,

**DENNIS EARL HECKER** and
**STEVEN JOSEPH LEACH,**

aiding and abetting each other, and aided and abetted by others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the scheme and artifice, knowingly caused to be transmitted in interstate commerce the interstate wire communications described below:

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| 2 | 11/15/07 | Wire transfer of approximately $7.8 million from HMA's account at Bank of America in New York to the Hecker organization's account at Wells Fargo Bank in Minnesota |
| 3 | 11/15/07 | Facsimile transmission of fraudulently altered HMA letter from the Hecker organization in Minnesota to Detroit Metropolitan Wayne County Airport in Michigan |
| 4 | 11/19/07 | Email from Chrysler Financial in Michigan to HECKER in Minnesota, cc: LEACH and others, re. the Hyundai program |
| 5 | 11/30/07 | Wire transfer of approximately $9.4 million from HMA's account at Bank of America in New York to the Hecker organization's account at Wells Fargo Bank in Minnesota |

U.S. v. Dennis Earl Hecker, et al.        Criminal No. 10-32(JNE/SRN)

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| 6 | 10/25/08 | Telephone discussion between HECKER in Mexico and an individual with HMA in California regarding fraudulently altered HMA letter |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 7-15
(Wire Fraud)

38. The Grand Jury hereby realleges and incorporates paragraphs 1 through 8, 12 through 18, and 21 through 36 of this Second Superseding Indictment as if stated in full herein.

39. Beginning at least in or about November 2006, and continuing through at least in or about June 2009, the exact dates being unknown to the Grand Jury, in the State and District of Minnesota and elsewhere, the defendants,

**DENNIS EARL HECKER** and
**STEVEN JOSEPH LEACH,**

aiding and abetting each other, and aided and abetted by others known and unknown to the Grand Jury, knowingly and intentionally devised a scheme and artifice to defraud and to obtain millions of dollars in money and property from Chrysler Financial, U.S. Bank, Carlton Financial, North Shore Bank, American State Bank and Trust Company of Williston ("American State Bank"), Center National Bank,

U.S. v. Dennis Earl Hecker, et al.     Criminal No. 10-32(JNE/SRN)

and others by means of material false and fraudulent pretenses, representations, and promises.

### THE "SUZUKI" FRAUD SCHEME

It was a part of the scheme and artifice that:

40.  In or about the fall of 2006, as he had done in prior years, LEACH negotiated to purchase Suzuki "repurchase" vehicles from American Suzuki Motor Corporation ("Suzuki Motor") for the Hecker organization's fleet leasing business.  To memorialize the deal, Suzuki Motor provided the Hecker organization with the 2007 purchase contract ("2007 Suzuki contract").

41.  A material part of the 2007 Suzuki contract was a page entitled "Addendum A" that set forth fleet incentives, or "cash back," that Suzuki Motor would pay HECKER and the Hecker organization ("Addendum A incentive page").  By way of example, for a 2007 Model XL-7 2WD with a dealer invoice price of $23,913.94, the fleet incentive was $4,513.94, which reduced the Hecker organization's actual cost for that vehicle to $19,400.00.  In addition, because the amount that Suzuki Motor guaranteed to pay to "repurchase" each vehicle was based on the Hecker organization's actual cost, the incentives also reduced the ultimate "repurchase" payments the Hecker organization would receive after the vehicle was taken out of rental service and sold at auction.

42.  In or about the fall of 2006, at HECKER's and LEACH's direction, and without Suzuki Motor's permission or awareness, the 2007 Suzuki contract was fraudulently altered by the deliberate and intentional removal of the Addendum A incentive page.  The fraudulently altered contract was provided to Chrysler Financial in order to obtain what ultimately amounted to approximately $20 million in fleet lease financing for approximately 700 Suzuki vehicles at the full dealer invoice price. As such, the defendants withheld material information from Chrysler Financial about the Hecker organization's actual cost per vehicle and about the true value of Suzuki Motor's "repurchase" guarantee.    Thus,   the collateral for Chrysler Financial's financing was substantially and materially less than what the defendants represented it to be, and Chrysler Financial was at significant financial risk that the vehicle sale proceeds, including "repurchase" payments, ultimately would be insufficient to pay off the Suzuki vehicle financing.

43.  As a result of the fraud, throughout 2007, HECKER and the Hecker organization were able to obtain millions of dollars in incentive payments and to obtain Suzuki vehicles, which they were then able to lease to rental car companies, including those in which HECKER held an ownership interest.  In years prior to 2007, the defendants or others at their direction had similarly provided lenders with the fraudulently altered Suzuki contracts which

U.S. v. Dennis Earl Hecker, et al.     Criminal No. 10-32(JNE/SRN)

omitted the Addendum A incentive page, allowing HECKER and the Hecker organization to obtain the incentive payments and to obtain the Suzuki vehicles.

44.   In or about the fall of 2007, LEACH again negotiated to purchase Suzuki "repurchase" vehicles from Suzuki Motor, and Suzuki Motor again provided the Hecker organization with the purchase contract ("2008 Suzuki contract"). As in past years, a material part of the 2008 Suzuki contract was the Addendum A incentive page listing the fleet incentives.   Once again, at the defendants' direction, the 2008 Suzuki contract was fraudulently altered by the deliberate and intentional removal of the material Addendum A incentive page.

45.   In or about late 2007, the Hecker organization, at HECKER's and LEACH's direction, began preparing to obtain from Chrysler Financial what would ultimately amount to approximately $50 million in fleet lease financing for approximately 2,000 Suzuki vehicles at the full dealer invoice price.

46.   On or about January 29, 2008, to obtain financing, at HECKER's direction, a Hecker organization employee emailed the fraudulently altered 2008 Suzuki contract omitting the Addendum A incentive page from the Hecker organization in St. Louis Park, Minnesota to Chrysler Financial in Michigan.

17

47. In or about early February 2008, after being told on numerous occasions by LEACH, HECKER and others not to provide the Addendum A incentive page to Chrysler Financial, a Hecker organization employee inadvertently included a copy of the Addendum A incentive page among other documents delivered to Chrysler Financial.

48. After receiving the Addendum A incentive page for the first time, a Chrysler Financial representative telephoned HECKER and insisted on receiving the incentive payments that were part of the 2008 Suzuki contract. HECKER agreed to pay Chrysler Financial the 2008 incentive payments.

49. In or about early February 2008, after the telephone call with the Chrysler Financial representative, HECKER communicated to several Hecker organization employees that he had not wanted Chrysler Financial to receive the Addendum A incentive page and that he was displeased the employee had sent it to Chrysler Financial. HECKER later communicated his directive that the information from the Addendum A incentive page not be provided to other lenders.

50. On or about February 18, 2008, a Chrysler Financial representative inquired and learned from the Hecker organization that it had also received incentives for the 2007 Suzuki vehicles.

Chrysler Financial insisted on also receiving the 2007 incentive payments, and HECKER agreed.

51. Starting in or about March 2008 and continuing to in or about September 2008, HECKER, with the assistance of others, arranged to obtain what would ultimately amount to approximately $30 million in fleet lease financing for a total of approximately 1,000 Suzuki vehicles from U.S. Bank and from Carlton Financial, a fiscal agent representing North Shore Bank, American State Bank, and Center National Bank. To obtain the financing for vehicles at the full dealer invoice price, at HECKER's direction, these lenders were provided with the fraudulently altered 2008 Suzuki contract which materially omitted the Addendum A incentive page, which included information about the Hecker organization's actual cost per vehicle and about the true value of Suzuki Motor's "repurchase" guarantee. As a result of the omitted incentive information, the collateral for these lenders' financing was substantially and materially less than what HECKER and others represented it to be, and these lenders were at significant financial risk that the vehicle sale proceeds, including "repurchase" payments, ultimately would be insufficient to pay off the Suzuki vehicle financing.

52. As a result of the fraud, throughout 2008, HECKER and the Hecker organization were able to obtain millions of dollars in incentive payments and to obtain Suzuki vehicles, which they were

19

then able to lease to rental car companies, including those in which HECKER held an ownership interest.

53.   At least in part to prevent the fraud from coming to light and/or being reported to the authorities, HECKER and others engaged in cover-up and lulling communications with various individuals and entities.

54.   HECKER and the Hecker organization did not fully repay the money that U.S. Bank and Carlton Financial, as fiscal agent for North Shore Bank, American State Bank, and Center National Bank, provided in reliance on the fraudulently altered 2008 Suzuki contract and otherwise.   After HECKER and the Hecker organization failed to repay the lenders, and after all the Suzuki vehicles are sold, the lenders collectively are expected to suffer a financial loss that exceeds approximately $5 million.

55.   As part of a personal bankruptcy proceeding, HECKER sought a discharge of the more than approximately $5 million he owed to the lenders as a result of the Suzuki fraud scheme, in an attempt to avoid his repayment obligations.   Despite filing personal bankruptcy, HECKER, with the assistance of others, has concealed assets and has continued to live an extravagant lifestyle.

20

U.S. v. Dennis Earl Hecker, et al.          Criminal No. 10-32(JNE/SRN)

### THE WIRES

56.  On or about the dates set forth below, in the State and
District of Minnesota and elsewhere, and for the purpose of
executing and attempting to execute the scheme and artifice, the
defendants,

**DENNIS EARL HECKER** and
**STEVEN JOSEPH LEACH,**

aiding and abetting each other, and aided and abetted by others
known and unknown to the Grand Jury, for the purpose of executing
and attempting to execute the scheme and artifice, knowingly caused
to be transmitted in interstate commerce the interstate wire
communications described below:

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| 7 | 3/16/07 | Email from the Hecker organization in Minnesota to Chrysler Financial in Michigan, attaching fraudulently altered 2007 Suzuki contract, signed by LEACH |
| 8 | 8/23/07 | Wire transfer of approximately $566,184 from Suzuki Motor's account at Union Bank in California to the Hecker organization's account at Wells Fargo Bank in Minnesota |
| 9 | 12/18/07 | Email from LEACH in Minnesota to Suzuki Motor in California ordering 2000 additional Suzuki vehicles |
| 10 | 12/20/07 | Email from Suzuki Motor in California to LEACH in Minnesota, attaching 2008 Suzuki contract |

U.S. v. Dennis Earl Hecker, et al.          Criminal No. 10-32(JNE/SRN)

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| 11 | 1/29/08 | Email from the Hecker organization in Minnesota to Chrysler Financial in Michigan, attaching fraudulently altered 2008 Suzuki contract |
| 12 | 4/08/08 | Facsimile transmission of fraudulently altered 2008 Suzuki contract from the Hecker organization in Minnesota to U.S. Bank in Washington |
| 13 | 4/17/08 | Wire transfer of approximately $9.9 million from U.S. Bank's account in Washington to Chrysler Financial's account at The Chase Manhattan Bank in New York |
| 14 | 5/23/08 | Wire transfer of approximately $1.5 million from Suzuki Motor's account at Union Bank in California to the Hecker organization's account at Wells Fargo Bank in Minnesota |
| 15 | 7/03/08 | Wire transfer of approximately $974,000 from Carlton Financial's account at Home Federal Savings Bank in Minnesota to Chrysler Financial's account at The Chase Manhattan Bank in New York |

All in violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT 16
(Bankruptcy Fraud-False Declaration)

57. The Grand Jury hereby realleges and incorporates paragraphs 1 through 8, 12 through 18, 21 through 36, and 40 through 55 of this Second Superseding Indictment as if stated in full herein.

22

58.   On or about June 4, 2009, pursuant to Chapter 7 of Title 11 of the United States Code, HECKER filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the District of Minnesota, resulting in a bankruptcy case that was captioned *In re Dennis E. Hecker*, Case No. 09-50779.

59.   In his bankruptcy case, HECKER sought to discharge his debts, including money he owed to Chrysler Financial, U.S. Bank, and Carlton Financial (as fiscal agent for North Shore Bank, American State Bank, and Center National Bank), as a result of the fraud schemes.

60.   At the commencement of the bankruptcy case, an impartial bankruptcy trustee was appointed to collect and to liquidate all of HECKER's assets for the benefit of creditors (the "Chapter 7 Trustee").

61.   HECKER was required to sign and file, under penalty of perjury, a bankruptcy petition, schedules providing information regarding his interests in assets, and a statement of his financial affairs.

62.   On or about July 1, 2009, in the State and District of Minnesota, the defendant,

**DENNIS EARL HECKER,**

knowingly and fraudulently made a materially false declaration, certification, verification, and statement under penalty of perjury

23

<u>U.S. v. Dennis Earl Hecker, et al.</u>          <u>Criminal No. 10-32(JNE/SRN)</u>

as permitted under Title 28, United States Code, Section 1746, in

and in relation to his bankruptcy case, a case under Title 11,

United States Code, by submitting Schedules of Assets and

Liabilities and a Statement of Financial Affairs ("SOFA") which

included the following material false statements and omissions,

among others:

| SCHEDULE | FALSE STATEMENT/OMISSION |
|----------|--------------------------|
| SOFA | Although HECKER disclosed "[b]oats, inventory, etc. with $150,000.00 value held for resale" for Northstate Financial Corp., this was false in that various items HECKER had titled in the name of Northstate Financial Corp., including luxury boats, vehicles, motorcycles, and trailers, were not in fact held for resale by that corporate entity but were for HECKER's own personal use. |
| SOFA | Although HECKER disclosed transfers to an individual, Individual A, totaling approximately $118,500 within the prior year, HECKER omitted disclosing that his transfers to Individual A were well in excess of the disclosed amount, including large amounts of credit card charges, cash, jewelry, vacation expenses, school tuition, and a lease of a luxury vehicle. |
| SOFA | HECKER omitted disclosing that in the prior year he had acquired a 2008 black Land Rover vehicle that was titled in the name of Individual A but paid for and owned by HECKER. |
| SOFA | HECKER omitted disclosing that in the prior year he had transferred over approximately $80,000 to an individual, Individual B, who retained the money in Individual B's Wells Fargo Bank account but over which HECKER exercised control. |
| Schedule B | HECKER omitted disclosing ownership of a golf membership at the Golf Club Scottsdale in Arizona. |

U.S. v. Dennis Earl Hecker, et al.        Criminal No. 10-32(JNE/SRN)

| SCHEDULE | FALSE STATEMENT/OMISSION |
|----------|--------------------------|
| Schedule B | HECKER omitted disclosing ownership of a membership in the Roaring Fork Club in Colorado. |
| Schedule B | Although HECKER disclosed several luxury watches, HECKER omitted disclosing a substantial number of other luxury watches that he owned. |
| Schedule B | Although HECKER disclosed that he had $5,500 in cash, HECKER omitted disclosing that in fact he had cash well in excess of $5,500. |

All in violation of Title 18, United States Code, Section 152(3).

### COUNT 17
(Bankruptcy Fraud-False Declaration)

63.   The Grand Jury hereby realleges and incorporates paragraphs 1 through 8, 12 through 18, 21 through 36, 40 through 55, and 58 through 61 of this Second Superseding Indictment as if stated in full herein.

64.   Between approximately July 2009 and September 2009, the Chapter 7 Trustee discovered a number of additional assets that HECKER had failed to disclose in his original bankruptcy filing. After the Chapter 7 Trustee identified these assets, sued HECKER, and otherwise informed HECKER of the undisclosed assets, HECKER filed an amended SOFA and amended schedules, but HECKER continued to make material false statements and omissions in his amended filing with respect to assets identified by the Chapter 7 Trustee and otherwise.

25

U.S. v. Dennis Earl Hecker, et al.        Criminal No. 10-32(JNE/SRN)

65.   On or about September 1, 2009, in the State and District
of Minnesota, the defendant,

**DENNIS EARL HECKER,**

knowingly and fraudulently made a materially false declaration,
certification, verification, and statement under penalty of perjury
as permitted under Title 28, United States Code, Section 1746, in
and in relation to his bankruptcy case, a case under Title 11,
United States Code, by submitting Amended Schedules of Assets and
Liabilities and an Amended Statement of Financial Affairs, in which
the defendant made the following material false statements and
omissions, among others:

| SCHEDULE | FALSE STATEMENT/OMISSION |
|----------|--------------------------|
| Schedule B | Although HECKER disclosed several luxury watches, in addition to those disclosed on his original schedules, HECKER omitted disclosing a substantial number of other luxury watches that he owned, including Rolex Yachtmaster (Model 16622), Rolex (Model 16628), Chanel (Model 54880), Hubolt Big Bang (Model 635399), Breitling Chronometer Super Ocean Edition (Model A17320/1091808), and Breitling 1884 (Model A13356). |

All in violation of Title 18, United States Code, Section
152(3).

U.S. v. Dennis Earl Hecker, et al.          Criminal No. 10-32(JNE/SRN)

## COUNTS 18-26
(Bankruptcy Fraud-Fraudulent Transfer and Concealment)

66. The Grand Jury hereby realleges and incorporates paragraphs 1 through 8, 12 through 18, 21 through 36, 40 through 55, 58 through 61, and 64 of this Second Superseding Indictment as if stated in full herein.

67. Beginning on or about the dates listed below, and continuing thereafter, the exact dates being unknown to the Grand Jury, in the State and District of Minnesota and elsewhere, the defendant,

### DENNIS EARL HECKER,

aided and abetted by others known and unknown to the Grand Jury, in contemplation of filing a bankruptcy case under Title 11, United States Code, and with the intent to defeat the provisions of Title 11, United States Code, knowingly and fraudulently transferred and concealed the defendant's property and any of the defendant's interest in that property, including as follows:

| COUNT | DATE | TRANSFER/CONCEALMENT |
|-------|------|----------------------|
| 18 | 4/09/09 | 2008 black Land Rover vehicle owned by HECKER and titled in the name of Individual A |
| 19 | 5/14/09 | Approximately $10,425 in gift cards purchased by HECKER from funds deposited by HECKER into HECKER's Crown Bank checking account |

27

U.S. v. Dennis Earl Hecker, et al.          Criminal No. 10-32(JNE/SRN)

| COUNT | DATE | TRANSFER/CONCEALMENT |
|-------|------|----------------------|
| 20 | 5/22/09 | Approximately $28,000 deposited by checks into Individual B's Wells Fargo Bank account over which HECKER exercised control |
| 21 | 5/28/09 | Approximately $20,500 transferred by wire into Individual B's Wells Fargo Bank account over which HECKER exercised control |
| 22 | 6/4/09 | Approximately $33,057 transferred by wire into Individual B's Wells Fargo Bank account over which HECKER exercised control |
| 23 | 6/4/09 | Real property located at 1615 Northridge Drive, Medina, Minnesota, purportedly subject to a lease extended to Individual A |
| 24 | 6/4/09 | Real property located at 11614 Echo Bay Drive, Crosslake, Minnesota, purportedly subject to a lease extended to an individual, Individual C, through that individual's corporate entity |
| 25 | 6/4/09 | Real property located at 11707 Cross Avenue, Crosslake, Minnesota, purportedly subject to a lease extended to Individual B and another individual, Individual D |
| 26 | 6/11/09 | Approximately $10,000 in gift cards purchased by Individual B for HECKER from HECKER funds deposited into Individual B's Wells Fargo Bank account over which HECKER exercised control |

All in violation of Title 18, United States Code, Sections 152(7) and 2.

U.S. v. Dennis Earl Hecker, et al.          Criminal No. 10-32(JNE/SRN)

### FORFEITURE ALLEGATIONS

Counts 1 through 26 of this Second Superseding Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

As a result of the offenses alleged in Counts 1 through 26 of this Second Superseding Indictment, the defendants,

### DENNIS EARL HECKER and
### STEVEN JOSEPH LEACH,

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Sections 2, 152(3), 152(7), 1343 and 1349.

If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and by Title 28, United States Code, Section 2461(c).

U.S. v. Dennis Earl Hecker, et al.        Criminal No. 10-32(JNE/SRN)

All in violation of Title 18, United States Code, Sections 2, 152(3), 152(7), 981(a)(1)(C), 982(a)(1), 982(b)(1), 1343, 1349, 1957 and Title 28, United States Code, Section 2461(c).


A TRUE BILL


_____          _____
UNITED STATES ATTORNEY                    FOREPERSON


30