```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
               Case No. 10-cr-32(1)(JNE/SRN)
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S MOTION FOR** |
| v. | ) | **REVOCATION OF ORDER OF RELEASE** |
| | ) | |
| DENNIS EARL HECKER, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys B. Todd Jones, United States Attorney for the District of Minnesota, and Assistant U.S. Attorneys Nicole A. Engisch, Nancy E. Brasel, and David M. Genrich, hereby moves the district court pursuant to Title 18, United States Code, Sections 3143 and 3148 for revocation of the February 12, 2010 Amended Order Setting Conditions of Release of the defendant, Dennis Earl Hecker (Doc. No. 28). The hearing on this motion is scheduled for Wednesday, September 8, at 1:30 p.m., before United States Magistrate Judge Susan Richard Nelson, United States Courthouse, Courtroom 9E, Minneapolis, Minnesota.

## INTRODUCTION

The United States brings this motion because the defendant has been committing federal crimes while on release, including as recently as July 2010. He is thus in violation of this Court's February 12 Amended Order Setting Conditions of Release. While on release after being charged in this case with bankruptcy fraud and

wire fraud, the defendant has committed multiple additional acts of bankruptcy fraud by secretly liquidating and concealing assets belonging to the bankruptcy estate.

Under 18 U.S.C. § 3148, if there is probable cause to believe that, while on release, a defendant committed a federal, state or local felony, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety or any other person or the community." Here, probable cause exists to show the defendant has committed bankruptcy fraud since being indicted and released in this case, and that he undertook acts in furtherance of the fraud as recently as July 2010. There is also probable cause to believe the defendant has committed acts of wire fraud within the last few weeks. In addition, the defendant has defied orders of this Court which require him to report any changes with respect to his income or assets, based on his prior representation to the Court that he had no funds with which to hire an attorney and that he therefore qualified for the appointment of an attorney at the public's expense.

As more fully explained below and as will be further explored at a hearing on this motion, the risk factors presented in the initial Pretrial Services Report, combined with the new information about the defendant's blatant violations of federal law, demonstrate that there is no longer any condition or combination of

conditions that will reasonably assure the defendant's appearance in court or the safety of the community.  See 18 U.S.C. § 1342.

## Release Orders and Motions to Modify

On February 11, 2010, at the defendant's first court appearance, this Court entered an Order Setting Conditions of Release (Doc. No. 16).  Among other things, the Order required the defendant to be placed on an electronic monitor, and it imposed a curfew and travel restrictions on the defendant.  The Order was based on the parties' stipulation as well as the recommendations by the U.S. Pretrial Services Office and its conclusion, set forth in its bond report, that the defendant presented a risk of flight under 18 U.S.C. § 3142.

From February through May 2010, the defendant brought several motions seeking to modify the conditions of his release, each of which was denied.[1]  In the last Order denying the defendant's motion to modify the conditions of release, this Court noted that the defendant "poses a serious risk of flight and the pressures of trial will only exacerbate the strain from which he claims to suffer."  (Doc. 153, at 22).  Trial is scheduled for October 18, 2010, approximately six weeks from now.

In both the first Order Setting Conditions of Release (Doc. No. 16) and the Amended Order Setting Conditions of Release (Doc.

---

[1]See Doc. Nos. 28 (Amended Order), 29 (motion), 31 (Order denying motion), 92 (motion, later withdrawn), 142 (motion).

No. 28), the first condition imposed upon the defendant is as follows: "The defendant must not violate any federal, state or local law while on release." (Doc. No. 16, ¶1; Doc. No. 28, ¶1).

### Representations to the Court at CJA Appointment

On March 30, 2010, the defendant's privately retained counsel moved to withdraw from representation of the defendant on the grounds that the defendant was unable to pay for his services. (See Doc. No. 78, at 2). On April 14, 2010, this Court granted the motion. The defendant then requested that an attorney be appointed to represent him at the public's expense pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A. The Court "inquired of Mr. Hecker's finances, under oath." (Order, Doc. No. 78, at 4). As the Court summarized in its Order appointing CJA counsel,

> Mr. Hecker testified that the financial disclosures made in the proceeding before the United States Bankruptcy Court accurately reflect his finances. The Court therefore determined that Mr. Hecker was financially unable to obtain counsel . . . .

(Doc. No. 78, at 4). The Court appointed CJA panel attorney Brian Toder and his firm to represent the defendant, and further ordered, "If Defendant should hereafter retain private counsel, or if it is otherwise determined that funds are available for payment from or on behalf of Defendant, he shall be required to reimburse the government pursuant to 18 U.S.C. § 3006A(f) for any attorney's fees or costs already expended by his court-appointed attorney. The

Federal Defender's Office will pursue collection of those fees and costs."  (Doc. No. 78, at 5).

### Defendant's Actions Since February 11, 2010

Since this Court's initial Order Setting Conditions of Release on February 11, 2010, the defendant has engaged in the following behavior, among others, all of which indicate that he presents a much more significant risk of flight and danger to the community than was present on February 11.

**A.    The Defendant Has Committed Federal Crimes**

**1.    Bankruptcy Fraud**

On July 1, 2009, the defendant filed bankruptcy schedules with the United States Bankruptcy Court, in connection with his June 4, 2009 bankruptcy petition.  (Case No. 09-bk-50779).  The schedules listed several Prudential life insurance policies, in the name of the defendant, with the listed beneficiaries varying between his ex-wife and his four children.  The defendant claimed an exemption for one of the policies up to $8,400, as is allowed by bankruptcy law.  The remaining policies, held by the defendant prior to the June 4 bankruptcy, became the property of the bankruptcy estate.

In approximately early June 2010, the defendant received a check from Prudential for $30,000, which represented proceeds from one of the insurance policies listed on the defendant's bankruptcy schedules.  At that time, the defendant did not turn the proceeds over to the estate, as he was required to do by law.  Instead, on

June 10, 2010, he concealed the assets from the estate, depositing them into 21st Century Bank in a newly-opened account under the business name "JDS Family Holdings LLC." He then wrote several checks on the 21st Century Bank Account, which had only the single $30,000 Prudential check deposit. The checks were made out to "Auto Concepts" for $1215.00, Auto Concepts for $5000.00, Lafayette Club for $4500.00, and Wayzata [Country Club] for $1275.00.[2] These four checks were written from June 10 through June 13, 2010. 21st Century Bank reversed the paid debits on June 16, 2010, and closed the account on June 18, 2010, returning the $30,000 to the defendant.

On July 16, 2010, the appointed Chapter 7 Trustee, Randall Seaver, discovered the $30,000 in concealed funds belonging to the estate, and immediately demanded repayment. The defendant repaid the funds, thus tacitly conceding that the funds were in fact assets of the estate to which he was not entitled. Although Hecker's bankruptcy counsel informed the Trustee that the Prudential policy had lapsed and died six months prior to the bankruptcy filing and that Hecker had received a check for the proceeds which he thought had been lost, neither the defendant nor his counsel offered any justification for why he retained and

---

[2]The defendant's payments to these country clubs is to say the least highly suspicious, given that he has represented to this Court that he is so broke he cannot pay for an attorney. It is also suspicious because he is alleged in this case to have concealed his membership in country clubs from the bankruptcy Trustee.

concealed the funds, only providing them to the Trustee when he was ultimately caught by the Trustee.

Moreover, after being caught stealing $30,000 from the bankruptcy estate, the defendant did not inform the Trustee, or this Court, that in the same time frame as he obtained the $30,000 in Prudential insurance proceeds, he also received additional insurance proceeds. Namely, he had received another $124,000, also from Prudential, in insurance proceeds through four separate checks, at least three of which were drawn from policies that Hecker listed on his bankruptcy schedules. In a clear attempt to conceal these estate funds, from approximately June 19, 2010, through June 30, 2010, the defendant cashed these Prudential checks at "Your Exchange," a check-cashing business. The defendant paid over $3,700 in fees to Your Exchange to cash Prudential's checks. He did not turn over any of these additional Prudential proceeds to the bankruptcy trustee, despite that by late July 2010, he was put on notice that such insurance proceeds were without question property of the bankruptcy estate, as a result of the Trustee's demand for the $30,000 in Prudential insurance proceeds that he had deposited at 21st Century Bank.

In August 2010, when the Chapter 7 Trustee learned of the defendant's additional acts of fraud, he again demanded return of the money from the defendant. The defendant's attorney has represented that it will be returned to the Trustee, again tacitly

conceding that such funds represent estate assets to which Hecker is not entitled.

Hecker's initial retention of $30,000 in Prudential proceeds has been compounded by the exact same behavior with respect to other Prudential proceeds, despite the fact that he was put on clear notice that such proceeds represent the assets of the estate. The defendant's concealment, liquidation, and use of over $124,000 in prepetition assets is bankruptcy fraud in violation of 18 U.S.C. § 152, and the defendant is in clear violation of the conditions of his release.

    2.    **<u>Wire Fraud</u>**

Also this week, the United States has further learned that the defendant leased a $20,000 Kia Soul for $329.50 per month either by falsely misrepresenting his income to the Kia dealership or, if his income representations are true, by committing further acts of concealment of his income from this Court.  In June 2010, the defendant applied for financing for the Kia vehicle from Kia Motors Finance, and leased the vehicle through Saint Cloud Auto Center, LLC ("Kia of St. Cloud").  The defendant leased the vehicle through New Dimension Advisors LLC, a shell company that he created following his bankruptcy and which he states is in the business of "consulting."  New Dimension Advisors has no known business operations, no employees, and is nothing more than a mechanism by

which the defendant transfers money through bank accounts to pay his personal expenses.

Nonetheless, the defendant represented, via telephone, to a representative of Kia of St. Cloud that his income via New Dimensions Advisors ranged from $5,000 to $40,000 per month, and he directed the representative to list $10,000 per month as an average income on the finance application. Kia of St. Cloud, and Kia Finance, relied on this information when issuing the lease.

There is probable cause to believe the defendant committed wire fraud in violation of 18 U.S.C. § 1343 in obtaining the Kia lease, by representing his income as ranging from $5,000 to $40,000 per month as a part of New Dimension Advisors, which appears to be a shell company for which the defendant does no real "consulting" work.

**B.   The Defendant Has Violated the Court's Order Requiring Him to Inform the Court of Any Change in Income or Assets With Which to Retain Counsel or Reimburse the Government**

In this Court's Order of April 12, 2010, the Court ordered that the defendant is required to reimburse the government, which is paying for his attorneys' fees through the Criminal Justice Act, if funds are available for payment. Thus, if for some reason the income figures the defendant supplied to the Kia dealership are correct, then the defendant is in blatant violation of this Court's orders to provide updated income and asset information and to repay the public for the services of his court appointed attorney if it

is determined that he has the funds with which to pay an attorney. In any event, the defendant has also clearly violated this Court's Order by failing to disclose to this Court any of the Prudential insurance proceeds that he received within the last several weeks.

## **CONCLUSION**

As described above, the defendant is in blatant violation of his release conditions.  After having been charged in this case with bankruptcy fraud and wire fraud, he committed the same types of crimes while on release by this Court.  In addition, he has disregarded court orders requiring him to be forthcoming and truthful about his income and assets.  The defendant's continued and egregious pattern of secreting cash and other assets, even in the face of orders from this Court and the United States Bankruptcy Court, is indicative of one who cannot be trusted to remain in this jurisdiction for trial, and who will use any means to access cash that would fund his flight.

This defendant was a serious flight risk in February 2010. The situation has worsened, particularly as trial in this matter looms only a few weeks away, based on the defendant's acts demonstrating his danger to the community through his ongoing fraud.  Thus, in addition to presenting a significant risk of nonappearance, the defendant presents a significant risk to the safety of the community, shown by his continued pattern of criminal conduct even while released on bond.  See 18 U.S.C. §§ 3142(e),

(g). For all of these reasons, the United States respectfully requests revocation of the release Order and detention of the defendant pending trial.

Dated: September 2, 2010        Respectfully submitted,

                                              B. TODD JONES
United States Attorney

*s/ Nancy E. Brasel*

BY: NICOLE A. ENGISCH
    NANCY E. BRASEL
    DAVID M. GENRICH
Assistant United States Attorneys