UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

_____

UNITED STATES OF AMERICA,                    Case No. 10-CR-32(01) (JNE/SRN)

                 Plaintiff,

     v.

DENNIS EARL HECKER,

                 Defendant.

_____

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUBSTITUTION OF COUNSEL**

     Defendant Dennis Earl Hecker (hereinafter "Hecker") submits this Memorandum of Law in support of his Motion for Substitution of Counsel, asking this Court to approve substitution of Attorney William J. Mauzy (hereinafter "Mauzy") for Attorney Brian Toder (hereinafter "Toder") for the purpose of representing Hecker through his pending sentencing hearing. Hecker specifically asks this Court to approve substitution with the express finding that money contributed towards Mauzy's retainer be declared unavailable for funding Defendant's public defense under 18 U.S.C. § 3006A(f).  A third party (hereinafter "Third Party") recently paid Mauzy's entire retainer from funds wholly independent of Hecker's control or possession. Because 18 U.S.C. § 3006A(f) does not apply to this situation, and because Hecker has a Sixth Amendment right to be represented by Counsel of his choosing, this Court should approve substitution with the finding that Mauzy's retainer will not be subject to disgorgement under Section 3006A(f).

## PROCEDURAL AND FACTUAL HISTORY

On February 11, 2010, Hecker appeared before this Court to answer the Government's indictment against him, represented by Mauzy as well as Attorney Marsh J. Halberg (hereinafter "Halberg").  On March 5, 2010 and March 9, 2010, respectively, Halberg and Mauzy filed motions to withdraw, citing non-payment of legal fees.  (Doc. #36 and #39).  On March 10, 2010, this Court granted Halberg's motion to withdraw.  (Doc. #53).  On April 12, 2010, this Court granted Mauzy's motion to withdraw and appointed Toder as Counsel for Hecker pursuant to the Criminal Justice Act.  (Doc. #77).  In appointing Toder, Magistrate Judge Nelson issued an order which states, in relevant part that:

> If Defendant should hereafter retain private counsel, or if it is otherwise determined that funds are available for payment from or on behalf of Defendant, he shall be required to reimburse the government pursuant to 18 U.S.C. § 3006A(f) for any attorney's fees or costs already expended by his court-appointed attorney. The Federal Defender's Office will pursue collection of those fees and costs.

(Doc #78 at 5).  Toder remained Counsel for Hecker through his guilty plea in this matter on September 7, 2010 and continues to represent him.  (Doc #167).

On September 9, 2010, Hecker made Mauzy aware that the Third Party was willing to contribute funds for the purpose of retaining Mauzy to represent Hecker through sentencing in this matter.  (Affidavit of Casey T. Rundquist, attached hereto as Exhibit 1).  Mauzy then drew up a retainer agreement (hereinafter "Retainer Agreement"), which Mauzy and Hecker signed on September 9, and then sent to the Third Party for approval.  *Id.*  By September 13, 2010 Mauzy received the Retainer Agreement, signed by the Third Party, as well as the total amount necessary to satisfy the Retainer Agreement.  *Id.*  Mauzy and Hecker will submit this Retainer Agreement to the Court for review if ordered, but importantly the Retainer Agreement explicitly provides that the entire retainer was paid by independent funds of the Third Party and under no

2

circumstances created a substantive right, or any other form of access, for Hecker to obtain money under the Retainer Agreement. *Id.* All funds went directly from the Third Party to Mauzy, with Hecker only obtaining the benefit of Mauzy's representation through sentencing. *Id.*

## LEGAL ARGUMENT

This Court faces an apparent, but false, conflict between Hecker's Sixth Amendment right to counsel of his choosing and the Criminal Justice Act (hereinafter "CJA") at 18 U.S.C. § 3006A(f). While some language in Section 3006A(f) might, creatively, be read to support disgorgement of Mauzy's retainer, such a reading is inconsistent with the plain language of Section 3006(A)(f), as well as the only published Circuit Court decision analyzing whether or not a third party payment to a substituted defense  counsel is available for purposes of Section 3006(A)(f). *United States v. Crosby*, 602 F.2d 24, 25 (2nd Cir. 1979); *accord United States v. Bursey,* 515 F.2d 1228, 1235 – 37 (5th Cir. 1975)(holding that third party contributions to bail are subject to procedural protections against disgorgement under the CJA).[1] Further, allowing Mauzy's substitution, by finding that his retainer is unavailable for repayment under the CJA and not subject to disgorgement, is consistent with the underlying policy of the CJA and avoids any constitutional doubt based on Hecker's Sixth Amendment right to counsel of his choosing.

The United States Supreme Court has long recognized that under the Sixth Amendment, criminal defendants have the right to representation by counsel of their own choosing. *Powell v. Alabama*, 287 U.S. 45, 53 (1932). The Court has stated that:

---

[1] In *U.S. v. Brown*, 2008 WL 1836677 (S.D.Ga. 2008), a district court disgorged a portion of a retained defense attorney's fee under the CJA after Defendant terminated retained counsel and received appointed counsel, but did so to enforce a client's right to a reasonable fee, with client and third party payor consent. In *U.S. v. Szpyt*, 253 F.R.D. 5. (D.Me. 2008), the court initially confronted a government motion for CJA disgorgement, though the government properly changed its position before the dispositive hearing.

'[i]t is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice…' This Court has reiterated this principle on frequent occasions. Our statements on this score stem largely from an appreciation that a primary purpose of the Sixth Amendment is to grant a criminal defendant effective control over the conduct of his defense.

*Wheat v. United States*, 486 U.S. 153, 165 (1988)(Marshall, J dissenting)(*quoting Powell*, 287 U.S. at 53.)

While a defendant's right to counsel of their own choosing is not absolute, there remains a "presumption in favor of a defendant's counsel of choice." *Id.* The United States Supreme Court's counsel of choice jurisprudence indicates that district courts should deny a criminal defendant's preferred attorney only if strong public policy interests weigh against it. *Id.* at 160 – 62 (weighing a defendant's preference against the danger of conflict of interest); *Morris v. Slappy*, 461 U.S. 1, 11-15 (1983)(balancing defendant's preference against the interest of the justice system and crime victims in timely resolution of criminal cases).

In this case, the only potentially relevant policy interest in conflict with Hecker's chosen and retained counsel, Mauzy, is the CJA at Section 3006A(f), as it pertains to reimbursement of the Government's expense for previously appointed counsel. As will be shown, there is in fact no conflict, however the Section 3006A(f) reads:

Whenever the ... court finds that funds are available for payment from or on behalf of a person furnished [CJA] representation, it may authorize or direct that such funds be paid… to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

Additionally, Judge Nelson's Order of April 12, 2010 appointing Toder uses language nearly identical to that of Section 3006(A)(f), and informs Hecker of his potential liability under Section 3006(A)(f). (Doc #78 at 5). Therefore, if Section 3006(A)(f) is inapplicable to the Third Party's payment of Mauzy's retainer, so is Judge Nelson's Order.

An unduly expansive, and ultimately incorrect, reading of Section 3006(A)(f) and Judge Nelson's Order could reach Hecker's situation, as the Third Party has paid Mauzy to benefit Hecker.  Indeed a district court made the mistake of adopting this exact reading in *United States v. Crosby*, 602 F.2d 24, 25 (2nd Cir. 1979).  *Crosby* involved a nearly identical fact situation to the case at bar when the district court ordered that the substituted retained counsel disgorge a portion of his fee under Section 3006A(f) to compensate for previously incurred expenses related to appointed counsel.  *Id.*  The Second Circuit reversed, however, disagreeing with the district court by stating:

> Although…3006A(f) 'does not, by its terms, explain how it is to be applied,' the statute cannot reasonably be read to include funds that have been paid unconditionally to a third party. The provision refers to funds which 'Are available for payment' (emphasis added) on behalf of the defendant. Whatever the status of the [funds] may once have… been,… it is undisputed that it is no longer in the hands of [defendant] or his mother [the third party payor], but instead has been paid to (and perhaps spent by) [substitute retained counsel].

*Id.* at 28 - 29 *quoting United States v. Bracewell*, 569 F.2d 1194, 1198 (2d Cir. 1978).  The Second Circuit added:

> We share the district judge's concern for preserving the integrity and preventing abuses of the CJA program. Such concern, however, cannot justify a result that would be at odds with the language of the statute and would unfairly do harm to [substitute retained counsel].

*Id.* at 29.

The *Crosby* court reached its result without stating that its ruling would be bolstered by a defendant's right to counsel of their choosing, instead the Court simply held that the statute's plain meaning did not apply to third party contributions towards retainer agreements.  *Id.* at 28 – 29.  Hecker urges this Court to adopt a similar reading of Section 3006A(f), because the Retainer Agreement makes clear that the Third Party's funds were never available for the purpose of contribution under Section 3006A(f).  Hecker also submits that such a ruling is both consistent

with the underlying purpose of the CJA and avoids any constitutional doubt about Section

3006A(f).

   The Eighth Circuit has interpreted the CJA, not surprisingly, as "provid[ing] a framework

for ensuring that individuals who are financially unable to afford defense counsel are provided

counsel as required by the Sixth Amendment." *United States v. Fincher*, 538 F.3d 868, 875 (8th

Cir. 2008); *accord United States v. Barcelon*, 833 F.2d 894, 896 (10th Cir.1987).  Section

3006A(f) indicates that an ancillary purpose of the CJA is to require contribution from

defendants who are able to pay only a portion of the cost of representation, but this purpose is

not the overarching policy behind that CJA.  *United States v. Bracewell*, 569 F.2d 1194, 1198

(2nd Cir. 1978)(stating "while the legislative history… is replete with comment about the

underlying purpose of the [Criminal Justice] Act… the recoupment provision is not discussed.").

In this case, furthermore, should Mauzy's substitution be denied, the Government's obligation to

pay Toder will continue through sentencing.  *See United States v. Spatola*, Not Reported in

F.Supp., 1996 WL 705271, 2 (E.D.N.Y. 1996)(highlighting that under *Crosby*, 602 F.2d at 25,

allowing substitution of private counsel paid by third parties relieves the burden of further public

funding for an otherwise indigent defendant).   From the procedural history, this Court can also

infer that while the Third Party was unable to shoulder the hefty burden of funding Hecker's

entire defense, the Third Party is willing and able to assist with his sentencing though only

through Mauzy, Hecker's counsel of choice.  Therefore allowing Mauzy's substitution will, in

fact, save the Government money without allowing abuse of the CJA.

   More importantly, as mentioned above, Hecker has a qualified right to representation by

counsel of his own choosing.  *Wheat v. United States*, 486 U.S. 153, 165 (1988).  Unlike in

*Wheat* and *Slappy*, 461 U.S. at 11 - 15, there is no legitimate policy interest weighing against

honoring Hecker's Sixth Amendment right.  *Wheat* and *Slappy* respectively involved a request

for counsel with a potential conflict of interest, and a request for a continuance of trial to retain

counsel.  *Id.*  In both cases the Court found that the relevant policy interest in either prompt trials

or conflict free representation outweighed the defendant's interest in choosing his counsel.  *Id.*

In contrast, Mauzy has no potential for conflict and will be prepared for the sentencing hearing

when this Court sets a date.  Furthermore because the CJA will not be served by denying

Mauzy's substitution, there is no policy interest whatsoever countervailing Hecker's right to

counsel of choice.  If this Court orders otherwise, Hecker "would be forced to accept CJA

counsel and the [government] would be further taxed… little purpose would be served and the

defendant's choice of counsel would be eliminated."  *Spatola*, 1996 WL 705271 at 2.  This Court

should therefore avoid any constitutional doubt about Section 3006A(f) by allowing Mauzy's

substitution without threat of disgorgement.  *See Reno v. American Civil Liberties Union,* 521

U.S. 844, 884 (1997)*(directing district courts to construe statues in a manner that avoids

constitutional doubt when practicable).

## CONCLUSION

This Court should grant Hecker's motion for attorney substitution with an explicit finding

that the Third Party's contribution to Mauzy's retainer is neither available for repayment nor

subject to disgorgement under the CJA.  Mauzy's retainer agreement forecloses any possibility

that Hecker might benefit financially from this arrangement.  Thus allowing Mauzy's

substitution is consistent with the plain language of the CJA, the policy behind the CJA and

Hecker's Sixth Amendment right to counsel of his choosing.

Date:  October 1, 2010                              Respectfully submitted,

                                    By: _____*/s/ William J. Mauzy*_____
                                         William J. Mauzy (#68974)
                                         Piper Kenney Webb (#275621)
                                         Casey T. Rundquist (#390475)
                                         510 First Avenue North
                                         Suite 610
                                         Minneapolis, MN 55403
                                         (612) 340-9108