## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

Criminal No. 10-32(01) (JNE/SRN)

Plaintiff,

v.

**TRUSTEE RANDALL L. SEAVER'S**
**MEMORANDUM REGARDING MAUZY**
**SUBSTITUTION MOTION**

Dennis Earl Hecker (01),

Defendant.

Randall L. Seaver, trustee in the bankruptcy case of *In re Hecker*, 09-50779, pursuant to this Court's Order, files this memorandum and a supporting Affidavit of Randall L. Seaver.

### INTRODUCTION

This memorandum and supporting affidavit are submitted to provide the Court with information regarding the misappropriation of bankruptcy estate's funds by Dennis Hecker and his wasting of those funds.

### LEGAL ARGUMENT

On April 12, 2010, this Court entered its Order granting a motion by William J. Mauzy to withdraw from his representation of Dennis Hecker ("Order").

In that Order, the Court appointed Brian Toder and his firm, Chestnut Cambronne, to represent Hecker.

The Order also provided as follows:

3.   If Defendant should hereafter retain private counsel, or if it is otherwise determined that funds are available for payment from or on behalf of Defendant, he shall be required to reimburse the government pursuant to 18 U.S.C. §3006A(f) for any attorney's fees or costs already expended by his court-appointed attorney. The Federal Defender's Office will pursue collection of those fees and costs.

It appears that Mr. Hecker simply decided to disregard the portion of the Order that required him to reimburse the government for attorney's fees and costs already expended by his

SCANNED

OCT 1 2 2010

U.S. DISTRICT COURT ST. PAUL

court-appointed attorney if he had funds available. It is without dispute, that, Hecker stole over $100,000 in bankruptcy estate funds. As a result of this theft, Hecker had over $100,000 available to pay attorney's fees and expenses pursuant to the Order, but, instead of complying with the Order, simply used those stolen funds to finance his lavish lifestyle. Certainly Hecker did not use any of the funds to meet his existing legal obligations (bankruptcy estate, spousal support, public defender), and instead, essentially wasted the money.

The Trustee is aware that, in the month of June, 2010, alone, Hecker stole more than $150,000 of bankruptcy estate monies by obtaining loans against, or surrendering, Prudential Life Insurance policies which were property of the Hecker estate. Seaver Aff. Ex. 6, 9, 10, 10A, 11 and 12.

Hecker was able to gain access to, and steal those funds by, perjuring himself in his bankruptcy schedules and not being candid with the Trustee. In those schedules he stated, under penalty of perjury, that the value of the Prudential Life Insurance policies was as follows:

> 9. Interest in insurance policies.
> Name insurance company of each
> policy and itemize surrender or
> refund value of each.
>
> > See Exhibit B(9) attached hereto. Some policies held by trusts. Records seized by debtor believes one policy has cash surrender value.
> > - $12,000.00

By making these representations to the Bankruptcy Court, under penalty of perjury, Hecker led that court and the Trustee to believe that, after his exemption of $8,400, one life insurance policy would have a remaining non-exempt cash value of $3,600. Seaver Aff. Ex. 1.

The first policy value stolen by Hecker was the Prudential policy ending in numbers 668. ("Prudential 668 Policy"). In early June, 2010, Hecker obtained a $30,000 loan against the

2

Prudential 668 Policy. The loan form was faxed to Prudential by the law firm of Chestnut Cambronne. Prudential was directed to FedEx the policy loan check to the offices of Chestnut Cambronne. Seaver Aff. Ex. 3. Hecker received the $30,000 check. Seaver Aff. Ex. 6. Hecker opened an account at 21st Century Bank and deposited the $30,000 check. Copies of some 21st Century bank documents in that regard are at Seaver Aff. Ex. 5.

Shortly after the 21st Century Bank account was opened by Hecker and the $30,00 cash was deposited, the account was closed by 21st Century Bank and the $30,000 returned to Hecker in a cashier's check which Hecker cashed at 21st Century Bank. Seaver Aff. Ex. 6C. During the 21st Century Bank account problem, apparently both Attorney Toder and Hecker were advised by way of an e-mail from the bank president that "the more you try to get us to release the funds early, the more suspicious of the transaction we become." Seaver Aff. Ex. 8.[1]  Hecker received the $30,000 return of funds from 21st Century Bank on June 18, 2010. See Exhibit 6C.

Hecker also stole additional Prudential funds from the bankruptcy estate. After Hecker received the $30,000 check from Policy 668, he then obtained proceeds, either through loans or policy surrenders, for Prudential policies ending in numbers 029, 031, 336 and 928. The copies of relevant documents are at Seaver Aff. Ex. 10. An e-mail string between Attorneys Burton and May and correspondence regarding those monies is at Seaver Aff. Ex. 10A. The total of monies obtained by Hecker for each of the policies is as follows:

> Prudential Policy No. 031 –   $29,860.42
> Prudential Policy No. 336 –   $36,750.00
> Prudential Policy No. 928 –   $28,689.42
> Prudential Policy No. 029 –   $29,055.00
> $124,354.84

Copies of those four Prudential checks are at Seaver Aff. Ex. 9.

---

[1] 21st Century Bank filed a Suspicious Activity Report. Seaver Aff. Ex. 8A.

The trustee has recovered directly from Hecker, a total of $45,000 of the funds stolen by issuance to Hecker of the five Prudential checks.[2]  The trustee has also, so far, recovered $2,750 in stolen funds that Hecker transferred to Manny's Restaurant.  Hecker provided a handwritten "accounting" of his use of the stolen funds.  Seaver Aff. Ex. 15.  In that "accounting" Hecker did not attempt to explain where more than his use of more than $20,000 in stolen money, rather, he dismissively stated that the money went "here, there, everywhere."  Pursuant to court order, Hecker provided a second "accounting" on October 7, 2010.  Seaver Aff. Ex. 20.

In summary, Hecker stole over $150,000 and spent over $100,000 of that money in a little over two months.  Hecker also states, at Exhibit 20, that he received $15,000 in 401k funds during the same time period.  The Trustee has also discovered, through service of a subpoena upon Central Bank,[3] that Hecker received checks from Automotive Concepts in August, 2010, as follows:

| | |
|---|---|
| Check #33541 - | $1,000.00 |
| Check #33613 - | $27,670.00 |
| Check #33612 - | $1,000.00 |
| Check #33611 - | $1,000.00 |
| Check #33610 - | $1,000.00 |
| Check #33609 - | $1,000.00 |
| | $32,670.00 |

The total of funds, known to the Trustee, to have passed through Hecker's hands in June – August, 2010 is as follows:

| | |
|---|---|
| Prudential Funds - | $154,354.84 |
| 401k Funds - | $15,000.00 |
| Automotive Concepts checks - | $32,670.00 |
| | $202,024.84 |

---

[2] Hecker is entitled to an $8,400 exemption in the Prudential funds.

[3] Exhibit 22.

4

Hecker's thievery is not limited to bankruptcy estate property. Apparently Hecker in late August, 2010, got his hands on a $2,959.37 check payable to Northstate Financial.[4] He apparently endorsed that check and gave it to Automotive Concepts. Seaver Aff. Ex. 22. Apparently, not a single dollar of the funds stolen by Hecker or any other funds passing through Hecker's hands, went to reimburse the government for the costs of his criminal defense. So, while he was being represented at the taxpayer's expense, he had full, although largely illegal, use of over $200,000.00 in just a two month period. This sum is significantly more than the average American family earns in over two years.[5] $5,000.00 of that money went to pay tuition at Breck School. Seaver Aff. ¶16.

The Order requiring Hecker to reimburse the government, if funds were available for payment, did not exclude stolen funds from the reimbursement requirement. Once Hecker had stolen the money, pursuant to the Order, he should have paid it to his attorneys, which had been paid at government expense. He chose, instead, to continue to fund his defense at tax payer expense, while spending the stolen funds in a continuation of his lavish lifestyle. Of his options – repaying the government, turning the funds over to the Trustee, or selfishly spending the money – he chose the most self-indulgent option.

The Trustee will leave the argument, regarding Hecker's request to retain Mr. Mauzy, to the Federal Defender, the United States of America government and Mauzy, all of whom are much better versed in that area of the law. However, as indicated by this memorandum, the Trustee is of the strong opinion that Hecker's disregard of paragraph 3 of this Court's order of April 12, 2010 should not be without consequence to Hecker.

---

[4] The stock of Northstate Financial Corporation is owned by the bankruptcy estate.

[5] This total represents only the total amount known by the trustee. Only Hecker knows the true total.

There is little doubt in the Trustee's mind that Hecker, as long as he is not incarcerated, and is left to his own devices, will continue to take wrongful advantage of every possible situation and will continue to convert bankruptcy estate assets.

LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, LTD.

Dated: October 11, 2010

s/ Matthew R. Burton

By:_____

Matthew R. Burton, #210018
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
(612) 332-1030

Attorneys for Randall L. Seaver, Trustee

428815