UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 10-32(1)(JNE/SRN)

UNITED STATES OF AMERICA,           )
                                    )
                    Plaintiff,      )
                                    )        **GOVERNMENT'S RESPONSE TO**
       v.                           )         **DEFENDANT'S MOTION FOR**
                                    )         **SUBSTITUTION OF COUNSEL**
DENNIS EARL HECKER,                 )
                                    )
                    Defendant.      )


The United States of America, by and through its undersigned counsel, hereby submits this response to the defendant's motion for substitution of counsel (Doc. Nos. 177-179).

## **INTRODUCTION**

The primary issue before the Court is whether to require Hecker or his third party benefactor to reimburse the public for fees paid to Hecker's court-appointed attorney as a condition of permitting William Mauzy to substitute as counsel for Hecker. Anticipating this very issue, Magistrate Judge Nelson, at the time she granted Mauzy's (second) motion to withdraw as Hecker's counsel, issued an order requiring Hecker to reimburse the CJA funds if he should thereafter retain private counsel. Her order was consistent with the CJA reimbursement statute, 18 U.S.C. § 3006A(f), was a proper exercise of discretion, and did not unduly

interfere with Hecker's right to counsel.  For these and other reasons that follow, her order should be enforced by this Court.

Additionally, in light of evidence that Hecker stole over $154,000 in bankruptcy estate funds over the past several months and had nearly another $50,000 in additional assets and income, this Court should require Hecker to provide detailed proof as to why he does not have the personal ability to reimburse the CJA funds expended on his behalf.  If Hecker does not come forth with such proof, he should be ordered to reimburse part or all of those funds.

**STATEMENT OF PERTINENT FACTS
AND PROCEDURAL HISTORY**

**Indictment and Mauzy Appearance**

On February 10, 2010, an indictment was returned against Hecker and a co-defendant.  (Doc. No. 14.)  On February 11, 2010, William Mauzy, along with another privately retained attorney, Marsh Halberg, appeared on Hecker's behalf at his initial appearance.  (Doc. No. 15.)

**Mauzy's First Motion to Withdraw**

On February 23, 2010, in bankruptcy court, the Honorable Robert J. Kressel ruled that, as a sanction for Hecker's repeated discovery violations, over $83 million of Chrysler Financial's judgment against Hecker was not dischargeable in Hecker' bankruptcy proceeding.  (Chrysler Financial v. Hecker, Bankr. D. Minn., File No. 09-5019, Doc. No. 86.)

On March 9, 2010, Mauzy moved to withdraw from representation of Hecker, arguing that because of the bankruptcy court ruling in Chrysler Financial v. Hecker, Hecker was unable to pay his attorney's fees.  (Doc. No. 40 at 2.)  Halberg also moved to withdraw for similar reasons.  (Doc. No. 36.)  At the March 10, 2010 hearing on the motions, Magistrate Judge Nelson granted Halberg's motion.  Mauzy, however, orally withdrew his motion, indicating that Hecker was engaged in raising funds to pay his fees.

## Mauzy's Second Motion to Withdraw

On March 30, 2010, Mauzy again filed a motion seeking to withdraw as counsel, again citing Hecker's inability to pay his fees as the grounds. (Doc. Nos. 67-68.)  The government submitted a letter to the Court, indicating that it did not oppose the motion (so long as the trial date remained the same), but the government noted it was continuing to investigate whether Hecker was concealing assets, including assets not otherwise a part of the bankruptcy estate and with which he could retain private counsel. Accordingly, the government asked the court to enter an order, similar to that which had been ordered in cases with similar asset concealment issues (namely, United States v. Gary Lefkowitz, 125 F.3d 608, 621 (8th Cir. 1997); and United States v. Christopher Smith, Criminal No. 05-282 (MJD/JJG), Doc. No. 404)), requiring Hecker to reimburse the public for the work done by appointed

3

counsel pursuant to 18 U.S.C. § 3006A(f) if Hecker should later secure private counsel through fund-raising efforts or otherwise.

**April 12 CJA Appointment Order**

At the April 12, 2010, hearing on Mauzy's second motion to withdraw, Hecker requested that an attorney be appointed to represent him at the public's expense pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.  At the hearing, Magistrate Judge Nelson inquired of Hecker's finances, under oath.  (Order, Doc. No. 78, at 4).  As the Court summarized in its Order appointing CJA counsel,

> Mr. Hecker testified that the financial disclosures made in the proceeding before the United States Bankruptcy Court accurately reflect his finances.  The Court therefore determined that Mr. Hecker was financially unable to obtain counsel . . . .

(Doc. No. 78, at 4).  Magistrate Judge Nelson appointed CJA panel attorney Brian Toder and his firm to represent the defendant.  She further entered an order that expressly provided:

> If Defendant should hereafter retain private counsel, or if it is otherwise determined that funds are available for payment from or on behalf of Defendant, he shall be required to reimburse the government pursuant to 18 U.S.C. § 3006A(f) for any attorney's fees or costs already expended by his court-appointed attorney.  The Federal Defender's Office will pursue collection of those fees and costs.

Order dated April 12, 2010 (Doc. No. 78 at 5).[1]

---

[1]Despite having no money to pay a criminal defense attorney, throughout the duration of his criminal case, Hecker has had at least two bankruptcy attorneys.

**Hecker's Conversion of Insurance Proceeds and Concealed Assets**

As set forth in more detail in the memorandum filed in this matter by the Chapter 7 Trustee, Randall Seaver, from June through August 2010, Hecker stole over $154,000 in assets that should have been disclosed in Hecker's bankruptcy proceedings and to the Court in this case. The money came from Prudential insurance policies that he secretly converted to his own use. In addition, during the same general time frame, Hecker received approximately $15,000 from a 401(k) account and over $30,000 in checks from a company known as Automotive Concepts (which is run by a former associate of Hecker's). Hecker has since paid back to the Trustee only approximately $45,000 of the stolen insurance funds, and then only after being discovered and confronted by the Trustee not once by twice.[2]

Hecker has provided an accounting indicating that he spent the stolen insurance money on various expenses, including thousands of dollars to country clubs (Lafayette Club and Wayzata Country Club), Manny's Steakhouse, Breck School, Dolphin Pool, DirecTV, and to his girlfriend (and a defendant in a related case), Christi Rowan. In other words, during the same time as Hecker was receiving a publicly-funded defense attorney, he was spending thousands of

---

[2]The Trustee first learned that Hecker had stolen $30,000 from insurance policies, confronted Hecker through counsel, and obtained an agreement to repay the monies. The Trustee later learned about the additional stolen insurance monies and had to confront Hecker through counsel a second time.

dollars to maintain a similar lavish lifestyle to which he had become accustomed for a number of years.[3]

The government also obtained information that in June 2010, the defendant applied for financing for a Kia Soul vehicle from Kia Motors Finance, and leased the vehicle through Saint Cloud Auto Center, LLC ("Kia of St. Cloud"). The vehicle was valued at approximately $20,000, with Hecker's monthly payments totaling $329.50 per month. The defendant leased the vehicle through New Dimension Advisors LLC, claiming he was in the business of "consulting." In fact, New Dimension Advisors was a shell company that he created following his bankruptcy. It had no known business operations, no employees, and was nothing more than a mechanism by which the defendant transferred money through bank accounts to pay his personal expenses. Nonetheless, the defendant represented, via telephone, to a representative of Kia of St. Cloud that his income via New Dimensions Advisors ranged from $5,000 to $40,000 per month, and he directed the representative to list $10,000 per month as an average income on the finance application. Kia of St. Cloud, and Kia Finance, relied on this information when issuing the lease.

**Government's Motion to Revoke Release**

On September 2, 2010, after learning that Hecker had stolen additional approximately $124,000 in Prudential monies even after

---

[3]Throughout this time frame, Hecker has continued to live in his large Medina home, once valued at about $1.8 million (although Hecker has claimed he cannot pay the home's expenses).

being caught by the Trustee with having stolen an initial $30,000 in insurance monies, and after learning of his representations to the Kia dealer, the government moved to revoke Hecker's release, citing the defendant's continued crimes and concealment of assets as the basis. (Doc. No. 159.)  In its motion, the government also argued that, if Hecker had assets, he should be required to repay the CJA funds, in accordance with Magistrate Judge Nelson's April 12 Order.

**Hecker Guilty Plea and Agreed Home Detention**

As a result of the motion to revoke his release, Hecker agreed to plead guilty to essentially all of the criminal conduct with which he had been charged.  To resolve the pending motion, and in light of the defendant's acceptance of responsibility, the government agreed to recommend that he be placed on 24-hour home detention, with most of his existing conditions, including GPS monitoring, remaining in place.  (Transcript of September 7, 2010 change of plea hearing at 34-35.)  In addition, the government sought, and the Court agreed, to restrict the defendant from opening any new lines of credit, including any opened by third parties for his use or benefit, or from acquiring any asset of over $250, unless approved by Pretrial Services/U.S. Probation. (Id. at 40-41.)[4]

---

[4]The government has reserved its rights to bring another motion to revoke Hecker's release if it discovers additional evidence of asset concealment or other violations of law post-Hecker's guilty

At the September 7 change of plea hearing, Hecker represented that he told the Kia dealer he had $1,000 to $4,000 per month in income, which was inconsistent with the information the government received from the Kia dealer. (Id. at 42.)  He further stated that this amount represented income he had received in a lump sum in December 2009, spread out over nine months.  (Id. at 43.)  His counsel then clarified that the money was already long-since disbursed.  (Id. at 43-44.)

**Hecker's Receipt of Settlement Proceeds**

More recently, on September 15, 2010, the government was copied on a letter sent by the Trustee's counsel to the Office of the Federal Defender.  The letter stated that, pursuant to a settlement in the bankruptcy case, Hecker is to receive an unencumbered Toyota Tundra and $30,000 for him and his counsel.[5] Also attached was a letter from the Trustee's counsel to bankruptcy counsel for Hecker, stating that in the Trustee's view, the settlement monies should be turned over to the Federal Defender (as repayment of the CJA funds) or to the Trustee.  To the government's knowledge, none of the $30,000 has been paid over to the Federal Defender or to the Trustee.

---

plea.

[5]Pursuant to the settlement agreement, Hecker was to receive up to $15,000 of the $30,000, with the remainder to be paid to his bankruptcy counsel.

**ARGUMENT**

A.   **THE COURT SHOULD ORDER REIMBURSEMENT OF CJA FUNDS AS A CONDITION OF SUBSTITUTION OF COUNSEL**

1.   **The CJA Requires Reimbursement if Court Finds "Funds are Available for Payment From or on Behalf of" the Defendant**

The Criminal Justice Act ("CJA") ensures that those who cannot afford to hire defense counsel are nonetheless provided with counsel at the public's expense, in accordance with the requirements of the Sixth Amendment. United States v. Fincher, 538 F.3d 868, 875 (8th Cir. 2008). As Magistrate Judge Nelson did in this case, to determine if the defendant is eligible for a court-appointed counsel, the court must conduct an "appropriate inquiry" to satisfy itself "that the person is financially unable to obtain counsel." 18 U.S.C. § 3006A(b). If new information later comes to light, the court can terminate the defendant's court-appointed counsel, and it can order reimbursement of funds already expended on the defendant's behalf. Id. at 876; see 18 U.S.C. § 3006A(c)("If at any time after the appointment of counsel the United States magistrate judge or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f) [of 18 U.S.C. § 3006A], as the interests of justice may dictate.").

More specifically, the reimbursement provision of the CJA, 18 U.S.C. § 3006A(f), provides:

9

> Whenever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or community defender organization which provided the appointed attorney . . . or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provision of this section.

Id.   "The text of § 3006A(f) shows that the court is empowered to direct that reimbursement for representation under the Criminal Justice Act come from specific funds."  United States v. Hoover, 175 F.3d 564, 569 (7th Cir. 1999).

Procedurally, the court must conduct a "full inquiry" into whether funds are available to repay the costs of a defendant's defense. Museitef v. United States, 131 F.3d 714, 716 (8th Cir. 1997).  A full-scale adversarial hearing is not required, however. Fincher, 538 F.3d at 876 (citing, *inter alia,* United States v. Parker, 439 F.3d 81, 93 (2d Cir. 2006) ("The task necessarily varies with the circumstances presented, and no one method or combination of methods is required.")).  The reimbursement statute, 18 U.S.C. § 3006A(f), "leaves much to the sound discretion of the court." United States v. Bracewell, 569 F.2d 1194, 1198 (2d Cir. 1978).

The weight of authority is that the defendant bears the burden of proving that he cannot repay defense costs.  United States v. Lefkowitz, 125 F.3d 608, 621 (8th Cir. 1997); see also United States v. Evans, 155 F.3d 245, 252 n. 8 (3d Cir. 1998).  As such,

courts can order a defendant to provide detailed accountings of his finances.  See Museitef, 131 F.3d at 716.  "The test is whether repayment would cause such financial hardship as to make it impractical or unjust."  Id. (citing Bracewell, 569 F.2d at 1199). Moreover, courts do not evaluate whether the defendant can afford to repay all counsel fees; rather, the inquiry is whether a defendant has any available funds to help defray expenses.  United States v. Pinckney, 491 F. Supp. 82, 84 (W.D. Mo. 1980).

Courts should examine "the liquidity of the individual's finances, his personal and familial needs, or changes in his financial circumstances."  Museitef, 131 F.3d at 716.  In other words, before finding that "funds are available for payment from or on behalf of a person furnished representation," see 18 U.S.C. § 3006A(f), the court "should be satisfied that, in ordering reimbursement in any specified amount, the defendant will not suffer extreme hardship as a consequence of being deprived of his funds."  Bracewell, 569 F.2d at 1200.  The court is not required to become involved in determining priorities to the defendant's assets; all that is required is that "any defenses to payment asserted by a defendant . . . be fully considered."  Id.  "In the absence of a serious abuse of discretion, a district judge's findings as to 'availability' of funds, if supported by an 'adequate inquiry', will not be disturbed on appeal."  Id.; see also United States v. Embry, 128 F.3d 584, 585 (7th Cir. 1997).

11

**2.    Magistrate Judge Nelson's April 12 Order Put the Parties on Notice That Anyone Wishing to Fund Hecker's Defense Would First Be Required to Reimburse the CJA Funds**

Applying the above principles, the issue is whether this Court can order funds that a third party paid to William Mauzy to be used first to reimburse the public for Hecker's court-appointed attorney.  This Court has the discretion to require such third party funds to be paid to reimburse the CJA funds as a condition of permitting the substitution of Mauzy.  In other words, if Hecker and the third party desire that Mauzy take over Hecker's representation, they should first be required to repay the CJA funds that have been paid to Hecker's court-appointed counsel.  If the third party has no such interest and wishes to use his/her own funds for other purposes, then Mauzy can return those funds to the third party.

The facts of this case are unique in that Magistrate Judge Nelson and the government anticipated the very circumstances that are the subject of this motion.  That is, when Mauzy sought to withdraw as counsel (for the second time), Magistrate Judge Nelson permitted him to do so, but entered an order that expressly provided that if Hecker should retain private counsel, or if it is otherwise determined that funds are available for payment from or on Hecker's behalf, he shall be required to reimburse the government pursuant to 18 U.S.C. § 3006A(f) for any attorney's fees or costs already expended by his court-appointed attorney.  Order

12

dated April 12, 2010 (Doc. No. 78).  Thus, Hecker, Mauzy and the third party were all put on notice as of April 12 that the court was conditioning any substitution of retained counsel on the repayment of CJA funds already expended.  The April 12 Order was a lawful exercise of the court's authority pursuant to 18 U.S.C. § 3006A(f); indeed, the order largely mirrored the statute.[6]

In Mauzy's memorandum, he essentially argues that the funds supplied by the third party are not "available for payment from or on behalf of a person furnished representation," within the meaning of 18 U.S.C. § 3006A(f).  For support, he relies primarily on United States v. Crosby, 602 F.2d 24 (2d Cir. 1979).  Crosby is similar to this case in that it involved a defendant who had a court-appointed attorney until others (Crosby's family members) gathered funds to pay for a retained attorney.  Beyond those basic facts, the case is distinguishable in key ways.  Namely, by the time the recoupment issue surfaced, the money had long since been supplied to the retained attorney and, likely, spent.  Id. at 28-29.  The retained attorney had been given "no indication" that he "might be required to share his retainer" with the appointed counsel.  Id. at 29.  In other words, the facts in Crosby are different from this case because there the court had not entered an order similar to the April 12 Order in this case, and therefore the

_____

[6]The April 12 Order was never appealed and remains a valid order.

13

retained attorney was caught by surprise by the efforts to recoup his fees.  Indeed, the Crosby court suggested that it might have reached a different result if the district court in that case had put the retained counsel on notice "when he sought to enter the case" that his retainer "might become subject to the government's demand . . . ."  Id. at 29 n. 5.

The critical fact for the Crosby court was the lack of notice to the retained counsel and the unfairness that would result if he had to disgorge funds that had been paid to him "unconditionally." Id. at 28-29.  Here, Mauzy, Hecker, and the third party were all put on clear notice by Magistrate Judge Nelson's April 12 Order that, before Hecker could obtain substitute counsel, he had to repay the CJA funds already expended on his behalf.  Thus, the third party's payment to Mauzy was not paid unconditionally but rather was subject to the conditions of the April 12 Order.  Mauzy recognized as much when he attempted to prepare the retainer agreement to work around the April 12 Order, and when he filed his motion arguing the April 12 Order should be disregarded so that he can substitute as counsel without any need for the third party's funds to repay the CJA funds.  Because the parties here are all on notice of the April 12 Order, there is no unfairness in enforcing that order.  Thus, if the third party wishes to provide payment for Mauzy's fees, he/she can do so, but only if he/she first reimburses the CJA funds already expended on Hecker's behalf.  If he/she is so

willing, in response to a direct inquiry by the Court, then the funds are most definitely "available" for repayment, pursuant to 18 U.S.C. 3006A(f).

The government does not suggest that the third party must be required to reimburse the CJA funds.  If Hecker can prove to the Court's satisfaction that these funds truly belong to the third party and not to Hecker, then the third party should retain the right to get his/her money back from Mauzy, if he/she prefers not to provide any reimbursement of CJA funds.[7]  See Bracewell, 569 F.2d at 1200 (as a general matter, if the funds belong to a third party, they are not be available for payment); United States v. Bursey, 515 F.2d 1228, 1238 (5th Cir. 1975)(before finding that third party's funds are available for repayment under 18 U.S.C. 3006A(f), court must provide the party with notice and opportunity to object to such a finding).  In contrast, if the third party assents to the use of the funds to reimburse the CJA funds, then the funds are "available" for payment.  See United States v. Brown, 2008 WL 1836677 at *4 n. 7 (S.D. Ga. 2008).

---

[7]The government has serious concerns about whether the funds actually do belong to the third party, based on a pattern by Hecker of misrepresenting the source of funds to the bankruptcy court. The government or the Trustee can explain these facts in more detail, but essentially Hecker represented in the bankruptcy proceeding that monies came from a certain third party when in fact those funds were coming from Hecker, including from trust funds in his children's names that Hecker raided.

**3.  Enforcing Magistrate Judge Nelson's Order Does Not Interfere Impermissible With Hecker's Choice of Counsel, As Any Such Rights Are Not Absolute**

Mauzy also argues that this Court cannot enforce the April 12 Order because to do so is to interfere impermissibly with Hecker's choice of counsel.  Mauzy's argument is misplaced.  First, an indigent defendant, such as Hecker claims to be, "has no right to demand of a court that a particular attorney, or particular attorneys, be appointed to represent him." United States v. Espino, 317 F.3d 788, 798-99 (8th Cir. 2003).  Even for those defendants who are financially able to retain counsel of their own choosing, courts have long held that the right to choose counsel is not absolute. United States v. Rodriguez, 612 F.3d 1049, 1054 (8th Cir. 2010)(citing United States v. Mentzos, 462 F.3d 830, 839 (8th Cir. 2006)); see also United States v. Edelmann, 458 F.3d 791, 806 (8th Cir. 2006) (citing United States v. Gonzales-Lopez, 399 F.3d 924, 929 (8th Cir. 2005), aff'd, 548 U.S. 140 (2006)); United States v. Vallery, 108 F.3d 155, 157 (8th Cir. 1997).  "The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects," including that "a defendant may not insist on representation by an attorney he cannot afford . . . ." Wheat v. United States, 486 U.S. 153, 159 (1998).  In other words, Hecker has no right to insist on a certain counsel if he himself cannot afford to pay that counsel, and if his third party benefactor declines to pay for that counsel conditioned on a

16

requirement to pay back the public for Hecker's court-appointed counsel.

Indeed, "[s]ubstitution of counsel is a matter committed to the sound discretion of the trial court." Meyer v. Sargent, 854 F.2d 1110, 1114 (8th Cir. 1998)(citations omitted).[8] "The right to choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice." Edelmann, 458 F.3d at 806 (internal quotations and citations omitted). As a result, "courts must balance the defendant's right to counsel of his own choosing against the court's interest in the administration of justice." Id. Although cases in this area typically involve a defendant's 11th hour request for substitution of counsel and accompanying requests for continuances, see United States v. Armstrong, 112 F.3d 342, 345 (8th Cir. 1997), and United States v. Vallery, 108 F.3d 155, 157 (8th Cir. 1997), the court's interest in the administration of justice is much broader and should include its interest in ensuring that CJA funds are fairly disseminated and recouped.

In sum, the Court has the discretion to deny Hecker's request to substitute Mauzy as counsel, unless Hecker and the third party are able to reimburse part or all of the CJA funds. Such an order

---

[8]It should be noted that Hecker does not express any dissatisfaction with his current appointed counsel. Ordinarily, "[a]n indigent defendant must show justifiable dissatisfaction with her appointed attorney to warrant substitute counsel." United States v. Smith, 62 F.3d 1073, 1077 (8th Cir. 1995).

amounts to the enforcement of Magistrate Judge Nelson's April 12 Order and properly balances Hecker's right to counsel of his own choosing, if any, with the court's need to control the administration of justice. It is especially appropriate in this case, where the very same attorney who once filed two motions to withdraw, which partly led to the April 12 Order, now seeks effectively to set aside that order so that he can be reappointed and paid, all at the expense of the public's ability to recoup the funds it has expended on Hecker's court-appointed attorney.

**B.    THE COURT SHOULD REQUIRE HECKER TO PROVIDE PROOF AS TO WHY HE SHOULD NOT BE PERSONALLY REQUIRED TO REIMBURSE CJA FUNDS**

Separate from the issue of whether the third party's funds will be available to reimburse the CJA funds, there is the issue of whether Hecker should be required personally to reimburse the CJA funds. Based on evidence that Hecker had access to approximately $200,000 over the course of the past few months, this Court has sufficient evidence to order Hecker to reimburse the CJA funds.[9]

The government, based in part on the filing of Trustee Seaver, can demonstrate Hecker was not entitled to have a court-appointed attorney while he was secretly spending over $200,000 to support

---

[9] The government also has reason to believe that Hecker may still be owed monies related to his former companies, including reimbursement of unpaid warranty claims. Even after he filed personal bankruptcy and ownership in the businesses was transferred to the Trustee, Hecker continued to convert for his own use monies coming into to those businesses. Hecker should be required to account for these monies.

his country club lifestyle.   Because the government can meet its
burden of production to show the defendant had the ability to
afford counsel, the defendant bears the ultimate burden of
persuasion to establish that he lacked ability to afford counsel.
United States v. Parker, 439 F.3d 81, 95 (2d Cir. 2006)
(circumstantial evidence and inference sufficient to meet
government's burden); see United States v. Bedoya, 1990 WL 194934
* 2-3 (S.D.N.Y. 1990).   If Hecker cannot rebut the government's
evidence, his appointed counsel should be terminated, and he can be
ordered to reimburse the costs of his defense.   Id. at 3.[10]

    The Eighth Circuit has held that, where the government can
show a defendant spent thousands of dollars contrary to his claims
of indigence, the court can order the defendant to reimburse the
CJA funds under 18 U.S.C. 3006A(f), even if the defendant claims to
have no current assets.   United States v. Lefkowitz, 125 F.3d 608,
621 (8th Cir. 1997).   Other courts have issued similar holdings.
See United States v. Wilson, 597 F.3d 353, 359-60 (6th Cir. 2010)
(court affirmed order requiring defendant to reimburse court-
appointed attorney's fees, rejecting defendant's argument that he
had few liquid assets available for payment; court found "[r]ecent
income can be, and in this instance was, a legitimate proxy for

---

    [10]The Court can order recoupment despite that Hecker owes
substantial money to creditors.   See United States v. Thomas, 630
F. Supp. 820, 821 (E.D. Mich. 1986), aff'd, 815 F.2d 81 (6th Cir.
1987)("The claims of creditors do not take priority over the claims
of the government for repayment of costs of representation.").

present ability to pay."); <u>United States v. Parker</u>, 439 F.3d 81, 97 (2d Cir. 2006) (where defendant received substantial income over two of the immediately preceding years, district court was not clearly erroneous in concluding defendant was financially able to pay retained counsel); <u>United States v. Allen</u>, 596 F.2d 227, 232 (7th Cir. 1979)(after learning that defendant had misrepresented his income, court terminated appointed counsel and ordered him to repay the full cost of his defense). <u>But See</u> <u>United States v. Evans</u>, 155 F.3d 245, 252 (3d Cir. 1998)(while court did "not condone [defendant's] deception, intentional or otherwise, and his misstatements clearly raise doubts as to his purported inability to afford counsel," case was remanded to district court to evaluate the defendant's present ability to pay for all or part of his representation); <u>United States v. Lorenzini</u>, 71 F.3d 1489, 1494 (9th Cir. 1995) ("[A] reimbursement order is improper if the court fails to find that the defendant has the current ability to repay the government for his attorney fees.").

## CONCLUSION

Hecker has made a mockery of the court system by concealing over $200,000, most of it in stolen funds, all while he was improperly taking public funds to pay for his defense counsel.  He has behaved as if the rules of this Court and the bankruptcy court do not apply to him and as if nothing can get in the way of his desired lifestyle.  In the face of this outrageous behavior, he now

comes before this Court, seeking to have the Court approve his desired choice of counsel, without any concomitant obligation to reimburse the public for the court-appointed attorney he did not deserve.  On top of Hecker's own behavior, this motion is brought by the very lawyer whose on again, off again tactics were part of what led to the April 12 Order that now requires Hecker to reimburse the CJA funds prior to any substitution of counsel.  This Court should enforce the April 12 Order and should reject the motion to substitute William Mauzy, unless Hecker or his third party benefactor is willing to reimburse the public for funds already expended on his behalf for his court-appointed attorney. Additionally, this Court should require Hecker to come forward with evidence to rebut the strong evidence suggesting that he personally has assets with which to repay the CJA funds.  If he does not rebut that evidence, he should ordered personally to repay the CJA funds.

Dated: October 12, 2010          Respectfully submitted,

                                 B. TODD JONES
                                 United States Attorney

                                 s/ Nicole A. Engisch

                                 BY: NICOLE A. ENGISCH
                                     NANCY E. BRASEL
                                     DAVID M. GENRICH
                                 Assistant United States Attorneys

21