UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 10-CR-32(01) (JNE/SRN) |
| Plaintiff, | |
| vs. | MEMORANDUM IN SUPPORT OF STAR TRIBUNE MOTION TO INTERVENE |
| DENNIS EARL HECKER, | |
| Defendant. | |

## Introduction

By this motion, the Star Tribune Media Company LLC seeks to intervene for the limited purpose of asserting public access to court records and proceedings.

## Statement of Facts

On October 1, 2010, Defendant Dennis Earl Hecker moved for substitution of counsel [Doc. No. 177], seeking the substitution of William J. Mauzy as retained counsel for the counsel previously appointed under the Criminal Justice Act. Mr. Mauzy has informed the Court that his retainer agreement would provide that an undisclosed "Third Party" pay the fees directly to Mr. Mauzy for his representation of Defendant. [Doc. Nos. 178, 179.] The Government has requested that the funding source be identified and present at a hearing on October 18, and this Court on October 4 directed that Mr. Mauzy notify the "Third Party" that he or she attend that hearing and be prepared to testify as to the ultimate source of the retainer funds and his/her ability to reimburse the public for the funds already expended under the Criminal Justice Act for Defendant Hecker's

SCANNED
OCT 14 2010
U.S. DISTRICT COURT ST. PAUL

representation. [Doc. No. 187.] On October 6, Mr.Mauzy moved for an Order permitting him to file documents under seal. [Doc. 188.] So far as Star Tribune has been able to determine, Mr. Mauzy has not described the documents to be filed under seal or the basis for filing under seal. This Court granted that motion on October 13. [Doc. 193.] The Court also again directed Mr. Mauzy and Defendant Hecker to notify the "Third Party" that "he or she is required to attend the hearing on October 18, 2010 and be prepared to testify as to the ultimate source of said funds and his or her ability to reimburse the public for funds already expended under the CJR for Defendant Hecker's representation." [Doc. 194.]

Star Tribune learned of these developments by the public filings noted above. Star Tribune now seeks to intervene for the limited purpose of asserting public rights of access.

## Argument

### I. THE STAR TRIBUNE, AS A THIRD PARTY, MAY MOVE TO INTERVENE.

When a member of the news media objects to limits on his or her access to judicial proceedings, "the court must give him or her a reasonable opportunity to state the objection." *In re Iowa Freedom of Information Council*, 724 F.2d 658, 661 (8th Cir. 1983). In the Eighth Circuit, a motion is the apparent preferred procedural mechanism for objecting to limitations upon access. For example, *In re Search Warrant for Secretarial Area Outside Office of Gunn* arose after a federal district court allowed a publishing company to move pursuant to Federal Rule of Criminal Procedure 41 to unseal affidavits

and other materials attached to two search warrants but then denied the motion. 855 F.2d 569, 570 (8th Cir. 1988). The Eighth Circuit observed that "[u]sually motions for public access to court proceedings or records are filed by the press in connection with pending criminal or civil proceedings." *Id.* at 572.

In *Richmond Newspapers, Inc. v. Virginia*, the case that established a First Amendment right of access to criminal trials, the appellant initially requested a hearing on a motion to vacate the trial court's closure order, which the trial judge granted, and later was allowed to intervene *nunc pro tunc*. 448 U.S. 555, 560–62 (1980); *see also, e.g.*, *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 5 (1986) (*Press-Enterprise II*) (noting that petitioner had joined state's motion for release of transcript); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 504 (1984) (*Press-Enterprise I*) (noting that petitioner had moved for the release of a complete transcript of voir dire proceedings); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 599 (1982) (noting that newspaper had moved the court to revoke its closure order and to permit it to intervene for the limited purpose of asserting its access rights); *United States v. Graham*, 257 F.3d 143, 145 (2d Cir. 2001) (noting that magistrate judge invited the news media to intervene on the questions of public access); *In re Associated Press*, 162 F.3d 503, 508 & n.6 (7th Cir. 1998) (citing cases and stating that "the Press ought to have been permitted to intervene in order to present arguments against limitations on the constitutional or common law right of access."); *United States v. Valenti*, 987 F.2d 708, 711 (11th Cir. 1993) ("We first note the Times's standing to intervene for purposes of challenging its denial of access to the underlying litigation, even though it is otherwise not a party."); *In*

*re New York Times Co.*, 828 F.2d 110, 113 (2d Cir. 1987) (noting that district court treated news media as intervenors in criminal proceeding); *Phillips v. Cook*, United States District Court for the District of Minnesota, Case No. 0:09-cv-01732-MJD-JJK, Order dated September 10, 2009, Doc. No. 114 (copy attached hereto as Exhibit 1); *United States v. Petters*, United States District Court for the District of Minnesota, Case No. 0:08-cr-00364-RHK-AJB, Order dated July 13, 2009, Doc. No. 239 (copy attached hereto as Exhibit 2).

Accordingly, the Court should grant Star Tribune's motion for intervention for the limited purpose of seeking public access to court records and proceedings in this matter.

## II.  THE PRESS AND THE PUBLIC HAVE A PRESUMPTIVE RIGHT OF ACCESS TO JUDICIAL DOCUMENTS.

The press and public have a First Amendment and common law right of access to criminal proceedings. *See Globe Newspaper*, 457 U.S. at 606–07; *Richmond Newspapers*, 448 U.S. at 580; *see also Craig v. Harney*, 331 U.S. 367, 374 (1947) ("A trial is a public event. What transpires in the court room is public property."). These rights extend to documents submitted to the court as part of those proceedings. For example, in *In re— Gunn*, the Eighth Circuit held that the First Amendment right of public access extended to documents filed in support of search warrant applications. 855 F.2d at 573; *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 602 (1978) (holding, in a decision *before* the Supreme Court recognized the First Amendment right of access to criminal trials, that there is a "presumption—however gauged—in favor of public access to judicial records"); *United States v. Martin*, 746 F.2d 964, 968 (3d Cir. 1984) ("The common law

right of access is not limited to evidence, but rather encompasses all 'judicial records and documents.' It includes 'transcripts, evidence, pleadings, and other materials submitted by litigants.'" (internal citation omitted)).

Other federal and state courts also have found that both the First Amendment and the common law secure the public's right to inspect judicial documents. *See, e.g., Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91–92 (2d Cir. 2004) (citing cases and holding that "the media and the public possess a qualified First Amendment right to inspect docket sheets, which provide an index to the records of judicial proceedings"). The rationale for this conclusion is solid: "Not only do such [court] records often concern issues in which the public has an interest, in which event concealing the records disserves the values protected by the free-speech and free-press clauses of the First Amendment, but also the public cannot monitor judicial performance adequately if the records of judicial proceedings are secret." *Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002).

The press and public have a presumptive right of access to Defendant's documents filed with this Court and to the proceedings of this Court.

### III. A HIGH STANDARD APPLIES TO ANY PARTY SEEKING TO RESTRICT ACCESS TO JUDICIAL PROCEEDINGS AND DOCUMENTS.

The First Amendment right of access to judicial proceedings and documents is substantial, although not absolute. Before a court seals such documents from public view it must make specific, on-the-record findings that sealing is "essential to preserve higher values and is narrowly tailored to that interest." *In re—Gunn*, 855 F.2d at 574.

Specifically, it must explain why sealing is necessary to serve a compelling government interest and why less restrictive alternatives are not appropriate. *Id.*; *see also Press-Enterprise I*, 464 U.S. at 510.

Normally, the party seeking a sealing order must show that restricting the press and public's First Amendment right of public access "is necessitated by a compelling government interest." *In re—Gunn*, 855 F.2d at 574. Here, however, it does not appear that the Defendant has made such a showing, or even offered the barest minimum explanation for submitting material under seal, and this Court's Order [Doc. 193] provides no insight to the public on whatever justification may exist.

In a separate proceeding involving Mr. Hecker earlier this year, Hennepin County District Judge Jay M. Quam held that Mr. Hecker had to disclose the identity of a "Benefactor" who was providing funds so that Mr. Hecker could avoid spending 90 days in the Hennepin County Adult Correctional Facility for civil contempt. *Hecker v. Hecker*, Hennepin County District Court, State of Minnesota, Court File No. 27-FA-98805, Order and Memorandum dated July 14, 2010 (copy attached as Exhibit 3). That proceeding involved a highly publicized divorce proceeding. That court's observations apply with similar force to this highly publicized criminal proceeding: "Given the prolific media coverage of the Hecker divorce prior to the date the Benefactor gave Mr. Hecker the money, on top of the impressive and sizable nature of the gift [in excess of $125,000], it is unreasonable to imagine that the Benefactor had any expectation of privacy." *Id.* at 8.

Given this Court's directive that the "Third Party" funding source attend the October 18 hearing and be prepared to testify as to the ultimate source of the retainer funds and his/her ability to reimburse the public for the funds already expended under the Criminal Justice Act for Defendant Hecker's representation [Doc. Nos. 187, 194], it is hard to imagine how this Third Party has any expectation of privacy that would justify Mr. Mauzy's filing of any documents under seal (or justify the Third Party remaining anonymous at any court hearing, if that is the Third Party's intent).

## Conclusion

This Court should grant Star Tribune's motion to intervene for limited purposes and should require Mr. Mauzy and/or the "Third Party" to make a sufficient showing to justify a sealed filing under the constitutional and common-law standards, and should permit Star Tribune an opportunity to respond to any such further submission by Mr. Mauzy.

Dated: October 14, 2010　　　　　**FAEGRE & BENSON LLP**

　　　　　　　　　　　　　　　　/s/ John P. Borger
　　　　　　　　　　　　　　　　John P. Borger, MN #9878
　　　　　　　　　　　　　　　　Leita Walker, MN #387095
　　　　　　　　　　　　　　　　2200 Wells Fargo Center
　　　　　　　　　　　　　　　　90 South Seventh Street
　　　　　　　　　　　　　　　　Minneapolis, MN 55402-3901
　　　　　　　　　　　　　　　　612-766-7000

　　　　　　　　　　　　　　　　*Attorneys for Star Tribune Media Company LLC*

OF COUNSEL:

Randy M. Lebedoff
Star Tribune
425 Portland Avenue South
Minneapolis, MN 55488
(612) 673-7133

fb.us.5821033.02