UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

_____

UNITED STATES OF AMERICA,              Case No. 10-CR-32(01) (JNE/SRN)

       Plaintiff,

  v.

DENNIS EARL HECKER,

       Defendant.

_____

**DEFENDANT'S REPLY MEMORANDUM FOR SUBTITUTION OF COUNSEL**

      Defendant Dennis Earl Hecker submits the following memorandum in response to arguments raised by the United States Government as to why this Court should not allow substitution by Hecker's counsel of choice.  The Government's position that Hecker should be required to reimburse all funds expended by and for his court appointed attorney, before being allowed his retained counsel of choice, misapprehends Magistrate Judge Nelson's Order of April 12, 2010 (hereinafter "April 12 Order")(Doc. # 78) as well as the Criminal Justice Act (hereinafter "CJA") reimbursement provisions at 18 U.S.C. § 3006A(f) and the underlying Sixth Amendment right to counsel of choice.  Furthermore Hecker respectfully asks that this Court not entertain the Government's requests for reimbursement notwithstanding its ruling on substitution.

**I.      The Government Overstates The Breadth Of Magistrate Judge Nelson's Order.**

The Government frames this Court's choice as one of either enforcing or ignoring Magistrate Judge Nelson's April 12 Order. *Government's Response to Defendant's Motion For Substitution Of Counsel* (hereinafter "Govt. Memo.")(Doc. #192 at 16). The Government's reading of the April 12 Order is, however, contrary to the plain language of the order itself. Hecker requests that this Court not adopt the Government's imaginative, but incorrect, reading of the April 12 Order.

To support its position that Mauzy's substitution can only be conditioned on the repayment of all funds expended under the CJA, the Government claims that the April 12 Order requires "Hecker to reimburse the public for the work done by the appointed counsel pursuant to 18 U.S.C. § 3006A(f) if Hecker should later secure private counsel through fund-raising efforts or otherwise." (Govt. Memo at 4). The Government's understanding of the April 12 Order is contrary to the Order's actual language, as already made clear in Hecker's initial Memorandum of Law. To restate, the Order speaks not of Hecker "secur[ing] private counsel through fund-raising efforts or otherwise," but instead provides notice that "[i]f Defendant should hereafter retain private counsel… he shall be required to reimburse the government pursuant to 18 U.S.C. § 3006A(f) for any attorney's fees or costs already expended by his court-appointed attorney." (Govt. Memo at 4);(April 12 Order at 5). Hecker has not retained private counsel, instead the third party payor retained private counsel on his behalf.[1] More importantly the April 12 Order explains that reimbursement will be made pursuant to 18 U.S.C. 3006A(f), thus if Section 3006A(f) does not require reimbursement, then neither does the Order. (April 12 Order at 5).

---

[1] Mauzy is aware of the Star Tribune Media Company LLC's motion to intervene in this matter. (Doc. # 197). The third party payor has retained legal counsel, and we have been informed that he does not consent to disclosure of his identity. Mauzy and Hecker have no objection to the disclosure of his identity, but obviously do not speak for him.

This Court should read Magistrate Judge Nelson's Order in its plain language, as simply providing notice of the reimbursement provisions in Section 30006A(f). The fact that Mauzy had notice of the potential for reimbursement under Section 30006A(f) explains why he filed the present motion, instead of simply showing up as substitute counsel. Filing the present motion is the honest and aboveboard way for Mauzy to enter an appearance by informing the Court of payment to Mauzy and seeking permission of the court to represent Hecker. As the Second Circuit observed in *United States v. Crosby*, 602 F.2d 24, 28 (2nd Cir. 1979), "[h]ad [retained counsel] been considered a target of the recoupment effort, he surely should have been disqualified from representing [defendant], for their interests would have been in clear conflict."

Finally, the April 12 Order is not, as the government asserts, uniquely tailored to the facts of this case. The April 12 Order cites an earlier order of this Court in *United States v. Christopher Smith*, 05-CR-282 (MJD/JJG)(Doc. # 404 at 2); (April 12 Order at 5). The relevant order in *Smith* is identical to the April 12 Order, as the *Smith* order states:

> If the defendant should hereafter retain private counsel, or if it is otherwise determined that funds are available for payment from or on behalf of the defendant, the defendant shall be required to reimburse the government pursuant to 18 U.S.C. § 3006A(f) for any attorney's fees or costs already expended by the defendant's court appointed attorney. The Federal Public Defender's Office will pursue collection of those fees and costs.

*Id.*

Given that Magistrate Judge Nelson utilized the exact language of a prior order, in a different case, it is hard to believe that she intended her order to reach the current situation, of a third party retaining a private criminal defense lawyer, without adding more specific language.

### II. The Government Ignores The Underlying Logic And Holding Of *United States v. Crosby*.

Magistrate Judge Nelson's April 12 Order expressly provides that the controlling provision in determining any reimbursement issue is 18 U.S.C. 3006A(f). (April 12 Order at 5).

Perhaps recognizing that *Crosby* is the leading case regarding Section 3006A(f), the Government seeks to limit its underlying logic and persuasive value by arguing that the *Crosby* court reached its result based on the insufficiency of notice provided to the retained attorney that his fee might be subject to disgorgement under Section 3006A(f). (Govt. Memo. at 13 – 14). First, the Government ignores that section of *Crosby*, 602 F.2d at 26 - 27, detailing how the district court explained to the defendant, appointed counsel and retained counsel that "the possible reimbursement of CJA expenditures" was an unresolved issue, before allowing retained counsel to substitute. Second, the Government ignores that in *Crosby*, 602 F.2d at 28, the court ruled specifically both on the issue of notice to retained counsel and on the issue of availability. After holding that the district court should have considered whether or not retained counsel had sufficient notice of potential fee disgorgement, the court said:

> The foregoing conclusion ordinarily would require that we reverse the district court's order and remand for proper consideration of any defenses raised by [retained counsel]. No remand is necessary, however, because we agree with [retained counsel] that the money already paid to him was not 'available' within the meaning of [] 3006A(f). (citations omitted).

*Id.*

Thus the Government essentially asks this Court to ignore a significant portion of the *Crosby* opinion, as well as its actual holding that "[b]ecause the $9,500 received by [retained counsel] was not available for payment within the meaning of section 3006A(f), the order of the district court is reversed." *Id.* at 30. As the Court stated:

> Although…3006A(f) does not, by its terms, explain how it is to be applied, the statute cannot reasonably be read to include funds that have been paid unconditionally to a third party. The provision refers to funds which 'are available for payment' (emphasis added) on behalf of the defendant. Whatever the status of the [funds] may once have… been,… it is undisputed that it is no longer in the hands of [defendant] or his mother [the third party payor], but instead has been paid to (and perhaps spent by) [substitute retained counsel].

*Id.* at 28 – 29.

*Crosby* is also strikingly similar to this case because the third party in *Crosby* was not willing to provide money to defendant Crosby, just as in this case the third party only intends to hire Mauzy, not give money to Hecker.  *Id.* at 29.  The *Crosby* court stated "moreover, it is quite clear that Crosby's mother was never willing to make money directly available to Crosby, but only to bring [retained attorney] into the case."  *Id.*  The Federal Defender agrees that if the third party has indeed contributed independent funds to retain Mauzy, then *Crosby* indicates those funds are not available for reimbursement.  Just as with Magistrate Judge Nelson's April 12 Order, this Court should decline to adopt the Government's imaginative reading of *Crosby*.

### III. Considering Hecker's Sixth Amendment Right to Counsel of Choice, The Government's Position Supports Mauzy's Substitution.

The Government agrees that the Sixth Amendment right to counsel of choice generally calls this Court to balance defendant's preferred counsel against "the court's interest in the administration of justice."  (Govt. Memo. at 17); *quoting United States v. Edelmann*, 458 F.3d 791, 806 (8th Cir. 2006).  The Government frames this Court's specific interest as "the public's ability to recoup the funds it has expended on Hecker's court-appointed attorney," though it cites no case where a court found a conflict between the recoupment provisions of the CJA and a defendant's right to choose an attorney.  (Govt. Memo. at 18).  Such a conflict might exist where a defendant hires counsel with his own funds, while not reimbursing the government under the Section 3006A(f), but the facts of this case are otherwise.

When a third party retains an attorney to represent an otherwise CJA eligible defendant, the policy behind the CJA and the Sixth Amendment right to counsel of choice are in alignment. As the Government states, if this Court denies Mauzy's substitution, his fees should be returned to the third party payor pursuant to the retainer agreement.  (Govt. Memo at 15).  As the Federal

5

Defender for the District of Minnesota highlights, were this Court to deny substitution, the defendant would once again find himself in the position of needing appointed counsel. Thus there is public value in Mauzy's substitution, because as a result, no further government funds will be expended on Hecker's defense in district court.

Furthermore Mauzy's substitution would not limit the Federal Defender's Office in otherwise proceeding against Hecker under Section 3006A(f), should it see fit. This substitution motion by itself, premised on a legitimate third party payment of Mauzy's fees, in no way raises the issue of whether or not Hecker himself has funds available for reimbursement under Section 3006A(f). Vast portions of the Government's brief, and the entire submission of the Bankruptcy Trustee, are therefore irrelevant to this substitution motion.

**IV.   Hecker Respectfully Asks That This Court Not Otherwise Order Reimbursement At This Time.**

The Government asks that, irrespective of its ruling on substitution, this Court should require Hecker to provide proof as to why he should not personally be required to reimburse for CJA expenditures under Section 3006A(f). (Govt. Memo. at 18). Such a requirement is premature. The Government and the Bankruptcy Trustee have filed memoranda of law commenting on Mauzy's substitution. Trustee Randall L. Seaver's Memorandum Regarding Mauzy Substitution Motion; (Doc. # 190)(hereinafter "Trustee Memo."). Neither the Government nor the Federal Defender's Office have brought motions for reimbursement under the CJA. In order to respond to such a motion, Hecker should have the assistance of counsel. Until there is a definitive answer as to who will represent Hecker going forward, it is fundamentally unfair to ask that he present defenses as to reimbursement under Section 3006A(f).

More important is the issue of judicial economy underlying the Government's request for reimbursement, which the Government completely ignores. The Bankruptcy Trustee is currently in the process of reviewing an accounting, provided by Hecker, as to the use of the bankruptcy estate funds the Government alleges that Hecker converted while represented under the CJA. (Trustee Memo. at 4). Hecker created this accounting specifically to comply with a Bankruptcy Court Order that he turnover those allegedly converted funds. *Id.* The Bankruptcy Court has not ruled on whether Hecker's accounting is sufficient to satisfy its order. Any reimbursement proceedings in this Court, based on the Trustee and Government's allegations in their respective memoranda, would cover the same subject matter as the current bankruptcy court litigation. Furthermore any reimbursement order might conflict with the automatic stay imposed in bankruptcy court and place the Government in the position of elevating its CJA reimbursement claim to bankruptcy estate funds over the numerous other claims asserted by Hecker's bankruptcy creditors.

To summarize, the Government and the Bankruptcy Trustee are essentially attempting to convert Hecker's substitution motion into a second forum to litigate the Trustee's conversion claims against Hecker. Whatever the substantive merits of the Government and Trustee's underlying position, the bankruptcy court is the appropriate forum to litigate them, both because that litigation is more developed and because of the specific competency of the bankruptcy court. As a result, in the current proceeding this Court should not entertain the Government's request for evidence as to why Hecker should not personally be required to reimburse for CJA expenditures under Section 3006A(f).

Date:  October 15, 2010                           Respectfully submitted,

                                         By:      */s/ William J. Mauzy*
                                               William J. Mauzy (#68974)
                                               Piper Kenney Webb (#275621)
                                               Casey T. Rundquist (#390475)
                                               510 First Avenue North
                                               Suite 610
                                               Minneapolis, MN 55403
                                               (612) 340-9108

8