UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,              Case No. 10-CR-32(01) (JNE/XXX)

       Plaintiff,

  v.

DENNIS EARL HECKER,

       Defendant.

---

## MOTION FOR RELEASE PENDING SENTENCING

Defendant, Dennis Earl Hecker, respectfully moves this Court to release him pending sentencing, and submits the following in support of his Motion for Release Pending Sentencing. Hecker asks that this Court order his release setting the strictest possible conditions, 24 hour home incarceration with electronic monitoring. Home incarceration is sufficient to insure that Hecker "will not flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b). Such an order is appropriate because Hecker has taken no actions since September 7, 2010 to indicate that he is a flight risk or a danger to public safety, there is no evidence to suggest that home incarceration is insufficient to protect the public and insure that Hecker will not abscond pending sentencing.

## PROCEDURAL HISTORY

On June and July of 2009, various law enforcement agencies executed federal search warrants on Hecker's various homes and businesses. (Doc. # 1 – 7). This constituted a large, coordinated law enforcement action that received significant media attention. Between June of 2009 and his indictment in February 2010, Hecker knew he was the target of an extensive federal

investigation that would surely lead to his indictment. At the same time, his bankruptcy proceeding grew increasingly complex, requiring that he defend numerous adversary lawsuits. *E.g. In re Hecker*, Bky # 09-50779 (Doc. # 70, 71, 109, 126). He was also engaged in two contentious family law proceedings during this period. *In re the Matter of the Dennis E Hecker Irrevocable Trust*, 27-TR-CV-10-25; *In the Marriage of Tamitha Dawn Hecker vs Dennis Earl Hecker*, 27-FA-08-2731. Throughout this marathon of court proceedings, there is no evidence that indicates he even considered fleeing the State of Minnesota.

On February 11, 2009, Hecker made his first appearance on charges of fraud in this matter. (Doc. # 23). Magistrate Judge Noel ordered his release pending trial with conditions including that he be subject to a curfew and Active Global Positioning Satellite (GPS) monitoring. (Doc. # 28). Between February 11 and September 7, 2010, there is no indication that Hecker had any difficulty abiding by his curfew or GPS monitoring, his location was known 24 hours per day. On April 12, 2010 Judge Nelson appointed the public defender to represent Hecker, and continued Hecker's conditions of release.

On September 2, 2010, the Government filed a motion to revoke Hecker's release, citing two instances in which Hecker allegedly committed federal crimes while on release. (Doc. # 159 at 5, 8). The first instance involved Hecker's receipt of roughly $150,000 from Prudential life insurance policies. *Id.* at 5. The second instance involved alleged misrepresentations made by Hecker in obtaining a leased Kia vehicle. *Id.* at 8.

In a bargain for exchange, the Government abandoned its motion to revoke Hecker's release on September 7, 2010, as part of Hecker's guilty plea hearing. (*Change of Plea Hearing Transcript,* 34 attached as Exhibit A). At that hearing, Judge Ericksen issued a release order that

required Hecker to be subject to 24 hour home confinement with electronic monitoring pending sentencing, with certain narrow exceptions to the home confinement. (*Id.* at 39 - 40.)

On October 1, 2010 Hecker filed a Motion for Substitution of Counsel. (Doc. # 177). On October 8, 2010, Hecker's motion was stricken from Magistrate Judge Nelson's calendar and assigned to this Court. (Doc. # 189). This Court's order stated:

> IT IS HEREBY ORDERED that the motion to substitute retained counsel for appointed counsel [Doc. No. 177] currently scheduled for hearing before United States Magistrate Judge Susan Richard Nelson is stricken from the Magistrate Judge's calendar. The matter will be heard and decided by Chief United States District Judge Michael J. Davis.

On October 18, 2010 this Court heard argument and testimony on the Motion for Substitution of Counsel, and then detained Hecker and then continued the hearing until October 20, 2010. (*October 18 Motion Hearing Transcript,* at 87 – 89.) On October 22, 2010 this Court ordered Hecker's permanent detention pending sentencing, citing 18 U.S.C. § 3143, but allowed Hecker to obtain release if he could prove by clear and convincing evidence that he is not a flight risk or a danger to public safety. (Doc. # 219 at 4 - 5). Since October 18, 2010, Hecker has been incarcerated at the Sherburne County Jail.

### Hecker Should Not Be Detained Because Judge Erickson Previously Ruled On Hecker's Release Status Under 18 U.S.C. § 3143(a).

This Court's Order of 22, 2010, requires that Hecker show by clear and convincing evidence why he is not a flight risk or a danger to public safety, based on 18 U.S.C. § 3143(a), which states in pertinent part:

> the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence… be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

The issue of release pending sentencing had been previously adjudicated by a judicial officer, Judge Ericksen, applying Section 3143(a).  After accepting Hecker's guilty plea on September 7, 2010, Judge Ericksen considered whether Hecker should be released pending sentencing and ordered his release with conditions under 18 U.S.C. § 3143 and 3142(c).  (*Exhibit A* at 34.)  Because Judge Ericksen imposed conditions of release on September 7, 2010, this Court is bound by her implicit finding that on September 7, 2010, there was clear and convincing evidence that Hecker did not present a risk of flight or a danger to public safety.  This Court, therefore, lacked authority under the Bail Reform Act of 1984 (hereinafter "Act"), which consists of 18 U.S.C. § 3141 to 18 U.S.C. § 3160, to revisit Judge Ericksen's ruling.

Hecker notes that based on statements in the United States Supreme Court decision *United States v. Salerno*, 481 U.S. 739 (1987), the procedural requirements of the Act should not be taken lightly.  The Court remarked that:

> The Act represents the National Legislature's considered response to numerous perceived deficiencies in the federal bail process. By providing for sweeping changes in both the way federal courts consider bail applications and the circumstances under which bail is granted, Congress hoped to 'give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released.' S.Rep. No. 98-225, at 3, U.S. Code Cong. & Admin. News 1984, p. 3185.

*Id.* at 742. While highlighting that the Act increased the authority of federal courts to detain defendants pending resolution of criminal cases, the Court also said "[t]he judicial officer is not given unbridled discretion in making the detention determination. Congress has specified the considerations relevant to that decision." *Id.*  The Court also recognized that because pre-judgment incarceration impinges upon a defendant's "strong interest in liberty," "we think that Congress' careful delineation of the circumstances under which

detention will be permitted satisfies this standard." *Id.* at 750 – 51.  The Court's statements in *Salerno* evidence that Congress did not lightly enact the Act's provisions, and thus the Act's terms should be strictly construed.  Finally, Congress was well aware that the right to release without excessive bail is a precious right secured by the Eighth Amendment.

With this in mind, nothing in Section 3142 or 3143 gives a judicial officer plenary authority to revisit a prior judicial determination by an Article III judge as to whether a defendant presents a risk of flight or a public safety threat.  Certainly nothing in the order referring the Motion for Substitution of Counsel to the Court implied that Judge Ericksen's release order would be reviewed.  While Section 3142(c)(3) allows a court to subsequently modify conditions of release, it does not provide a similar ability to order detention.  Instead detention can only be ordered after a detention hearing under Section 3142(f).  A detention hearing may only be held upon a defendant's first appearance, Section 3142(f), or upon defendant's conviction, Section 3143.  The Government did not file a motion for a detention hearing and neither did the Court.  No detention hearing was ordered and no detention hearing complying with the procedural protections of Section 3142(f) was held.

The Eighth Circuit addressed this issue in *United States v. Maull*, 773 F.2d 1479, 1482 - 86 (8th Cir. 1985) and *United States v. Holloway*, 781 F.2d 124, 126 - 28 (8th Cir. 1986).  In *Maull* and *Holloway*, the Eighth Circuit confronted the question of whether the court could hold a detention hearing, under 18 U.S.C. § 3142(e), when the issue of release pending trial had previously been decided.  *Id.*  The context of release pending trial is a persuasive analogy to release pending sentencing, because Section 3142(a), states that:

> Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be… (1)

released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section… (2) released on a condition or combination of conditions under subsection (c) of this section… (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or… (4) detained under subsection (e) of this section.

Section 3142(a) is analogous to Section 3143(a), in that both pertain to release pending a certain event and that both use the mandatory phrase "the judicial officer shall… order." Indeed the only material difference between the analysis under Section 3142 and Section 3143 is substantive, in that the burden of persuasion shifts to the defendant after a guilty plea. Procedurally, Section 3142 and Section 3143 are very similar, in that both require the judicial officer to make a determination about release upon a specific hearing, the first appearance (under Section 3142(f)) and the guilty plea proceedings under (Section 3143(a)). As a result, case law pertaining to procedure under Section 3142 is highly persuasive for analyzing Section 3143.

Turning to *Maull* and *Holloway*, a comparison of their respective holdings indicates that once an Article III judicial officer has made a determination about release, that determination cannot be revisited by a separate judicial officer. In *Maull*, 773 F.2d at 1481, the Eighth Circuit confronted an Article III judge who detained the defendant under Section 3142(e) upon the defendant's appeal of a magistrate judge's ruling on the amount of bail. The defendant's first appearance was before a magistrate judge who set a million dollar bail. The defendant appealed the order setting bail to the district court judge. The district court judge held a detention hearing and ordered the detention of the defendant. The Eighth Circuit held that because the defendant appealed the magistrate's bail ruling, the district court had the ability to order a detention hearing, *sua sponte*. *Id.* at 1486. The decision in *Maul* rested in large part on the fact that the

district court ordered a detention hearing for the defendant on the defendant's first appearance in front of an Article III judicial officer. *Id.* The *Maull* court said:

> Congressional intent to limit the scope of magistrate authority is reinforced by the charge of 18 U.S.C. § 3142(f), which gives the judicial officer upon his own motion the authority to call a detention hearing where there is a serious risk that the defendant will flee. The power to decide must finally reside in the Article III court. We thus cannot conclude that the government's failure to request detention before the magistrate, or for that matter at all, constrains the district court judge.

*Id.*

The year after *Maull*, the Eighth Circuit reached a different result in *Holloway*, 781 F.2d at 126, which involved a magistrate judge's reconsideration of that same magistrate's prior decision regarding release, as opposed to the appeal of a magistrate judge's decision to an Article III judge. In *Holloway*, two days after a magistrate judge set bond for defendant, the Government moved for a detention hearing based on evidence it discovered after the magistrate judge set bond. *Id.* at 125. The magistrate judge agreed with the Government and ordered defendant's detention. The Eighth Circuit reversed after considering *Maull* at length, stating:

> Both *Maull* and the instant case seem rather unusual, but we think the differences between them are clear and dispositive. To sustain the government's contention here would go far towards reading out of the statute completely the requirement that a detention hearing be held upon a defendant's first appearance, and we do not believe that *Maull* requires any such drastic rewriting of an Act of Congress.

*Id.* at 128.

Hecker's situation is much more analogous to *Holloway* than to *Maul*. This Court did not detain Hecker upon an appeal of his conditions of release from a magistrate judge, instead it, *sua sponte*, converted a review of motion for substitution of counsel into a detention hearing and ordered Hecker's detention even though an Article III judge had previously set conditions of release. (Doc. #219 at 4 - 5). Just as the magistrate judge was bound by its first adjudication of the defendant's release status in *Holloway*, this Court is bound by Judge Ericksen's adjudication

of release status on September 7, 2010.  The only difference between this matter and *Holloway* is that Judge Ericksen determined Hecker's release status at a guilty plea hearing, whereas the *Holloway* magistrate adjudicated the issue at a first appearance.  As explained above, due to the strong similarity between Section 3142(a) and 3143(a), the difference between this matter and *Holloway* is meaningless.

Further support for the conclusion that the Court was bound to follow Judge Ericksen's release order is found in the text of the statute providing for sanctions for violation of a release condition.  18 U.S.C. § 3148(b) provides:

> To the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or Local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order has alleged been violated.

Based on the clear text of the statute, revocation of Hecker's release for violating a law could only be ordered by Judge Ericksen, the judicial officer who ordered the release.

Although a detention hearing may be reopened, the Government has not offered evidence that was not known to the Government at Hecker's guilty plea hearing.  Section 3142(f).  As evident in the Government's motion to revoke Hecker's release, the Prudential Insurance proceeds issue and the Kia lease issue were known to the Government and Hecker prior to his change of plea hearing.  (Doc. # 159 at 5).  (The Merger Clause of Hecker's Plea Agreement was negotiated to preclude prosecution for these incidents.)  All other issues were known by the United States Bankruptcy Trustee, who worked closely with the Government and intervened in this proceeding for purposes of requesting punishment for Hecker.  (Doc. # 190 at 5).  These bankruptcy issues were not material to the conditions of release.  Therefore all matters discussed at the October 18, 2010 and October 20, 2010 that had "a material bearing" on the conditions of release, Section 3142(f), were known to the Government and could have been presented by the

Government at the guilty plea proceeding. In any event, no detention hearing complying with 18 U.S.C. § 3142(f) was held, thus there was no hearing to reopen.

### Hecker Should Be Released Because He Has Not Been Afforded Proper Notice And Hearing Under Section 3148(b).

The Government is never powerless to seek Hecker's detention. 18 U.S.C. § 3148(b), which pertains to revocation of release, reads:

> The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer… (1) finds that there is… (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release; and (2) finds that… (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release.

Yet Section 3148(b) cannot provide an independent basis for Hecker's current detention because that section's procedural requirements have not been complied with. Section 3148(b) begins by providing:

> The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section.

Unlike Section 3142 and 3143, Section 3148 does not endow the district court with authority to, *sua sponte*, detain a defendant or modify conditions of release, absent a Government motion.

In this matter, there was no government motion to revoke Hecker's release pending on October 18, 2010. Instead the purpose of the October 18, 2010 hearing was, ostensibly, to decide whether or not Hecker could substitute retained counsel for appointed counsel. (Doc. #

177, 189, 194). Additionally, the Government requested that the Court order Hecker to repay funds expended for appointed counsel. (Doc. # 192 at 18 - 20). By October 18, 2010 the Government had abandoned its prior motion to revoke Hecker's release, filed on September 2, 2010. (Doc. # 159). At Hecker's Change of Plea hearing on September 7, 2010, counsel for the government stated:

> The government's position is that in light of the defendant's acceptance of responsibility for essentially all of the criminal conduct in this case, and for his acknowledgement that he is facing and is going to be serving a prison sentence, we are recommending that he be placed at 24-hour home detention….

(*Exhibit A* at 34.) The Government filed no subsequent motion to revoke Hecker's release.

Furthermore, the lack of a Government motion clearly prejudiced Hecker. At the October 18, 2010 hearing, Hecker was not prepared to conduct an evidentiary as to his release status. The October 18th hearing began with Hecker's prospective retained counsel presenting evidence and argument as to why his substitution should be permitted. (*Transcript of October 18 Motions Hearing,* Attached as Exhibit B.) After this, the Court asked if Hecker would testify, to which retained counsel responded:

> We didn't intend to call him. Your Honor, we filed a motion [for substitution]. We're certainly not counsel of record at the present time.

(*Id.* at 37.)

> After the Court inquired as to the Government's position, the Government said:
>
> [T]he Government's position has been that Mr. Hecker should be required to testify under oath about assets that he has and has had over the past several months, including monies that the Government just learned about since his guilty plea hearing, *with which he should be reimbursing the CJA fund.* [Emph. Added].

(*Exhibit B* at 37 - 38.)

Retained counsel responded:

10

> Well, Your Honor has not granted my motion to permit substitution of counsel. I'm simply the moving party on that motion. I don't presently represent Mr. Hecker and it would be difficult to provide legal guidance to him. [Appointed counsel] remains his counsel.

(*Id.* at 38.)

Appointed counsel stated:

> Your Honor, the plea agreement…said that he will cooperate fully… regarding assets… I believe he gave up his right to remain silent because we're in this stage of the proceedings. So I am not going to advise him not to cooperate. If this is seen as a measure of cooperation, then I would advise otherwise.

(*Id.*)

He later added:

> Mr. Hecker does himself have the right to testify or not to testify and I believe in all fairness he should be asked whether he wants to testify and refuse to testify if he so desires. I just can't advise him one way or the other.

(*Id.*) at 39.

And subsequently:

> I guess our position would be that if Mr. Hecker is agreeing to at some time in the future pay back the funds expended by the CJA and if that would obviate the necessity of his testimony, then we would go with that.

(*Id.* at 43 - 44.)

The Court ruled:

> The question is whether or not he had the funds to pay it back now, not in the future... he's going to have to explain to me in sufficient detail what happened with that $200,000… so I know if there's any other funds out there.

(*Id.* at 44.)

The above referenced discussion shows that Hecker was prejudiced by the lack of a Government motion in two ways. First, it is clear that his public defender had not prepared him to testify as to his acquisition and expenditure of assets throughout the summer and fall of 2010

11

because the issue was not anticipated. The scope of the motion for substitution arguably opened the door to an inquiry of Hecker, but only as to whether or not he had provided funds to Ralph Thomas for the purpose of hiring retained counsel. *See* (Doc. # 177, 178)(raising the issue of the ultimate source of funds used to pay retained counsel). The testimony of Ralph Thomas resolved this issue in the negative, obviating any need for Hecker's testimony.

Second and more importantly, neither the Government nor Hecker, believed that Hecker's release status was at all in issue at the beginning of the October 18, 2010 hearing. Instead, the need for Hecker's testimony, according to the Government and Court, stemmed exclusively from Hecker's requirement to repay the CJA fund. *Id.* at 37 - 44. It should be noted that Hecker's plea agreement requires him to:

> fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which he has any right, title, or interest. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution and fines ordered by the Court. The defendant represents that any financial statement provided to the United States Attorney's Office will be accurate, truthful and complete.

(*Plea Agreement* at 11 - 13 attached as Exhibit C). Hecker has complied with the plea agreement. Yet the plea agreement does not explicitly require him to testify about assets under oath, subject to cross examination, upon demand, nor do his conditions of release. *Id.* (Defendant does not contest the Court's accounting order and he will comply with this order.)

Finally, 18 U.S.C. § 3148(b) grants authority to revoke the conditions of release solely to the judicial officer who set the conditions of release:

> To the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated.

This Court ordered Hecker taken into custody on October 18, 2010, stating "nothing has been accurate and correct to me today and so I don't expect it to be by Wednesday unless you have a wake-up call." *Exhibit B* at 87, 89.  At that time the Court ordered Hecker to account only for the funds he received since his plea hearing, as well as to turn over his remaining funds. *Id.*  The Court subsequently, on Friday October 22, 2010, revoked Hecker's release, finding him to be a flight risk.  (Doc. # 219 at 4 - 5).

Because Hecker did not have the benefit of the procedures listed in 18 U.S.C. § 3148(b), this Court's October 22nd ruling cannot be justified under that section.

### Hecker Should Be Released Because He Is Does Not Present A Risk of Flight Or A Danger To Public Safety.

Should this Court view 18 U.S.C. § 3143(a) as the appropriate governing statute, Hecker respectfully asks this Court to find by clear and convincing evidence that he is neither a flight risk nor a threat to public safety.  Because Judge Ericksen imposed conditions of release on September 7, 2010, this Court is bound, at a minimum, by her finding that on September 7, 2010, there was clear and convincing evidence that Hecker did not present a risk of flight or a threat to public safety.  Hecker has done nothing since the change of plea hearing to indicate otherwise.

As mentioned above, under Section 3143(a) uses the mandatory language:

> the judicial officer *shall* order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence… be detained, *unless* the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).  [Emph. Added]

As a result, Judge Ericksen's conditional release order carries with it the implicit finding that as of September 7, 2010, clear and convincing evidence existed to support Hecker's release.  This is a conclusion that the Government cannot credibly contest because it agreed that Hecker should be released pending sentencing.  Thus the question must be whether or not Hecker's conduct

13

since September 7, 2010 makes him a risk either to flee or to danger the safety of any other person or community.

Since September 7, 2010, Hecker has received two large payments, a $15,000 settlement with his bankruptcy trustee on September 23, 2010 and a $40,500 dispersal from his 401(k) account on September 27, 2010.  Hecker's receipt and use of these payments do not indicate a risk of flight or a threat to public safety.

The $15,000 settlement resulted from litigation over a Personal Services Agreement (PSA) that Hecker negotiated with Toyota Motors before bankruptcy, and that he listed as an asset on his bankruptcy schedules.  (Bky  # 09-05045, Doc. # 10, 50).  The Trustee claimed that future payments on this PSA were not on-going income of Hecker, and were therefore property of the bankruptcy estate.  *Id.*  Though the bankruptcy court ruled in favor of the Trustee, the Trustee elected to settle with Hecker on appeal, paying him $30,000 of which his bankruptcy lawyer earned $15,000.  (Bky  # 09-05045, Doc. # 90, 102, 103).  This payment is not evidence of asset concealment because it was directly negotiated with the Trustee.

The same basic logic applies to the 401(k) dispersal.  Hecker listed this asset on his bankruptcy schedules as exempt property, because the bankruptcy code does not consider 401(k) assets of the debtor to be bankruptcy estate property.  11 U.S.C. § 522(b)(3)(C).  Hecker's 401(k) funds were, however, frozen in his family court proceedings until September 27, 2010, when he received the $40,500 dispersal.  *In the Marriage of Tamitha  Dawn Hecker vs Dennis Earl Hecker*, 27-FA-08-2731.  Due to his lack of a bank account, disbursing these funds into prepaid American Express cards was the only way Hecker could receive payment.  The receipt of these funds were authorized by a judicial officer and known to the Trustee.  The acquisition of these funds do not evidence a flight risk or a danger to public safety.

## CONCLUSION

Hecker respectfully requests that he be released to home confinement with GPS electronic monitoring because he is not a flight risk and is not a danger to any person or the community.

Date:  December 31, 2010                                     Respectfully submitted,

By:   */s/ William J. Mauzy*
William J. Mauzy (#68974)
Piper Kenney Webb (#275621)
Casey T. Rundquist (#390475)
510 First Avenue North
Suite 610
Minneapolis, MN 55403
(612) 340-9108
*Attorneys for Defendant Dennis E. Hecker*