UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 10-32(1)(JNE/XXX)

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )        **GOVERNMENT'S OPPOSITION TO**
      v.                       )        **DEFENDANT'S MOTION FOR RELEASE**
                               )        **PENDING SENTENCING AND, IN THE**
DENNIS EARL HECKER,            )        **ALTERNATIVE, MOTION FOR**
                               )        **REVOCATION**
            Defendant.         )

The United States of America, by and through its undersigned counsel, hereby submits this opposition to the defendant's motion for release pending sentencing (Doc. No. 246), and, in the alternative, its motion for revocation of defendant's pretrial release conditions.

## INTRODUCTION

Defendant Hecker now seeks to be released from jail, despite that 1) he no longer carries the presumption of innocence, having already pled guilty to massive corporate and bankruptcy fraud schemes that demonstrate beyond a doubt his economic danger to the community, 2) he will be sentenced to a significant prison sentence in the near future, 3) even when placed under restrictive conditions, he has committed serious crimes and has violated order after order, including <u>since</u> he pled guilty, and 4) the Court has already determined, after examining the facts and circumstances in

this case, that he is a serious flight risk and should be detained pending sentencing.

Hecker's primary argument is that this Court is bound by Judge Ericksen's September 7, 2010, decision to release Hecker on restrictive conditions "because Hecker has taken no actions since September 7, 2010, to indicate that he is a flight risk . . . ." Hecker motion at 1.  Hecker's argument is without merit because it completely ignores the crimes and other release violations he committed since the September 7 guilty plea.

Hecker also argues that he cannot be detained absent a motion by the government and a detention hearing.  In fact, the Court can *sua sponte* seek a defendant's detention, and Hecker was detained following a hearing before the Court.  Moreover, because defendant has pled guilty, the ultimate detention issue is determined by 18 U.S.C. § 3143, which does not appear to require a hearing and which provides that the defendant <u>should</u> be detained unless the court finds by clear and convincing evidence that the defendant is <u>not</u> a flight risk.

Even assuming Hecker's technical arguments were correct, they can easily be remedied.  The government hereby moves for detention, and the detention hearing can take place at the hearing scheduled for January 4.  The government will not call any witnesses but will rely on the ample record already established in this case.

## STATEMENT OF FACTS

From day one of this case, the government has taken the consistent position that Hecker is a serious flight risk. Every judicial officer to review the matter, as well as Pretrial Services, has agreed. On February 11, 2010, at Hecker's first appearance, U.S. Pretrial Services presented a bond report that concluded Hecker presented a risk of flight under 18 U.S.C. § 3142. The government informed Hecker that it planned to present evidence that Hecker posed a serious risk of flight. Among other things, Hecker was facing serious charges, carrying lengthy prison sentences; Hecker had a conviction for careless driving, stemming from a late 2008 incident in which police reports indicated Hecker had large quantities of a variety of prescription drugs in his system; Hecker had accessed large amounts of cash, even after filing bankruptcy; and Hecker had a history of not abiding by various court orders, including orders entered in his divorce court and bankruptcy proceedings.[1]

Hecker stipulated to being placed on highly restrictive conditions, and the stipulation negated the need for a detention hearing. Magistrate Judge Noel entered a release order that, among

---

[1]Ultimately, based on Hecker's excessive failure to abide by bankruptcy court orders, the bankruptcy court took the rather exceptional step of summarily concluding that over $83 million of Hecker's debt to Chrysler Financial was not dischargeable in bankruptcy. In re Dennis Hecker, United States Bankruptcy Court, District of Minnesota, Case No. 09-50779, Doc. 401.

other things, required Hecker to be placed on an electronic monitor, and it imposed a curfew and travel restrictions on the defendant. (Doc. No. 16).

Thereafter, Hecker brought no fewer than four motions for modification of his restrictive conditions, and each of these motions was denied, based on Hecker's continued risk of flight. See Orders at Doc. No. 153 at pp. 20-21 (summarizing Hecker's modification motions and orders denying them). In the final order, rejecting Hecker's last motion to modify his conditions, then Magistrate Judge Nelson stated that "[t]his Court remains of the opinion that Defendant Hecker poses a serious risk of flight and the pressures of trial will only exacerbate the strain from which he claims to suffer." Doc. No. 153.

Despite Hecker's restrictive conditions, Hecker continued to commit crimes and violate court orders while on release. By early September 2010, the government learned that Hecker had stolen approximately $154,000 in Prudential Insurance proceeds from the bankruptcy estate. Hecker had also committed wire fraud by making false statements to a Kia dealer to secure a vehicle lease. Additionally, Hecker had violated Magistrate Judge Nelson's April 12, 2010, court order (Doc. No. 78) which required him to notify the court if he should secure assets with which to secure private counsel or reimburse the government for his CJA appointed counsel.

Based on these violations, on September 2, 2010, the government brought a motion to revoke Hecker's release.  See Doc. No. 159.

Hecker, through counsel, indicated that he had no basis to contest the facts underlying the government's revocation motion, and he proposed to plead guilty to the charges in the indictment. In exchange, Hecker asked for the government's recommendation that Hecker be placed on even more restrictive conditions.  Based on Hecker's decision finally to accept responsibility for his crimes, the government agreed.  The government, however, made it clear to Hecker's then counsel that, if Hecker should violate his new conditions, the government would not be precluded from moving to revoke those conditions.[2]

At Hecker's guilty plea hearing on September 7, 2010, based on the parties' recommendation, Hecker was placed on the more restrictive conditions.  Specifically, Judge Ericksen ordered Hecker confined to his home for 24 hours, with continued GPS-monitoring, along with limited carve-outs for court, attorney, and medical visits and the like.  Transcript of guilty plea at 34-40. In addition, Hecker was prohibited from opening any new credit

---

[2]Given Hecker's violation of the conditions imposed at his guilty plea hearing, the government is no longer bound by its prior agreement not to seek detention.  Moreover, Hecker's violation permits the government to argue about all of Hecker's conduct, both prior to his guilty plea and after.  The Court is also not restricted to post-guilty plea facts and can consider all of the facts and circumstances in this case in reaching its ultimate detention decision.

lines and was not permitted to acquire any new assets without approval of U.S. Pretrial Services/U.S. Probation. Id. at 40-41. At the plea hearing, the government reiterated its concern that Hecker was under a continuing obligation to inform the court and make payments if he should have assets with which to pay the CJA fund. Id. at 42. Based on representations by his counsel, the court concluded that Hecker understood those legal obligations. Id. at 45-46.

After he pled guilty on September 7, Hecker violated his release conditions. His violations stemmed from monies he received later in September from three sources: approximately $40,000 from a 401(k) account, approximately $15,000 from a settlement in bankruptcy, and approximately $10,000 in a loan from a friend. Hecker did not tell U.S. Pretrial Services/U.S. Probation about any of this money until he had received and spent the money. See Transcript of Oct. 20, 2010, hearing at 99-100; Govt. Ex. 14 (October 5, 2010, email from Hecker to Pretrial Services re. $15,000 in bankruptcy settlement, after spending most of it). Thus, Hecker plainly violated the condition that he not acquire major assets without that office's approval.

In addition, Hecker violated the April 12 order requiring him to notify the court if he were to acquire assets with which to repay the CJA fund. While he had violated this order prior to the September 7 guilty plea hearing, his acquisition of additional

assets, assets which he failed to disclose even after his disclosure obligations were clarified with him at the guilty plea hearing, amounted to a new and even more blatant violation.

Hecker further violated his release conditions when he committed perjury before Chief Judge Davis at the October 18, 2010, hearing on Hecker's motion to substitute counsel. As the Court found in its October 22, 2010, order, "Hecker misrepresented his financial situation when . . . he testified that he received $33,000 from the alleged sale of the Toyota Tundra" when "[i]n fact Hecker also received money from profits on another vehicle sale based on a side deal with John Prosser." See Doc. No. 219. Committing perjury, a federal crime, is a violation of Hecker's standard release conditions.[3]  By committing perjury directly before the district court, when combined with so many other facts demonstrating Hecker's flight risk, Hecker's actions caused the Court to detain him on October 18. On October 19, 2010, the Court entered an order (Doc. No. 205) stating, among other things, that Hecker would be detained until sentencing, but that appropriate motions for his release could be filed.

---

[3]At some point, Hecker may be in violation of the Court's October 22 order requiring him to "provide a complete and accurate accounting to the Court for the dates June 1, 2010, through sentencing." Order (Doc. No. 219) at 4. Despite the passage of more than two months since that order, Hecker has yet to provide any accounting for the dates June 1, 2010, through October 2010.

Thereafter, Hecker brought a motion for a furlough, which the government opposed.  See Doc. Nos. 209, 214.  On October 20, 2010, the Court held a hearing on the furlough motion.  It denied the motion, and ordered Hecker detained pending sentencing.  See Doc. No. 219.  Specifically, it found that Hecker was a flight risk based on the perjury he committed on October 18, which caused him to lose all credibility with the Court, and based on the substantial prison time he was facing, his demonstrated ability to obtain and conceal large amounts of money, and his flagrant and repeated violations of court orders.

Even once detained, Hecker continued to engage in behavior inconsistent with someone who now seeks to demonstrate he can comply with court-imposed conditions.  On November 17, 2010, Hecker was granted the privilege of meeting with his counsel at the U.S. Attorney's Office for the exclusive purpose of preparing the court-ordered accounting.  Hecker abused that privilege when he arranged, without knowledge or permission of his counsel or the government, for his girlfriend and his pastor to meet him at the U.S. Attorney's Office for purposes clearly unrelated to the accounting. See Doc. No. 236 (Letter from Casey Rundquist to Chief Judge Davis, dated November 19, 2010); Doc. No. 230 (Letter from Nicole Engisch to Chief Judge Davis, dated November 17, 2010).

**ARGUMENT**

**A.    THE COURT HAS AUTHORITY TO REVOKE THE PRIOR RELEASE ORDER GIVEN HECKER'S VIOLATION OF THAT ORDER**

Under 18 U.S.C. § 3148(b), a defendant's release on bond may be revoked and the defendant detained where the Court finds there is clear and convincing evidence that the defendant violated a condition of release, and further finds that the defendant is unlikely to abide by any condition or combination of conditions of release.  18 U.S.C. § 3148 (b).  Moreover, there is a rebuttable presumption of detention "[i]f there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony . . . ." Id.  In the case of a defendant who has been convicted and is awaiting sentencing, 18 U.S.C. § 3143 also applies, and it requires the defendant to show by clear and convincing evidence that he "is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ."

Here, the evidence presented to the Court at hearings on October 18 and October 20, 2010, demonstrates that Hecker has violated release conditions, is a risk of flight and an economic danger to the community,[4] and is unlikely to abide by any condition

---

[4]Courts have appropriately construed the Bail Reform statute to include economic harm as a threat to the safety of the community.  See, e.g., United States v. Persaud, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) ("economic harm qualifies as a danger within the contemplation of the Bail Reform Act").

or combination of conditions of release.   Hecker violated the condition that he obtain approval from Pretrial Services before acquiring major assets when he acquired approximately $40,000 from a 401(k) account, approximately $15,000 from a settlement in bankruptcy, and approximately $10,000 in a loan from a friend and did not inform Pretrial until after the money was spent.   He also violated the court's April 12 order (Doc. No. 78) requiring him to notify and reimburse the court when he acquired assets with which to reimburse the CJA fund.   Thereafter, on at least October 18, 2010, and likely on October 20, 2010, as the Court previously found, Hecker committed perjury, a federal felony, thus violating a standard condition of release that he violate no federal, state or local law.   See 18 U.S.C. §§ 1621-23 (perjury statutes).

There is no question courts have authority to revoke a defendant's release when the defendant violates his release order, even an order entered following a guilty plea.   See United States v. Welsand, 993 F.2d 1366 (8th Cir. 1993)(after court released defendant pending sentencing, defendant violated conditions by taking possession of cash assets that could be used to facilitate flight; court properly revoked release conditions and ordered defendant detained).

Moreover, the plain language of 18 U.S.C. § 3148(b) makes clear that revocation may be addressed by a judge other than the judge who originally entered the release conditions.   That statute

provides in only one limited context, where a defendant is charged with violating the condition not to commit a federal, state or local crime, that "[to] the extent practicable" the defendant shall be brought "before the judicial officer who ordered the release and whose order is alleged to have been violated." 18 U.S.C. § 3148(b). Thus, by the plain terms of the statute, if it is not practicable, the defendant need not be brought before the same judicial officer. And, if the defendant is accused of violating other release conditions, as is the case here, there is no requirement in the statute that he or she be brought before the same judicial officer.

Further, the district court has authority even in the absence of a motion by the government to address release or detention *sua sponte*, including through review of another judicial officer's order. See United States v. Spilotro, 786 F.2d 808, 815 (8th Cir. 1986); see also United States v. Roland, 2005 WL 2318866 at *6 (E.D. Va. 2005) (after assessing plain language of 18 U.S.C. § 3148(b), court held that a judicial officer has authority to initiate a revocation proceeding and order detention pursuant to the statute, even in the absence of a motion from the government); Cf. United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003)(holding district court in New Mexico had authority to review pretrial release order of district court in Arizona).

Here, it was not practicable for Hecker to be brought before the same judicial officer when the defendant's risk of flight became apparent to this Court, following the defendant's in-court testimony on October 18 and 20, 2010. To release the defendant even in the face of the new evidence of risk of flight, pending a motion by the government and an opportunity to appear before another judicial officer, would have thwarted the very point of detaining a defendant who is a risk of flight. In addition, the Court was the judicial officer who observed first hand the acts of perjury that amounted to the release violation. By analogy, this situation is comparable to a district court jailing a defendant for committing contempt in the court's presence. See 18 U.S.C. § 401(1)(a district court has the power to punish by imprisonment, at its discretion, "such contempt of its authority . . . as [m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice.").

In making his motion, Hecker completely ignores his own post-plea release violations in arguing that this Court is somehow bound by Judge Ericksen's release order. None of Hecker's cited authorities actually stand for the proposition that a second judge lacks authority to review a first judge's release decision, where new facts have come to light bearing on the earlier decision.[5]

_____

[5]Taken to the extreme, his argument would mean that a defendant could commit a violent crime in a courthouse setting and no judge could order him detained if another judge had previously ordered

Hecker first cites to a case that he concedes is not helpful to his position, United States v. Maull, 773 F.2d 1479 (8th Cir. 1985).  Maull is not directly on point because it addressed the issue of whether a district court judge had the authority to reverse a magistrate judge's release determination and, on its own motion, hold a detention hearing and order detention.  Id. at 1481. The Maull court held that the district court does have that authority.  Id. at 1486.  If relevant here at all, Maull makes clear that judicial officers have the authority to order detention *sua sponte* where there is a serious risk of flight, even in the absence of a motion by the government.   Id. at 1486.

The case on which Hecker primarily relies, United States v. Holloway, 781 F.2d 124 (8th Cir. 1986), also does not advance his cause as it did not involve a defendant who violated his conditions after being released.   In that case, at the defendant's first appearance, the government sought a $250,000 bond.  Id. at 125. Two days later, after learning nothing more than that the defendant had a higher net worth than it originally thought, the government moved for detention before the magistrate judge.  Id.  Following a hearing, the magistrate judge detained the defendant.  Id.  Upon appeal to the Eighth Circuit, the court reversed and ordered the original bond reinstated, holding that the government could not

---

him released.

change its mind on detention where the only new evidence to come to light was an increase in the defendant's net worth. Id.

In reaching its holding, the Holloway court distinguished its facts from other cases in which additional, substantive evidence bearing on the defendant's risk of flight comes to light following the first appearance. The court stated:

> We do not doubt that in the exceptional instance when a magistrate has made a decision to release and subsequently evidence comes to light which could not reasonably have been brought in at the first appearance, and that evidence indicates a strong likelihood that the defendant is a flight risk or a danger to the community, the magistrate or the district court would have power to order detention under § 3142(e), regardless of the fact that the time for a § 3142(f) hearing had passed. We repeat that in this case no such new evidence came to the attention of the court at any time.

Id. at 128-29.

In this case, after Judge Ericksen released the defendant on conditions, evidence came to light that indicates a strong likelihood that the defendant is a flight risk; namely, the defendant committed crimes and violated other conditions of release. Thus, in such circumstances, even the Holloway decision holds that the issue of detention can--and should--be revisited.

**B.   IN THE ALTERNATIVE, THE GOVERNMENT MOVES FOR DETENTION AND REQUESTS THAT THE DETENTION HEARING BE HELD IN CONNECTION WITH HECKER'S MOTION FOR RELEASE**

Although the authorities cited above make clear that the Court has authority to detain a defendant even in the absence of a motion by the government, any potential defect is easily cured by the

government moving for detention.  Thus, in the alternative, the government hereby moves for detention on the grounds that Hecker presents a serious risk of flight and an economic danger to the community and because he is unlikely to abide by any condition or combination of conditions of release.

Hecker also argues that he is entitled to a hearing on the issue of detention.  It is not clear that a defendant who moves for release pending sentencing is entitled to a hearing. See United States v. Greene, 158 Fed. Appx. 941, 942 (10th Cir. 2005)("[t]here is nothing in § 3143(a) that requires that the district court hold such a [detention] hearing" upon the defendant's motion for release pending sentencing).  Nonetheless, given the current hearing date of January 4, 2011, the government will presume that the issue of detention will be addressed, with the defendant being permitted to introduce evidence as appropriate.  Pursuant to 18 U.S.C. § 3143, as the defendant acknowledges (at p. 6 of his motion), "the burden of persuasion shifts to the defendant after a guilty plea."

The government, relying on evidence in the record, contends that the defendant's continued detention is warranted by not just the evidence of Hecker's more recent release violations but by his entire course of conduct.  Thus, Hecker presents an economic danger to the community based on his commission of crimes, including bankruptcy fraud and wire fraud, both before and after he was indicted in this case, including bankruptcy fraud regarding the

15

stolen insurance proceeds and his wire fraud involving the Kia dealer. He also committed the crime of perjury, a federal felony, after pleading guilty in this case. Pursuant to 18 U.S.C. 3148(b), he is presumed to be a danger to the community as a result of his post-release crimes.

Hecker also presents a serious risk of flight for the following reasons:

1.   The nature of the charges and likely sentence. First, because Hecker has pled guilty to massive corporate and bankruptcy fraud schemes, it is no longer a question of if he will be sentenced to prison. He is facing with certainty a lengthy prison sentence in the near future. The U.S. Probation Office has found that his guidelines are 292 to 365 months of imprisonment, a range that is even higher than the 108 to 135 month range the parties contemplated in their plea agreement. The government will be seeking the statutory maximum sentence of ten years.

2.   The history and characteristics of the defendant. As set forth in the PSR (¶¶ 71-73), the defendant has a history of mental conditions. He has taken a large volume of prescription medications to the point of impairment on at least one occasion, back in December 2008, when he crashed his car and was arrested. He has a criminal conviction related to that incident, which was pled down to careless driving. In connection with the PSR process, he has admitted to having an alcohol problem that arose out of

legal difficulties and other stressors, factors which are only exacerbated by his impending sentencing.  PSR, ¶ 75.

Hecker has had access to substantial financial resources, even after filing bankruptcy, whether from friends (including Ralph Thomas), theft, or otherwise.  He appears to have no impulse control, and thus managed to continue his extravagant lifestyle even after swearing under oath that he had no assets with which to pay for counsel.

Hecker has a history of repeatedly violating court orders in no fewer than three forums: divorce court (for which he was once jailed), bankruptcy court (for which he now faces an $83 million judgment), and federal criminal court.  For each of the past five years, he has engaged in criminal fraud in one form or another, and he has committed those crimes and the additional crime of lying to a federal judge, all while on release in this very case.

Moreover, Hecker has shown throughout the history of this case that he cannot be trusted to comply with any condition or combination of conditions.  Time and time again, as more and more restrictive conditions were placed on him, he chose to violate those release conditions through a series of criminal acts, violations of court orders, and failures to provide basic asset information to Pretrial Services.

## CONCLUSION

For all of these reasons, this Court should conclude that the defendant continues to pose a serious risk of fligh and danger to the community, and it should deny the defendant's motion to be released pending sentencing.


Dated: January 3, 2011          Respectfully submitted,

                                B. TODD JONES
                                United States Attorney

                                s/ Nicole A. Engisch

                                BY: NICOLE A. ENGISCH
                                    NANCY E. BRASEL
                                    DAVID M. GENRICH
                                Assistant United States Attorneys

18