UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

_____

UNITED STATES OF AMERICA,                    Case No. 10-CR-32(01) (JNE/XXX)

        Plaintiff,

   v.

DENNIS EARL HECKER,

        Defendant.

_____

**Defendant's Reply Memorandum For Release Pending Sentencing**

Defendant submits the following in reply to the Government's position regarding his release pending sentencing. The Government is unable to cite any authority to support the proposition that on October 22, 2010, this Court had the authority to revisit Judge Ericksen's September 7, 2010 conditional release order and detain Hecker pursuant to 18 U.S.C. § 3143. It similarly provides no authority for the proposition that this Court had the ability to, *sua sponte*, order Hecker's detention under 18 U.S.C. § 3148. Instead the Government proposes an 11th hour detention hearing in front of this Court that would continue to ignore the effect of Judge Ericksen's conditional release order. Hecker respectfully asks that this Court not be persuaded, and that it instead order his release to home incarceration pending sentencing.

**18 U.S.C. Sections 3143 and 3148 Do Not Allow This Court To *Sua Sponte* Detain A Defendant**

The Government is unable to cite a single case construing Section 3148 or Section 3143 as allowing a court to detain a defendant pending sentencing after an Article III judge had ordered release, as this Court did, without any prior notice and motion. The Government's

1

published authorities, *United States v. Spilotro*, 786 F.2d 808, 815 (8th Cir. 1986) and *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003), both pertain not to detention pending trial or sentencing, but to modification of conditions of release including the amount of bail.  There is no doubt that a court that has ordered release has the authority to modify conditions of release under 18 U.S.C. § 3142(c)(3), but the Bail Reform Act makes an obvious distinction between modifying conditions of release and ordering detention pending trial or sentencing.  Compare 18 U.S.C. § 3142(c)(3); 18 U.S.C. § 3142(e).

The closest the Government comes to any favorable authority is *United States v. Roland*, 2005 WL 2318866 at 6 (E.D. Va. 2005), an unpublished trial court decision.  In *Roland*, the court confronted the question of whether or not it was appropriate to order detention of a defendant when the request to the district court came not from the Government but from U.S. Pretrial Services.  Acknowledging authority to the contrary, in *United States v. Herrera*, 29 F.Supp.2d 756 (N.D.Tex.1998), the *Roland* court held that it was proper under Section 3148 for U.S. Pretrial Services to request sanctions for violating conditions of release.  The question of whether the *Herrera* or *Roland* court reached the correct result, though interesting to debate, is academic for purposes of Hecker's matter because even in *Roland* there was a motion pending that gave defendant notice that his release might be revoked.  Hecker did not have the benefit of any such notice.

Lacking authority to support its position that the procedures used to jail Hecker conformed with Section 3143, the Government unpersuasively attempts to distinguish *United States v. Holloway*, 781 F.2d 124 (8th Cir. 1986), from Hecker's situation.  While the Government cites the *Holloway* court's dicta regarding newly discovered evidence of risk of flight or threat to public safety, this dicta does not apply to Hecker's situation because all

evidence at issue here was either known to the Government before September 7, 2010 and thus could have been presented to Judge Ericksen or else related to events that occurred after September 7, 2010.  The *Holloway* court stated that "in the exceptional instance when a magistrate has made a decision to release and subsequently evidence comes to light what could not reasonably have been brought in at the first appearance," reconsideration of a release decision is appropriate.  *Id.* at 128 – 29.  The *Holloway* court was plainly referring to evidence that existed at the time of the first appearance, as the evidence at issue in *Holloway* did, but was not discovered by the Government until afterwards.  *Id.*  The Government can point to no such evidence in this matter, instead it relies largely on events that occurred after September 7, such as Hecker's receipt of funds since September 7 and his testimony on October 18 and 20.  The *Holloway* dicta is, therefore, inapplicable because the Government has no evidence that existed before September 7, but that the Government did not know about until after September 7.

In summary, the Government does not offer a persuasive argument that Hecker's detention complied with proper procedure under the Bail Reform Act.   Instead under *Holloway*, it was not proper to revisit Judge Ericksen's conditional release order.  Under *Herrera* or *Roland*, but more importantly under the plain language of Section 3148, Hecker should not have been detained by a judge new to the proceeding and especially without appropriate notice and hearing regarding revocation.  As a result, the only question remaining to be decided is what remedy should Hecker receive?

### The Government's Proposed Revocation Hearing Remains Procedurally Deficient Because It Seeks To Revisit Judge Ericksen's Conditional Release Order And Avoid Bringing The Issue Before Judge Ericksen.

Perhaps recognizing the procedural deficiency of Hecker's present detention, the Government offers to cure the "potential defect" by hastily moving for Hecker's detention.  In so

doing, it argues that it is not bound by its "prior agreement not to seek detention" and that this Court "can consider all of the facts and circumstances in this case" as opposed to focusing only on events that occurred after September 7, 2010.  It also apparently believes that its new motion can appropriately be heard by this Court, as opposed to Judge Ericksen.  Neither suggestion, that this Court is the appropriate forum to hear the Government's motion for revocation of conditions of release or that all evidence is relevant despite the September 7, 2010 hearing, is correct.  As a result the appropriate remedy is Hecker's release, without prejudice to the Government filing a revocation motion in front of Judge Ericksen should it so choose.

The Government's attempt to keep this matter away from Judge Ericksen is contrary to the plain language of Section 3148(b) which states, in relevant part:

> [t]o the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated.

The Government charges Hecker with committing perjury while on conditional release, but argues that because the risk of flight became apparent in front of this Court on October 18 and 20, 2010, it is not practicable to bring the matter before Judge Ericksen.  Furthermore whatever exigency may have existed based on the fact that Hecker testified in front of this Court in mid-October no longer exists today.  There is nothing preventing the Government from filing its revocation motion in front of Judge Ericksen who, after all, issued the order for release and who will sentence Mr. Hecker.

Perhaps the Government's motivation for avoiding a hearing in front of Judge Ericksen is because it seeks to revisit the implicit finding in her post-plea conditional release order that on September 7, 2010, despite Government allegations of wire fraud and bankruptcy offenses, Hecker did not present so great a risk of flight or threat to public safety that detention was

4

necessary.  Instead of properly containing the allegations in its motion for detention to those that occurred after September 7, 2010, the Government revisits the arguments it made in the September 2, 2010 motion for detention that it abandoned in exchange for Hecker's guilty plea. Since Judge Ericksen's conditional release order was a final order, the Government could have appealed the order under 18 U.S.C. § 3145(c), or moved before Judge Ericksen to revoke Hecker's release under 18 U.S.C. § 3148(b).  The Government's remedy is not a detention hearing before this Court.

### Defendant Has Not Committed Any Violations Of Judge Ericksen's September 7, 2010 Conditional Release Order

The Government lists Hecker's receipt of various funds as well as inconsistencies in his statements offered on October 18, 2010 and October 20, 2010, as evidence that he has violated his conditional release.  As will be shown, none of these allegations amount to violations.

*Hecker Has Not Violated The Condition Prohibiting His Acquisition of Major Assets*

At the September 7, 2010 guilty plea hearing, Judge Ericksen ordered that Hecker not obtain any major assets with a value of $250 or above, without prior approval of pre-trial services.  The Government cites three different sources of money obtained by Hecker that it alleges to be major assets, a $15,000 settlement from bankruptcy court, a $40,500 dispersal from Hecker's 401(k) account and a $10,000 loan from a friend.

The $15,000 settlement was not acquired after September 7, 2010, but instead came from a well publicized legal dispute between Hecker and his bankruptcy trustee, and presumably known about by the Government since before Hecker's indictment.  This $15,000 settlement resulted from litigation over a Personal Services Agreement (PSA) that Hecker negotiated with Toyota Motors well before he filed for bankruptcy, and that he listed as an asset on his bankruptcy schedules.  (Bky # 09-05045, Doc. # 10, 50).  The Trustee claimed that future

payments on this PSA were not on-going income of Hecker, and were therefore property of the bankruptcy estate. *Id.* Though the bankruptcy court ruled in favor of the Trustee, Hecker appealed and the Trustee elected to settle with Hecker on appeal, paying him $30,000 of which his lawyer earned $15,000. (Bky # 09-05045, Doc. # 90, 102, 103). Though Hecker received the remaining $15,000, he did not acquire a major asset in violation of his release conditions because the underlying asset, his PSA with Toyota Motors, was acquired well before his guilty plea.

The same basic logic applies to the 401(k) dispersal. Hecker listed this asset on his bankruptcy schedules as exempt property, because the bankruptcy code does not consider 401(k) assets of the debtor to be bankruptcy estate property. 11 U.S.C. § 522(b)(3)(C). Hecker's 401(k) funds were, however, frozen in his family court proceedings until September 20, 2010, when he received the $40,500 dispersal. *In the Marriage of Tamitha Dawn Hecker vs Dennis Earl Hecker*, 27-FA-08-2731. While he received the $40,500 dispersal after September 7, 2010, he acquired the underlying asset, his 401(k) account, well before his indictment. Thus he did not violate his conditions of release.

Finally Hecker's receipt of a $10,000 loan from a friend after September 7, 2010, does not constitute the acquisition of a major asset. In common parlance, a loan is not an asset but a liability. Government Exhibit 9 shows that Hecker repaid $5,000 of this loan shortly after obtaining the loan, once Hecker received the $15,000 from his Toyota PSA settlement.

*Hecker's Testimony About Funds From John Prosser Does Not Amount To Perjury*

The Government accuses Hecker of perjury based on inconsistencies in his testimony on October 18, 2010 and October 20, 2010, pertaining to funds received from John Prosser. Tellingly the Government does not even attempt to explain how Hecker's misstatements on October 18, 2010 amount to perjury. Under 18 U.S.C. § 1621, perjury occurs when:

> Whoever… having taken an oath before a competent tribunal… in any case in which a law of the United States authorizes an oath to be administered, that he will testify… truly… willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true…

Courts have held that when an individual makes a misstatement under oath, but then corrects that misstatement, the correction is relevant as to whether or not the individual intended to testify falsely. *Beckanstin v. United States*, 232 F.2d 1, 4 (5th Cir. 1956).

While Hecker made an incorrect statement on October 18, 2010, by claiming that the entire $33,000 came from the sale of the Toyota Tundra, he believed on October 18, 2010, that it was true. After court he was able to refresh his recollection by reviewing documents. Then, on October 19, 2010, he voluntarily corrected the statement by telling the United States attorney about the error in a proffer session. *Exhibit D* at 105. Finally, under oath to this Court on October 20, 2010, he disclosed the error in his October 18, 2010 testimony stating:

> On Monday I wasn't clear on how I was thinking, so I apologize to the Court if it was a misunderstanding, but until today when I had my meds, I sat in the jail cell thinking about that transaction.

(*Id.* at 106.)

The Government asked, "Prior to yesterday you hadn't told anybody with the Government or the Chapter 7 trustee about that $7,000 that you got from the sale of that Cadillac Escalade?" *Id.* Hecker responded "Prior to Monday I never thought about it in the transaction of the Toyota Tundra. It certainly wasn't to hide it." *Id.*

In summary, Hecker believed on October 18, 2010, that the entire $33,000 came from the sale of the Toyota Tundra. After reviewing documents and considering the issue in more detail, he realized that in fact, some of this money came from a share of John Prosser's profit from selling a Cadillac Escalade. *Id.* at 105. Because Hecker promptly corrected his prior

misunderstanding, his testimony does not amount to perjury, and thus is not a violation of his conditional release.

*18 U.S.C. § 3006A(f) Has No Bearing On These Proceedings*

The Government argues that Hecker's alleged violation of Judge Nelson's April 12, 2010 order notifying Hecker of the 18 U.S.C. § 3006A(f) provision for repayment of the CJA fund somehow amounts to a violation of his conditions of release. Judge Nelson, however, did not amend Hecker's conditions of release. (Doc. # 78 at 5 - 6). Instead she simply informed Hecker of the fact that Section 3006A(f) would require him to repay the CJA fund if he had money available. *Id.* Judge Nelson's order also specifically detailed that the Federal Defender's Office would pursue collection. *Id.* Her order made no reference to that fact that incarceration might be used as a punishment for failure to repay the CJA, as the Government seems to suggest it does.

Judge Nelson's order should be honored, in that its scope was not nearly as expansive as the Government believes. Even in *United States v. Lefkowitz*, 125 F.3d 608, 621 (8th Cir. 1997), a case cited favorably both in Judge Nelson's Order and by the Government, there was no suggestion that incarceration is an appropriate tool to either coerce the repayment of CJA funds or punish those with available resources who neglect to voluntarily repay the Government. Instead *Lefkowitz* makes clear that the Government's remedy is a recoupment order. As a result, this Court should not view Section 3006A(f) as an appropriate justification for Hecker's incarceration.

## Conclusion

Based on the above, Hecker asks that this Court order his release and not grant the Government's request for a last minute detention hearing. Doing so comports with the procedures laid out in the Bail Reform Act of 1984 at 18 U.S.C. § 3143; 3148, and affords proper

deference to Judge Ericksen's conditional release order.  In the alternative, should the detention

hearing proceed, Hecker asks this Court to find that he has not committed a violation of his

release conditions since September 7, 2010, and order his release accordingly.

Date:  January 3, 2010                                    Respectfully submitted,


By:      */s/ William J. Mauzy*
          William J. Mauzy (#68974)
          Piper Kenney Webb (#275621)
          Casey T. Rundquist (#390475)
          510 First Avenue North
          Suite 610
          Minneapolis, MN 55403
          (612) 340-9108