UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,   Case No. 10-CR-32(01) (JNE/XXX)

    Plaintiff,

v.

DENNIS EARL HECKER,

    Defendant.

---

**DEFENDANT DENNIS EARL HECKER'S POSITION REGARDING SENTENCING**

This Memorandum sets forth Dennis Earl Hecker's position regarding the sentencing factors in Hecker's Presentence Investigation Report.

1. <u>Page 4, ¶ 18</u>. The defense objects that "the total loss regarding the Hyundai fraud scheme which was reasonably foreseeable to Hecker, and for which Hecker is responsible, totals $23,730,978." Hyundai Capital America made an independent and informed business decision to finance Hecker's vehicle leasing company. Any misrepresentations made by the Hecker organization were immaterial to Hyundai Capital's decision to finance Hecker. As a result, Hyundai Capital's payment to Chrysler Financial should not be included in Hecker's overall loss amount calculation.
The defense requests an evidentiary hearing on this issue.

2. <u>Page 6, ¶ 25</u>. The defense objects that the total loss for which Hecker is responsible is $28,388,562. Hyundai Capital should be excluded from the overall loss amount. See objection to paragraph 18.

3. Page 7, ¶ 29(a).  <u>Northstate Financial</u>

   The defense objects to any fraudulent concealment amount being ascribed to Northstate Financial.  Hecker disclosed the existence of Northstate Financial on his bankruptcy schedules, stating that its assets were held for resale and these assets secured a $1.5 million debt to Bremer Bank.  Thus, sale of these assets would benefit Bremer Bank.  Bremer Bank, in fact, had a valid claim on the property of Northstate Financial to secure a loan it made to Hecker prior to his filing for bankruptcy.  The Trustee entered into litigation with Bremer Bank on this issue, which the Trustee settled by granting Bremer Bank a portion of the proceeds from the Trustee's prior liquidation of Northstate's assets.  The defense requests an evidentiary hearing to present supporting documents.

4. Pages 8-9, ¶ 29(f).  <u>Club Memberships</u>

   The defense objects that:

   > Hecker intentionally did not disclose on any of his schedules his ownership of a membership at a number of clubs.  These memberships included the Golf Club Scottsdale in Scottsdale, Arizona ($95,000); the Roaring Fork Club in Basalt, Colorado ($200,000); the Roaring Fork Mountain Club in Basalt ($10,000); the Spring Hill Golf Club in Wayzata, Minnesota ($80,000); and the Timbers Club Snowmass Village ($130,000) in Aspen, Colorado.  Therefore, the total loss for these memberships is $515,000.  It is noted that, prior to filing his bankruptcy schedules, at Hecker's direction, individuals at the Hecker organization contacted representatives at these clubs to inquire about selling the memberships.

   When Hecker filed his initial bankruptcy schedules on July 1, 2010, and his amended schedules on September 1, 2010, it was thought that these memberships had little or no market value.  Hecker answered questions about these memberships under oath on multiple occasions.

The defense requests an evidentiary hearing.

5. <u>Page 11, ¶ 29(k)</u>.  <u>Prudential Insurance Proceeds</u>

    The loss amount related to the Prudential life insurance policies should be $124,354.85, not $154,354.84. Hecker disclosed these policies on his amended schedules on September 1, 2010. When informed by bankruptcy counsel that the Trustee had a claim to these funds, Hecker returned $30,000, but retained $124,354.85. As a result, the loss amount should be $124,354.85.

6. <u>Page 13, ¶ 39, Page 14, ¶ 41</u> .  <u>Obstruction of Justice</u>

    The defense objects that:

    > [i]t appears that the defendant obstructed justice in reference to the investigation, prosecution, or sentencing of this offense. §3C1.1. Specifically, the defendant provided false testimony at his change of plea hearing before U.S. District Judge Joan N. Ericksen on September 7, 2010; and at a hearing before Chief U.S. District Judge Michael J. Davis on October 18, 2010. On both occasions, the defendant provided false testimony regarding his finances.

    The addendum to the PSR specifically alleges that "the defendant falsely stated that his business income was $1,000 to $4,000 per month when he, in fact, had no monthly income. The defendant also falsely stated at his change of plea hearing that the Kia dealership, where he obtained financing for a vehicle, was aware that Hecker had no ongoing income." (A.4, ¶7.) A review of the plea transcript proves that Hecker did not make the statements the PSR attributes to him. To the contrary, Hecker indicated that he did not have income of $1,000 to $4,000 per month. (T. 44.) And his lawyer, Brian Toder, explained that there was no on-going income for New Dimension Advisors. The

Kia dealership relied on the credit of Hecker's co-signer. Moreover, such a statement is not material and should not be the basis for an obstruction adjustment. (*See* U.S.S.G. §3C1.1, App. Note 4(F) upon which the PSR relies: An adjustment is warranted where a defendant has provided "materially false information to a judge or magistrate.")

Regarding the allegations in paragraph 39 that Hecker provided false testimony before Judge Davis on October 18, 2010, the addendum to the PSR specifically alleges that:

> [t]he defendant lied about how he received approximately $33,000 in proceeds from John Prosser from the sale of a Toyota Tundra. However, since the hearing with Chief Judge Michael J. Davis, the defendant admitted that the money he received from Prosser was not limited to the sale of the Toyota Tundra but included approximately $7,000 from the sale of a Cadillac Escalade. By providing false testimony about his financial affairs, it appears that statements were material to the instant offenses involving fraud.

(A.4, ¶7.) But Hecker's testimony was not a lie and was not "material to the instant offenses involving fraud." As he explained, he was not clear about the details of this transaction when he was unexpectedly called upon to testify on October 18th. At the end of the day, Hecker met with defense counsel and reviewed documents relating to this transaction. After this review, he met with the Government for a proffer session and explained his mistake. Hecker then corrected his testimony at the first opportunity when the hearing continued before Judge Davis on October 20th. Under these circumstances an obstruction adjustment is not applicable. (*See* U.S.S.G. §3C1.1, App. Note 2. "In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct

4

justice.") Finally, Hecker's inadvertent statement about the source of the $33,000 is not material; he disclosed that he received the full amount of these funds. (*See* App. Note 4(F) upon which the PSR relies: Adjustment is warranted in cases involving "providing materially false information to a judge or magistrate.")

The defense further objects to the following statements in paragraph 39 of the PSR:

> [i]n addition, at his change of plea hearing, the defendant was prohibited from acquiring any major asset over the amount of $250 without the prior approval by U.S. Probation and Pretrial Services. Sometime in September 2010, following his change of plea hearing, the defendant received a $10,000 loan from Dr. Sheldon Burns without notifying U.S. Probation and Pretrial Services. Based on the above information, it appears that the defendant obstructed justice.

Hecker did disclose that he made a payment on a loan from a friend. Hecker's failure to seek prior approval before obtaining a personal loan from a friend cannot amount to obstruction of justice. Such conduct was not material, nor did it significantly impede the pre-sentence investigation. (*See* U.S.S.G. §3C1.1, App. Note 5(C), "providing incomplete or misleading, not amounting to a material falsehood, in respect to a pre-sentencing investigation" does not trigger §3C1.1.)

The defense requests an evidentiary hearing on these issues.

7. <u>Page 15, ¶ 41, 42</u>.  <u>Acceptance of Responsibility</u>

The defense objects to the position that "[b]ased on the above information which all occurred after his change of plea hearing, it does not appear that the defendant has accepted responsibility for the instant offenses. Therefore, a 3-level reduction under §3E1.1(a) and (b) is not warranted." Hecker should receive a 3-level reduction for

acceptance of responsibility under the terms of the plea agreement. Hecker did not make misstatements or commit perjury at the plea hearing. (*See* Objections to ¶ 39.) Hecker's statement about the proceeds of the Toyota Tundra was a mistake which he remedied two days later. (*Id.*) His failure to notify probation of the personal loan from a friend before obtaining the loan is not a sufficient basis to deny an acceptance of responsibility adjustment. (*Id.*) Hecker pled guilty prior to trial, admitted all conduct comprising the offense of conviction and additional relevant conduct at the plea hearing. Hecker's failure to obtain approval before accepting a personal loan should not serve as a basis for denying acceptance of responsibility. (*Id.*)

The defense requests an evidentiary hearing on these issues.

8. <u>Page 16, ¶ 52</u>. <u>Number of Participants</u>

The defense objects to the language that "[f]or the instant offense, the defendant was the leader of these criminal activities involving five or more participants. Specifically, the criminal participants included James Gustafson, Eric Dove, Dick Page, Steve Leach, and Hecker. Therefore, a 4-level increase is applied under §§3B1.1(a), and Application Note 1." The offense conduct did not, in fact, involve five or more participants. Only a 2-level enhancement for leadership role is proper, as opposed to the PSR's 4-level enhancement. Moreover, the Government would have the burden of proving that these individuals are criminally responsible in that they knowingly aided some part of the criminal enterprise, yet the Government has agreed that this 4-level enhancement for aggravating role does not apply. (*See* Plea Agreement, p. 9, ¶5f.)

9. <u>Page 16, ¶ 53</u>.  <u>Position of Trust</u>

The defense objects that, "[f]or the instant offense the defendant was the owner and president of the 'Hecker organization.'  As such, he was subject to significantly less supervision than employees whose responsibilities are primarily nondiscretionary in nature.  §3B1.3, Application Note 1.  Therefore, a 2-level increase under §3B1.3 is applicable."  The Government has agreed that this enhancement does not apply.  Hecker did not abuse a position of private trust as to any of the victims.  No enhancement is appropriate.

Date: January 13, 2011                                     Respectfully submitted,

By:     */s/ William J. Mauzy*
William J. Mauzy (#68974)
Piper Kenney Webb (#275621)
Casey T. Rundquist (#390475)
510 First Avenue North
Suite 610
Minneapolis, MN 55403
(612) 340-9108
*Attorneys for Defendant Dennis E. Hecker*